IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

COPAR PUMICE COMPANY, INC.,

        Plaintiff,

vs.                                             No. CIV 07-79 JB/ACT

ALLAN MORRIS, in his individual capacity,
DAVID YANTOS, in his individual capacity,
MARY UHL, in her individual capacity,
DEBRA McELROY, in her individual capacity,
and RON CURRY, in his official capacity as
Secretary of the New Mexico Environment
Department,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment on the Basis of Qualified Immunity, filed June 25, 2007 (Doc. 32). The Court held a hearing on September 19, 2007. The primary issues are: (i) whether there is a genuine issue of material fact whether Defendants Allan Morris and David Yantos violated Plaintiff Copar Pumice Company Inc.'s constitutional rights through the search and seizure they conducted on August 28, 2006; and (ii) if Morris and Yantos violated Copar Pumice's constitutional rights, whether those rights were clearly established at the time of the violation. Because the Court believes that there are genuine issues of material fact regarding whether the Defendants complied with the relevant state statute and permit, and thus whether the Defendants' actions violated Plaintiff's constitutional rights, and because the applicable law was clearly established at the time of the search, the Court will deny the Motion for Summary Judgment on the Basis of Qualified Immunity.

## FACTUAL BACKGROUND

Copar Pumice is engaged in the business of pumice mining.  See Amended Complaint for Violation of Civil Rights ¶ 4, at 2, filed July 3, 2007 (Doc. 36 )("Amended Complaint").  In 2006, and at all times material to this lawsuit, Copar Pumice was mining pumice and operating a screening plant at a mine located on United States Forest Service lands in the area of Jemez Springs, New Mexico.  See id.  Adrian Salazar is the plant manager of Copar Pumice's El Cajete mine.  See Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, filed July 16, 2007 (Doc. 40)("Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment"), Affidavit of Adrian Salazar, Exhibit B ¶ 1, at 1 (executed July 13, 2007)("Salazar Aff.").

Copar Pumice's operation of the El Cajete pumice screening facility is subject to the terms of New Mexico's Air Quality Control Act, regulations adopted pursuant to the Act, and Air Quality Permit No. 899-M-2 issued by the New Mexico Environment Department's (NMED) Air Quality Bureau.  See Memorandum in Support of Defendants' Motion for Summary Judgment on the Basis of Qualified Immunity, filed June 25, 2007 (Doc. 33)("Defendants' Motion for Summary Judgment on the Basis of Qualified Immunity"), Exhibit C, Copar's Permit, at 1.  The NMED Air Quality Permit was issued to Copar Pumice pursuant to the New Mexico Air Quality Control Act and the regulations adopted thereunder.  See Air Quality Permit at 1.  Specifically, the NMED Air Quality Permit issued to Copar Pumice states that it is issued "pursuant to the Air Quality Control Act (Act) and regulations adopted pursuant to the Act, including Title 20, New Mexico Administrative Code (NMAC), Chapter 2, Part 72, (20 NMAC 2.72), Construction Permits, Subpart II and is enforceable pursuant to the Act and the air quality control regulations applicable to this source." Air Quality

Permit at 1.

Specific conditions were imposed in the permit.  Pursuant to the NMED Air Quality Permit, Copar Pumice's operation of the pumice screening facility was subject to specific enumerated conditions, including:

> 3.   <u>Recordkeeping</u>
>
> <u>Daily records of the hours and days of operation, the daily production rates, and the frequency of the application of water or equivalent control measures shall be maintained.  This information shall be retained at the plant site for the most recent three (3) year period and shall be made available to Department personnel upon request.</u>
>
> <u>Condition 3 has been placed in the permit in accordance with 20 NMAC 2.72, Sections 210.B.4 and 210.F, to allow the Department to determine compliance with the terms and conditions of the permit.</u>
>
> <u>Compliance with Condition 3 will be based on Department inspection of records and logs.</u>

Air Quality Permit at 4 (emphasis in original).  Permit Condition No. 9, entitled "Right to Access Property and Review Records," states:

> 9.     <u>Right to Access Property and Review Records.</u>
>
> <u>The Department shall be given the right to enter the facility at all reasonable times to verify the terms and conditions of this permit.  The company, upon request from an authorized representative of the Department, shall produce any records or information necessary to establish that the terms and conditions of this permit are being met.</u>
>
> <u>Condition 9 has been placed in the permit in accordance with 20 NMAC 2.72, Sections 210.B and 210.F, and 20 NMAC 2.73, to allow the Department to determine compliance with the terms and conditions of the permit.</u>
>
> <u>Compliance with Condition 9 will be based on Department inspections of the facility, production of records and information required to be maintained, and non-restricted entry to the property as defined in this condition.</u>

Air Quality Permit at 8 (emphasis in original).  Conditions numbers 3 and 9 were "placed in the

permit . . . to allow the Department to determine compliance with the terms and conditions of th[e] permit." Air Quality Permit at 4, 8.

On August 28, 2006, as a result of a citizen complaint,  NMED Environmental Compliance Specialists, Morris and Yantos arrived at the Jemez Springs mine to conduct an inspection of Copar Pumice's pumice screening facility.  See Memorandum in Support of Defendants' Motion for Summary Judgment, filed June 24, 2007 (Doc. 29)("Motion for Summary Judgment"), Exhibit B, Affidavit of Allan Morris ¶ 4, at 1 (executed May 23, 2007)("Morris Aff.").  Morris and Yantos are Environmental Compliance Specialists employed by the State of New Mexico Air Quality Bureau. See Morris Aff. ¶ 1, at 1; Motion for Summary Judgment, Exhibit C, Affidavit of David Yantos ¶ 1, at 1 (executed on May 23, 2007)("Yantos Aff.").  The two NMED employees conducted a compliance inspection of Copar Pumice's pumice screening facility.  See Plaintiff Copar Pumice Company, Inc.'s Response to Defendants' Motion for Summary Judgment on the Basis of Qualified Immunity at 1-2, filed July 16, 2007 (Doc. 39)("Plaintiff's Response").

At the time the NMED employees arrived at Copar Pumice's facility, Salazar, the plant manager, was away from the mine at a dental appointment.  See Amended Complaint ¶ 10, at 3. The Defendants did not have a warrant.  See Complaint ¶11, at 3.  The inspection took place on a Monday from approximately 3:00 p.m. until 4:55 p.m.  See Morris Aff. ¶¶ 5, 22 at 3, 6.

When Morris and Yantos arrived at the facility, there were only two employees working at the mine.  See Plaintiff Copar Pumice Company, Inc's Memorandum in Opposition to Defendants' Motion for Summary Judgment, ¶ 5, 6, at 4, filed July 16, 2007 (Doc. 40)("Plaintiff's Opposition to Summary Judgment").  One of the Copar Pumice employees at the site during the inspection was Ismael Gomez, who is employed as a laborer and front-end loader operator.  See id., Exhibit A,

Affidavit of Ismael Gomez ¶ 1, at 3 (executed July 12, 2007)("I. Gomez Aff."). Ismael Gomez had been employed by Copar Pumice for six months when the inspection occurred. See Salazar Affidavit ¶ 7, at 1 (executed July 13, 2007)("Salazar Aff.").

Ismael Gomez is a Mexican national who is authorized to work in the United States. See I. Gomez Aff. ¶¶ 1, 2 at 1. Copar Pumice contends that Ismael Gomez speaks Spanish. See id. ¶ 4, at 1. Copar Pumice also alleges that he does not speak English and does not understand English, although he knows a few words in English. See id. ¶ 4, at 1.

The other Copar Pumice employee at the site during the inspection was Elias Gomez, who is also employed as a laborer and loader operator. See Salazar Aff. ¶ 10, at 2. Copar Pumice contends that neither Ismael Gomez nor Elias Gomez have supervisory authority at the mine, have any record-keeping functions, or have any legal authority to grant or deny access to inspectors. See id.

Morris and Yantos approached Ismael Gomez. See Motion for Summary Judgment on the Basis of Qualified Immunity ¶ 22 at 7. The Defendants contend that Ismael Gomez was wearing a shirt with the names "Copar" and "Ismael" on it. Memorandum in Support of Summary Judgment ¶ 9, at 4, filed June 24, 2007 (Doc. 29)("Motion for Summary Judgment"). Defendants contend that they identified themselves as employees of the NMED Air Quality Bureau, and informed Ismael Gomez that they were there to conduct a compliance inspection. See Motion for Summary Judgment ¶ 9, at 4. The Defendants also contend that they presented their identification cards to Ismael Gomez. See Morris Aff. ¶ 7, at 2. The Defendants contend that Ismael Gomez informed Morris and Yantos that he was employed by Copar Pumice, that the plant manager was not present, and not reachable by phone. See Motion for Summary Judgment ¶ 10, at 4.

The Defendants assert that Morris and Yantos asked Ismael Gomez if it was permissible for them to conduct the inspection without a company escort, to which he agreed.  See id. ¶ 11, at 4; Morris Aff. ¶ 14, at 3.  The Defendants allege that Morris asked Ismael Gomez if he knew where any of Copar Pumice's operational records were located and that Ismael Gomez stated that he thought that some of the records would be with the plant manager in his truck.  See  Motion for Summary Judgment ¶ 12, at 4; Morris Aff. ¶ 15, at 3.  The Defendants state that Morris then asked Ismael Gomez if he knew where there might be records at the site and Ismael Gomez responded by pointing to one of the two trailers at the site.  See Motion for Summary Judgment ¶ 12, at 4; Morris Aff. ¶ 15, at 3.  Morris contends that he asked Ismael Gomez if he could take them to look for records, that Ismael Gomez said "yes," and that Ismael Gomez led the Defendants into an unlocked trailer.  See Motion for Summary Judgment ¶ 12, at 4; Morris Aff. ¶ 15, 16 at 3.

The Defendants contend that, once inside the trailer, they asked Ismael Gomez if it was permissible to look at the papers on the table and shelves, and Ismael Gomez said that looking at the papers was permissible.  See Motion for Summary Judgment ¶ 12, at 4; Morris Aff. ¶ 17, at 3; Yantos Aff. ¶ 7, at 2.  Morris and Yantos contend that, in the trailer, they located what appeared to them to be production documents that were relevant to compliance.  See Morris Aff. ¶ 18, at 3; Yantos Aff. ¶ 8, at 2.  Morris states that he and Yantos asked Ismael Gomez for permission to copy twenty-four pages of documents, but were told that there was no copier on site.  See Morris Aff. ¶ 18, at 3.  Morris states that Ismael Gomez then gave them permission to take the documents off site for purposes of photocopying.  See id.   Both Morris and Yantos noticed during their conversation with Ismael Gomez that English was not his primary language, but observed that he responded to their questions in English in a manner that indicated he understood them.  See Morris Aff. ¶¶ 11, 12,

21 at 2, 4: Yantos Aff. ¶ 6, at 2.

Copar Pumice disputes many of the Defendants' contentions regarding the events of the inspection.  Copar Pumice contends that, because Morris and Yantos were wearing hardhats when they approached him, Ismael Gomez assumed  that they were inspectors.  See I. Gomez Aff. ¶ 6, at 2.  Ismael Gomez states that, because he does not speak English, and because Morris and Yantos did not speak Spanish, he did not learn where the inspectors were from or what they wanted.  See id. Ismael Gomez contends that Morris and Yantos did not show him any form of identification, and if they introduced themselves, he did not understand them.  See id.

Ismael Gomez explains that, after Morris and Yantos said some words to him that he did not understand, the inspectors walked into a trailer at the mine and he followed behind them.  See I. Gomez Aff. ¶ 7, at 2.  Ismael Gomez states that he did not lead the inspectors into the trailer.  See id.  Ismael Gomez contends that, after the inspectors entered the trailer, they began looking through the papers in the trailer.  See I. Gomez Aff. ¶ 8, at 2.

Ismael Gomez contends that he did not give the inspectors permission to look through the trailer and, because he does not speak English, does not know if they sought permission.  See id. ¶ 9, at 2.  Ismael Gomez left the trailer and returned to work once the inspectors began to look through the papers.  See id. ¶ 10, at 2.  Ismael Gomez states that, if Morris explained to him that he was going to walk around the facility to complete his inspection, he did not understand, because he does not speak English.  See id. ¶ 14, at 2.  Ismael Gomez contends that he did not tell Morris that there was no photocopier on site and did not have any conversations with the inspectors.  See id. ¶¶ 15, 16, at 3.

 Copar Pumice maintains that the records that Morris and Yantos removed from the trailer

were not maintained pursuant to the terms of Copar Pumice's air quality permit.  See Salazar Aff.

¶ 11, at 2 ; Affidavit of Ralph Martinez ¶ 6, 8 at 2 (executed July 12, 2007).

## **PROCEDURAL BACKGROUND**

On January 23, 2007, Copar Pumice initiated a § 1983 action against the two NMED

employees and against the Secretary of the NMED, alleging that the Defendants violated the Fourth

Amendment's prohibition against unreasonable searches and seizures when the two NMED

inspectors impermissibly entered Copar Pumice's office and seized business records, and that the

inspection and seizure, conducted pursuant to NMED policy, violated the Fourth and Fourteenth

Amendments to the United States Constitution.  See Complaint for Violation of Civil Rights, filed

January 23, 2007 (Doc. 1).  On  July 3, 2007 Copar Pumice Amended its Complaint for Violation

of Civil Rights, alleging unconstitutional search and seizure and violation of equal protection, and

seeking declaratory and injunctive relief.  See Amended Complaint at 5-8.

The Defendants move, pursuant to rule 56 of the Federal Rules of Civil Procedure, for

summary judgment on the basis of qualified immunity.  See Memorandum in Support of Defendants'

Motion for Summary Judgment on the Basis of Qualified Immunity. The Defendants argue that

Morris and Yantos did not violate Copar Pumice's Fourth Amendment rights, and that, even if they

did, such violations were not clearly established at the time of the violations.  See id. at 9-18.  In the

alternative, the Defendants argue that, if the law is deemed clearly established, Morris and Yantos

are still entitled to qualified immunity because extraordinary circumstances existed.  See id. at 19-

22.

Copar Pumice argues that the Court should deny the Defendants' motion for summary

judgment based on qualified immunity because Morris and Yantos conducted an unreasonable

search and seizure of Copar Pumice's records by improperly identifying themselves, by not obtaining consent, and by unreasonably searching and seizing Copar Pumice's records.  See Plaintiff's Response at 1.  Furthermore, Copar Pumice argues that the constitutional violations were clearly established at the time the violation occurred.  See id. at 9-12.  On  August 10, 2007, the Defendants filed a reply to Copar Pumice's response, arguing that Copar Pumice's version of the facts do not establish a violation of the Fourth Amendment and that, even if a violation occurred, the law was not clearly established at the time of the violation.  See Defendants' Reply in Support of Motion for Summary Judgment on the Basis of Qualified Immunity, filed August 10, 2007 (Doc. 48).

## RELEVANT NEW MEXICO STATUTES AND CASELAW REGARDING ADMINISTRATIVE SEARCHES

N.M.S.A. 1978 § 74-2-13 provides the following guidance regarding inspections of premises on which any records -- required to be maintained by regulations of the environmental improvement board, the local board, or by any permit condition -- are located:

> The secretary or the director or an authorized representative of either, upon presentation of his credentials:
>
> A. shall have a right of entry to, upon or through any premises on which an emission source is located or on which any records required to be maintained by regulations of the environmental improvement board, the local board or by any permit condition are located; and
>
> B. may at reasonable times:
>
> (1) have access to and copy any records required to be established and maintained by regulations of the environmental improvement board or the local board or any permit condition;
>
> (2) inspect any monitoring equipment and method required by regulations of the environmental improvement board, the local board or by any permit condition; and

(3) sample any emissions that are required to be sampled pursuant to regulation of the environmental improvement board, the local board or any permit condition.

N.M.S.A. 1978 § 74-2-13. "[A] nonconsensual warrantless administrative inspection of business premises can only be made in very limited circumstances." New Mexico Envtl. Improvement Div. v. Climax Chem Co., 105 N.M. 439, 440, 733 P.2d 1322, 1323 (Ct. App. 1987)(holding that, upon denial of consent to enter and inspect business premises, it was proper for the Environmental Improvement Division to act within the bounds of the relevant statute at all times by obtaining an administrative search warrant and conducting a search that was permitted under the relevant statute).

The Supreme Court of New Mexico has held that a non-consensual, warrantless administrative inspection of business premises can be made only when:

> [(i)] the enterprise sought to be inspected is engaged in a business pervasively regulated by state or federal government; [(ii)] the inspection will pose only a minimal threat to justifiable expectations of privacy; [(iii)] the warrantless inspection is a crucial part of a regulatory scheme designed to further an urgent government interest; and [(iv)] the inspection is carefully limited as to time, place and scope.

State ex rel. Envtl. Improvement Agency v. Albuquerque Pub. Co., 91 N.M. 125, 571 P.2d 117 (1977). Moreover, in New Mexico Environmental Improvement Division v. Climax Chemical Company, the New Mexico Court of Appeals stated that, if consent to enter and inspect is denied, the state must secure an administrative search warrant before the inspection occurs. See 105 N.M. at 440.

### STANDARD FOR DECIDING SUMMARY JUDGMENT MOTIONS

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(citing Fed. R. Civ. P. 56(c)). The

-10-

opposing party "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)).  An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party. 477 U.S. at 249-50 (citations omitted). Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment. See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988).

The party seeking summary judgment has an "initial burden to show that there is an absence of evidence to support the nonmoving party's case." Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(quoting Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995)(internal quotations omitted)). Upon meeting that burden, the non-moving party must "identify specific facts that show the existence of a genuine issue of material fact." Munoz v. St. Mary-Corwin Hosp., 221 F.3d at 1164 (citations and internal quotations omitted). "The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Id. (citations and internal quotations omitted).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. at 252. The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted). "In a response to a motion for summary judgment, a party cannot rest on ignorance of the facts, on speculation, or on suspicion and

may not escape summary judgment in the mere hope that something will turn up at trial." <u>Conaway v. Smith</u>, 853 F.2d 789, 794 (10th Cir. 1988).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Biester v. Midwest Health Servs., Inc.</u>, 77 F.3d 1264, 1266 (10th Cir. 1996)(internal quotations and citations omitted). When evaluating a motion for summary judgment, the court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. <u>See</u> <u>Sigmon v. CommunityCare HMO, Inc.</u>, 234 F.3d 1121, 1125 (10th Cir. 2000). Moreover, the court may consider only admissible evidence when ruling on a motion for summary judgment. <u>See</u> <u>World of Sleep, Inc. v. La-Z-Boy Chair, Co.</u>, 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

<u>**RELEVANT FOURTH AMENDMENT LAW**</u>

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV. The Fourth Amendment generally requires a warrant for there to be a valid search and seizure. For the search here to be valid and legal, the search and seizure must fall within a recognized exception to the Fourth Amendment's warrant requirement.

**1.      Law Regarding Warrantless Searches of Pervasively Regulated Industries.**

The Fourth Amendment prohibition on unreasonable searches and seizures is applicable to commercial premises. <u>See</u> <u>New York v. Burger</u>, 482 U.S. 691, 699 (1987)(citing <u>See v. City of Seattle</u>, 387 U.S. 541, 543 (1967)). An owner or operator of a business, therefore, has an expectation

-12-

of privacy in commercial property, but that expectation "is different from, and indeed less than, a similar expectation in an individual's home." New York v. Burger, 428 U.S. at 699 (citing Donovan v. Dewey, 452 U.S. 594, 598-99 (1981)).

"It is well-established that a warrantless search is presumptively unreasonable under the Fourth Amendment and therefore invalid unless it falls within a specific exception to the warrant requirement." Roska ex. el Roska v. Peterson, 328 F.3d 1230, 1240 (10th Cir. 2003). The warrant requirement of the Fourth Amendment applies to commercial premises. See See v. City of Seattle, 387 U.S. at 543-44; V-1 Oil Co. v. Wyo. Dep't of Envtl. Quality, 902 F.2d 1482, 1485 (10th Cir. 1990). Exceptions to this requirement have developed, however, for "pervasively regulated business[es]," United States v. Biswell, 406 U.S. 311, 316 (1972), and for "'closely regulated' industries . . . long subject to close supervision and inspection." Marshall v. Barlow's, Inc., 436 U.S. 307, 313 (1978) (quoting Colonnade Catering Corp. v. United States, 397 U.S. 72, 74 (1970)).

A pervasively regulated business is one which has "'such a history of government oversight that no reasonable expectation of privacy could exist . . . .'" V-1 Oil Co. v. Wyo. Dep't of Envtl. Quality, 902 F.2d at 1486 (quoting Marshall v. Barlow's Inc., 436 U.S. at 313). "[T]he doctrine is essentially defined by 'the pervasiveness and regularity of the . . . regulation' and the effect of such regulation upon an owner's expectation of privacy." New York v. Burger, 482 U.S. at 701 (quoting Donovan v. Dewey, 452 U.S. at 606). Pervasively regulated industries "represent the 'exception' rather than the rule." Marshall v. Horn Seed Co., 647 F.2d 96, 99 n.1 (10th Cir. 1981) (quoting Marshall v. Barlow's Inc., 436 U.S. at 313).

To be reasonable, the warrantless inspection of such a business must meet the three-part test that the Supreme Court enumerated in New York v. Burger. See 482 U.S. at 702-703. Certain

-13-

warrantless searches may be reasonable in the context of a pervasively regulated industry, provided the following criteria are met: (i) there is a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made; (ii) the warrantless inspection is necessary to further the regulatory scheme; and (iii) the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant.  See id.  The regulatory statute must perform the two basic functions of a warrant: "[I]t must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." V-1 Oil Co. v. Wyo. Dep't of Envtl. Quality, 902 F.2d at 1485.

To perform the first function of a warrant, the statute must be "sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." Id. (internal quotations and citations omitted).  The statute must provide notice to the particular business owner that his or her property will be subject to warrantless inspections.  See id. at 1487.  "The only warrantless administrative searches which have been upheld are those conducted pursuant to narrow statutes which regulate particular industries." Id. (citing Rush v. Obledo, 756 F.2d 713, 718-19 (9th Cir.1985)).  See Marshall v. Barlow's, Inc., 436 U.S. at 321.   Administrative searches conducted pursuant to statutes of general applicability require search warrants. See, e.g., Marshall v. Barlow's, Inc., 436 U.S. at 313-14 (Occupational Safety and Health Act); See v. City of Seattle, 387 U.S. at 546 (Seattle Fire Code); Lone Steer, Inc. v. Donovan, 565 F.Supp. 229, 232 (D.N.D.1982)(Fair Labor Standards Act), rev'd on other grounds, 464 U.S. 408 (1984); Western Alfalfa Corp. v. Air Pollution Variance Bd., 510 P.2d 907, 909-10 (Colo.Ct.App.1973)(Colorado Air Pollution Control

Act), rev'd on other grounds, 416 U.S. 861(1974); New Mexico Envtl. Improvement Div. v. Climax

Chem. Co., 105 N.M. 439, 733 P.2d 1322, 1323 (Ct.App.1987)(New Mexico Hazardous Waste Act).

Furthermore, in defining how a statute limits the discretion of inspectors, the statutorily

authorized search must be "carefully limited in time, place, and scope."  United States v. Biswell,

406 U.S. at 315.  To determine whether a statute provides a constitutionally adequate substitute for

a warrant, a district court must look to the statute itself.  See  V-1 Oil Co. v. Wyo. Dep't of Envtl.

Quality, 902 F.2d at 1485-87.  The Supreme Court has indicated that a warrant stating with

particularity the place to be searched or the items to be seized not only prevents general searches,

but "assures the individual whose property is searched or seized of the lawful authority of the

executing officer, his need to search, and the limits of his power to search." Groh v. Ramirez, 540

U.S. 551 (2004)(quotations omitted).  "The reasonableness of a warrantless search . . . will depend

upon the specific enforcement needs and privacy guarantees of each statute."  Marshall v. Barlow's

Inc. 436 U.S. at 321.

At the hearing, both parties said that the Tenth Circuit's analysis in V-1 Oil Company v.

Wyoming Department of Environmental Quality provided the correct analysis for their situation.

See Transcript of Hearing at 42:16-20 (taken Sept. 19, 2007)("Tr.")(Walz); Tr. at 45:5-6 (Hart).[1]

In V-1 Oil Company v. Wyoming Department of Environmental Quality, the state defendants

contended that section 9 of the Wyoming Environmental Quality Act authorized warrantless

searches and inspections of suspected sources of pollution.  See 902 F.2d at 1484.  That section of

the Wyoming Statutes empowers certain officers to

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

enter and inspect any property, premise or place, except private residences, on or at which an air, water or land pollution source is located or is being constructed or installed . . . . Persons so designated may . . . inspect any monitoring equipment or method of operation required to be maintained pursuant to this act . . . for the purpose of investigating actual or potential sources of air, water or land pollution and for determining compliance or noncompliance with this act . . .

Wyo. Stat. § 35-11-109(a)(vi).

In <u>V-1 Oil Company v. Wyoming Department of Environmental Quality</u>, a supervisor for the Wyoming Department of Environmental Quality noticed that concrete over underground storage tanks was being removed from the V-1 Oil station, which had a history of ground pollution.  <u>See</u> 902 F.2d at 1484.  On two occasions, the inspector  tried to find out what was being done, and twice he was refused information about the property and permission to enter.  <u>See id.</u>  Informed of the inspector's situation, a senior assistant attorney general tried to obtain a court order allowing the inspector to inspect the premises; however, no judge was available.  <u>See id.</u> The attorney then advised the inspector that the Wyoming statute permitted a warrantless inspection of the premises. <u>See id.</u>  That evening, the inspector, the city attorney, and a police officer entered the V-1 Oil premises.  <u>See id.</u> The inspector  took a soil sample and visually inspected the excavation area.  <u>See id.</u>

V-1 Oil contended that the Wyoming statute did not authorize the search that took place, either because it does not authorize warrantless searches, or because it authorizes warrantless searches of only mandatory equipment and methods of operation.  <u>See</u> 902 F.2d at 1484-85.  V-1 Oil filed a complaint under 42 U.S.C. § 1983, alleging deprivation of its rights secured by the Fourth Amendment.  <u>See</u> 902 F.2d at 1484.  The Tenth Circuit held that the warrantless search was improper, because the statute is not so "'comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections

undertaken for specific purposes.'" Id. at 1486-87  (quoting Donovan v. Dewey, 452 U.S. at 600).

The Tenth Circuit  in V-1 Oil Company v. Wyoming Department of Environmental Quality stated that the first problem with the statute was that it "provides no notice whatsoever to the owner of any particular business that his or her property will be subject to warrantless inspections." Id. at 1487.  Furthermore, the Tenth Circuit stated that the Act provided no "assurance of regularity" of the inspections.  Id. (internal citations and quotations omitted).  The Tenth Circuit held that, because the Act left inspectors with the ability to inspect any business at any time, a warrant was required. See id.  The Tenth Circuit stated that "a warrant is required if searches are 'so random, infrequent, or unpredictable that the owner . . . has no real expectation that his property will from time to time be inspected by government officials.'"  Id. (quoting Donovan v. Dewey, 452 U.S. at 599).

Ultimately, the Tenth Circuit in V-1 Oil Company v. Wyoming Department of Environmental Quality held that, because the statute did not provide a constitutionally adequate substitute for a warrant, the inspector's warrantless search violated V-1 Oil's Fourth Amendment rights.  See V-1 Oil Company v. Wyo. Dep't of Envtl. Quality, 902 F.2d at 1487.  The Tenth Circuit also held that the law establishing the violation was clearly established at the time of the violation. See id. at 1488.  Specifically, the Tenth Circuit stated:

> When the search here at issue took place, the Burger decision was almost a year old. The Dewey decision, upon which Burger relied heavily, was almost seven years old. The Barlow's decision was almost ten years old. At the same time there was no precedent for the proposition that a generally applicable statute which permitted irregular inspections could constitutionally authorize a warrantless search. We hold that V-1's right not to be inspected without a search warrant pursuant to a statute such as the Wyoming Environmental Quality Act was clearly established.

Id.

"[A]dministrative searches are an exception to the Fourth Amendment's warrant requirement, but they are not an exception to the Fourth Amendment's requirement for

reasonableness." Bruce v. Beary, 498 F.3d 1232 (11th Cir. 2007) (citing Donovan v. Dewey, 452 U.S. at 598-99).  Warrantless administrative inspections are invalid if the inspectors' search exceeds the permissible discretion under the authorizing statute.  In the very case in which the Supreme Court recognized the permissibility of warrantless administrative inspections, it invalidated the actual inspection conducted in the case because the inspectors' search exceeded their discretion under the authorizing statute.  See Bruce v. Beary, 498 F.3d at 1243  (citing Colonnade Catering Corp. v. United States, 397 U.S. at 77 (disapproving the use of force to open locked door)).  "As with any search, then, the scope and execution of an administrative inspection must be reasonable in order to be constitutional." Bruce v. Beary, 498 F.3d at 1244. Although a statute authorizing administrative searches may be constitutional, actual searches conducted under that authority may not. See id.  "The question [the Court] must resolve, then, is whether the conduct of the administrative inspection . . . was reasonable."  Id.

      2.      **Law Regarding Specificity Required in Warrants.**

In several opinions, the Tenth Circuit has clearly established that items to be seized must be described within the search warrant for seizure of those items to be reasonable.  It logically follows, therefore, that the statute acting as the adequate substitute for a warrant would  have to follow  similar  principles.   "The Fourth Amendment requires  search warrants to particularly describe[e] the place to be searched, and the persons or things to be seized." United States v. Angelos, 433 F.3d 738, 744 (10th Cir. 2006)(internal quotations and citations omitted).

Furthermore, the Tenth Circuit has held that "[t]he Fourth Amendment requires that a search warrant describe the things to be seized with sufficient particularity to prevent a general exploratory rummaging in a person's belongings."  United States v. Campos, 221 F.3d 1143, 1147 (10th Cir.

2000)(internal citations and quotations omitted).  "A warrant's description of things to be seized is sufficiently particular if it allows the searcher to reasonably ascertain and identify the things authorized to be seized."  United States v. Hargus, 128 F.3d 1358, 1362 (10th Cir. 1997)(internal quotations and citations omitted). "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another.  As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."  Davis v. Gracey, 111 F.3d 1472, 1478 (10th Cir. 1997)(internal quotations and citations omitted).  "The test applied to the description of the items to be seized is a practical one . . . and the language in warrants is to be read in a common sense fashion. . . . As an irreducible minimum, a proper warrant must allow the executing officers to distinguish between items that may and may not be seized." Id. (internal citations and quotations omitted).

      **3.**      **Law Regarding Administrative Seizures.**

      The Tenth Circuit has held that the party who performed the seizure "bears the . . . burden of demonstrating the reasonableness of a warrantless seizure." United States v. Seslar, 996 F.2d 1058, 1062 (10th Cir. 1993).  While not specifically addressing the need for administrative statutes to authorize seizure, New York v. Burger dealt with a warrantless search and seizure under the closely regulated business exception. See 482 U.S. 691.  In New York v. Burger, the Supreme Court held that the warrantless administrative inspection of the pervasively regulated business was reasonable because it satisfied the three prongs of the test the Supreme Court set forth.  See id. at 702-703.

      The trial court in New York v. Burger noted that, during the warrantless inspection, the

-19-

inspectors seized several items while conducting their search.  See People v. Burger, 125 Misc.2d 709, 710, 479 N.Y.S.2d 936, 938 (N.Y.Sup. 1984).  The statute authorizing the warrantless search, however, did not specifically permit seizures but rather only inspection.  See New York v. Burger, 482 U.S. at 694.  The Supreme Court held that the inspection was constitutional and reasonable under the Fourth Amendment, but did not specifically address whether the seizure of the items, not expressly permitted by the statute, was a violation of the Fourth Amendment.  See id. at 702-703.

In United States v. Colonnade Catering Corp., 397 U.S. 72 (1970), a federal agent who was a member of the Alcohol and Tobacco Tax Division of the Internal Revenue Services was a guest at party on Colonnade Catering's premises and noted a possible Federal excise-tax violation.  See id. at 73.  Federal agents later visited the premises and, without the manager's consent, inspected the cellar.  See id.  The agents asked for the locked liquor storeroom to be opened, and Colonnade Catering's president refused to open the door.  See id.  The agents admitted to not having a warrant and proceeded to break the lock on the storeroom door, enter the room, and removed bottles of liquor that they suspected of being refilled contrary to the command of 26 U.S.C. § 5301(c).  See United States v. Colonnade Catering Corp., 397 U.S. at 73.  The relevant statutes provided that the Secretary of Treasury or his delegate has broad authority to enter and inspect the premises of retail dealers in liquors.  See United States v. Colonnade Catering Corp., 397 U.S. at 73-74.  The statute also provided that if the dealer refused to permit the inspection he or she would be fined.  See id. at 74.  The Supreme Court stated: "The question is whether the imposition of a fine for refusal to permit entry -- with the attendant consequences that violation of inspection laws may have in this closely regulated industry -- is under this statutory scheme the exclusive sanction, absent a warrant to break and enter."  Id.  The Supreme Court stated that it had recognized the special treatment of

-20-

inspection laws of this kind in <u>Boyd v. United States</u>, 116 U.S. 616, 624 (1886).  The Supreme Court

stated: "(In) the case of excisable or dutiable articles, the government has an interest in them for the

payment of the duties thereon, and until such duties are paid has a right to keep them under

observation, or to pursue or drag them from concealment." <u>United States v. Colonnade Catering</u>

<u>Corp.</u>, 397 U.S. at 76 (quoting <u>Boyd v. United States</u>, 116 U.S. at 624).  The Supreme Court further

noted:

> The seizure of stolen goods is authorized by the common law; and the seizure of
> goods forfeited for a breach of the revenue laws, or concealed to avoid the duties
> payable on them, has been authorized by English statutes for at least two centuries
> past; and the like seizures have been authorized by our own revenue acts from the
> commencement of the government. The first statute passed by Congress to regulate
> the collection of duties, the act of July 31, 1789, 1 Stat. 29, 43, contains provisions
> to this effect. As this act was passed by the same Congress which proposed for
> adoption the original amendments to the Constitution, it is clear that the members of
> that body did not regard searches and seizures of this kind as unreasonable, and they
> are not embraced within the prohibition of the amendment. . . . (I)n the case of
> excisable or dutiable articles, the government has an interest in them for the payment
> of the duties thereon, and until such duties are paid has a right to keep them under
> observation, or to pursue and drag them from concealment.

<u>United States v. Colonnade Catering Corporation</u>, 397 U.S. at 76 (quoting <u>Boyd v. United States</u>,

116 U.S. at 623).  In <u>United States v. Colonnade Catering Corporation</u>, the Supreme Court stated:

"We agree that Congress has broad power to design such powers of inspection under the liquor laws

as it deems necessary to meet the evils at hand." <u>United States v. Colonnade Catering Corporation</u>,

397 U.S. at 76.  Furthermore, the Court held: "Where Congress has authorized inspection but made

no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various

restrictive rules apply." <u>Id.</u> at 77.  Ultimately, the Supreme Court held that, under the existing

statutes, Congress selected a standard "that does not include forcible entries" and thus the agents

could not break and enter the storeroom without a warrant.  <u>Id.</u> at 77.

-21-

In <u>United States v. Biswell</u>, the Supreme Court again addressed the issue of a pervasively regulated business in which a warrantless search and seizure occurred.  <u>See</u> 406 U.S. 311.  Again, like in <u>New York v. Burger</u>, the relevant portion of the statute that the Supreme Court deemed to permit warrantless searches of the business did not specifically authorize the seizure of items located during inspection.  <u>See</u> <u>United States v. Biswell</u>, 406 U.S. at 312.  The Supreme Court, however, held that the seizure of two sawed-off rifles that police officers found during their inspection of a pawnshop in Hobbs, New Mexico was constitutional.  <u>See</u> <u>id.</u> at 317.  The pawnshop owner was indicted and convicted for dealing in firearms without having paid the occupational tax.  <u>See</u> <u>id.</u> at 313. "We have little difficulty in concluding that where, as here, regulatory inspections further urgent federal interest, and the possibilities of abuse and the threat to privacy are not of impressive dimensions, the inspection may proceed without a warrant where specifically authorized by statute." <u>Id.</u> at 317.  In its opinion, the Supreme Court referenced its earlier opinion in <u>United States v. Colonnade Catering Corp.</u> and stated that "it is clear under Colonnade that the Fourth Amendment would not bar a seizure of illicit liquor." <u>United States v. Biswell</u>, 406 U.S. at 314.  The Supreme Court also referenced its prior opinion's mention of the historically broad authority of government to regulate the liquor industry and the approval of similar inspection laws.  <u>See</u> <u>United States v. Biswell</u>, 406 U.S. at 314.  Additionally, the Supreme Court quoted its language from <u>United States v. Colonnade Catering Corp.</u> detailing the history of the law regarding seizures of stolen goods and seizure of goods concealed to avoid the duties payable on them.  <u>See</u> <u>id.</u>  The Supreme Court explained that the history of duties law indicated that the members of Congress "did not regard searches and seizures of this kind as unreasonable, and they are not embraced within the prohibition of the amendment." <u>United States v. Biswell</u>, 406 U.S. at 314 (internal citations and quotations

omitted).  The Supreme Court noted that the "reasonableness of a warrantless search . . . will depend upon the specific enforcement needs and privacy guarantees of each statute." Marshall's v. Barlow's, Inc., 436 U.S. at 321.

In See v. City of Seattle, the Supreme Court determined that a business owner's refusal  to permit a fire department's warrantless investigation of a locked commercial warehouse was constitutional.  See 387 U.S. at 546.  In coming to its decision, the Supreme Court stated: "It is now settled that, when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome."  Id. at 544. The Supreme Court further stated: "The agency has the right to conduct all reasonable inspections of such documents which are contemplated by statute, but it must delimit the confines of a search by designating the needed documents in a formal subpoena." Id.  The Supreme Court  held that such minimal limitations on administrative action is constitutionally required for investigative entry upon commercial establishments.  See id. at 545.  The Supreme Court stated: "Given the analogous investigative functions performed by the administrative subpoena and the demand for entry, we find untenable the proposition that the subpoena, which has been termed a 'constructive' search, is subject to Fourth Amendment limitations which do not apply to actual searches and inspections of commercial premises." Id. at 545-46 (internal citations omitted). The Supreme Court further stated: "We therefore conclude that administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure." Id. at 546.  "Any constitutional challenge to such programs can only be resolved, as many have been in the past, on a case-by-case basis under

-23-

the general Fourth Amendment standard of reasonableness." Id. Therefore, the Supreme Court held

that See could not be prosecuted for exercising his constitutional right to insist that the fire inspector

obtain a warrant authorizing entry upon his locked warehouse. See id.

The Tenth Circuit has not directly addressed the question whether the seizure of an item from

a pervasively regulated business during a warrantless search must be expressly authorized in the

statute that acts as the warrant requirement under New York v. Burger.  Several Tenth Circuit cases

provide some insight, however, into the Tenth Circuit's position on what is necessary for an

adequate warrant as well as what is necessary for a warrantless seizure under the pervasively

regulated business warrant exception.

In Roska ex rel. Roska v. Peterson, the Tenth Circuit stated:

> Within the last thirty years, courts have increasingly recognized certain narrow
> circumstances that justify searches and seizures without reference to the Fourth
> Amendment's warrant clause or probable cause requirement. These are situations in
> which the requirement of a warrant based upon probable cause is ill-suited to
> achieving certain "special needs" of government, such as enforcing school discipline,
> New Jersey v. T.L.O., 469 U.S. 325, 333-40, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985),
> allowing administrative searches of the business premises of "closely-regulated
> industries," New York v. Burger, 482 U.S. 691, 700, 107 S.Ct. 2636, 96 L.Ed.2d 601
> (1987), and taking inventory of seized items for "caretaking" purposes, Cady v.
> Dombrowski, 413 U.S. 433, 447-48, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

328 F.3d at 1241.  In United States v. Herrera, 444 F.3d 1238 (10th Cir. 2006), a police officer

seized a commercial vehicle that he mistakenly believed was pervasively regulated.  See id. at 1241.

In clarifying the correct premise of an administrative search, the Tenth Circuit stated: "An

administrative search is . . . premised on the individual subject to the warrantless seizure and search

knowingly and voluntarily engaging in a pervasively regulated business, and on the existence of a

statutory scheme that puts that individual on notice that he will be subject to warrantless

administrative seizures and searches." Id. at 1246 (internal quotations and citations omitted).  The

-24-

Tenth Circuit relied on its decision in <u>United States v. Seslar,</u> which held that "the closely regulated industry line of cases does not justify the warrantless search of unregulated persons." <u>United States v. Herrera</u>  444 F.3d at 1245 (quoting <u>United States v. Seslar</u>, 996 F.2d at 1063).

In <u>United States v. Seslar</u>, the Tenth Circuit held that, "because the justification for permitting warrantless [regulatory] searches is that persons doing business in closely regulated industries have a significantly reduced expectation of privacy," <u>id.</u> at 1061, such a stop was not justified by the regulatory scheme if the truck did not fall within the parameters of that regulation, <u>see id.</u> at 1062-63. <u>See also</u> <u>State v. Campbell</u>, 19 Kan.App.2d 778, 875 P.2d 1010, 1013-14 (Kan.Ct.App.1994)(holding random stop of rental truck that was transporting private property, and thus was not subject to Kansas regulations governing motor carriers, violated the Fourth Amendment); <u>Dominguez v. State</u>, 290 Ark. 428, 720 S.W.2d 703, 707-708 (Ark.1986) (holding that a statute that arguably authorized random stops of motor carriers could not be read to authorize random stops of any motor vehicle merely to determine whether the detainees belonged to the regulated class).  The Tenth Circuit ultimately held that Herrera's truck was not a commercial vehicle subject to the Kansas regulatory scheme, and thus the scheme could not justify the officer stopping Herrera.

In <u>United States v. Johnson</u>, 408 F.3d 1313 (10th Cir. 2005), Oklahoma City police officers and detectives from the automobile theft unit arrived at Autoplex Salvage to conduct an administrative search. <u>See id.</u> at 1316.  The officers did not have a warrant, but instead relied upon two Oklahoma statutes permitting warrantless administrative searches of salvage yards.  <u>See</u> Okla. Stat. tit. 47, § 591.6; Okla. Stat. tit. 47, § 4-111.  At the time of their search, the officers knew that Johnson, an employee at Autoplex Salvage, had been arrested for attempting to steal a truck a few

nights earlier.  See  United States v. Johnson, 408 F.3d at 1321.  47 Oklahoma Statute Annotated §

591.6 provides:

> Every automotive dismantler and parts recycler shall keep a register of all purchases
> and sales of motor vehicles for three (3) years from the date of purchase or sale,
> showing the make, model, year, style, vehicle identification number, and name and
> address of the purchaser or seller of the motor vehicle. Such registers shall be made
> available for inspection by properly identified employees or agents of the Oklahoma
> Used Motor Vehicle and Parts Commission or identified law enforcement officers
> of the state, county and municipality where the business of the automotive dismantler
> and parts recycler is located, during reasonable business hours on business days. The
> inspection authority shall include the right to inspect any motor vehicle or parts
> thereof owned by or stored at the automotive dismantler and parts recycler's place
> of business.

Okla. Stat. tit. 47, § 591.6. 47 Oklahoma Statute Annotated  § 4-111 authorizes:

> Any peace officer of the state may inspect any vehicle of a type required to be
> registered hereunder in any public garage or repair shop or in any place where such
> vehicles are held for sale or wrecking, for the purpose of locating stolen vehicles and
> investigating the title and registration thereof.

Okla. Stat. tit. 47, § 4-111.  During the administrative search, the officers seized a firearm that was

found locked inside of  Johnson's toolbox.  See United States v. Johnson, 408 F.3d at 1322.  After

the search was conducted, Johnson was arrested and subsequently indicted on two counts: being a

felon in possession of a firearm, and being a felon in possession of ammunition while under

conditions of release.  See id. at 1319.

Johnson argued that the search conducted in his case exceeded what was permissible under

the Oklahoma statutes.  See id. at 1320. The Tenth Circuit stated that the Supreme Court in New

York v. Burger noted that, "'[s]o long as a regulatory scheme is properly administrative, it is not

rendered illegal by the fact that the inspecting officer has the power to arrest individuals for

violations other than those created by the scheme itself.'" United States v. Johnson, 408 F.3d at

1321, (quoting  New York v. Burger, 482 U.S. at 717). Thus, "'an administrative scheme may have

-26-

the same ultimate purpose as penal laws, even if its regulatory goals are narrower.'" United States v. Johnson, 408 F.3d at 1321 (quoting New York v. Burger, 482 U.S. at 713).

The Tenth Circuit in United States v. Johnson held that the administrative inspection scheme in §§ 591.6 and 4-111 was directed, in part, to the detection of stolen vehicles and vehicle parts. See United States v. Johnson, 408 F.3d at 1321. The Tenth Circuit noted, however, that New York v. Burger "'did not endorse a scheme that would allow a warrantless search based on recently discovered evidence that criminal activity had occurred.'" United States v. Johnson, 408 F.3d at 1321 (quoting S & S Pawn Shop Inc., 947 F.2d at 440). The Tenth Circuit found that newly-discovered evidence was not the basis for the search in Johnson's case and that the officers did not have "direct criminal suspicion" about Johnson or Autoplex Salvage. See United States v. Johnson, 408 F.3d at 1321. Rather, at the time of the search, the officers knew Johnson had been arrested attempting to steal a truck a few nights earlier and they knew he worked at Autoplex Salvage. See id. They had a vague suspicion that the kind of criminal activity the administrative scheme was directed towards detecting -- car theft -- had occurred, or might be evident at the salvage yard where Johnson worked. See id. The Tenth Circuit held that there is nothing unconstitutional in embarking upon an administrative inspection with that degree of criminal suspicion. See United States v. Johnson, 408 F.3d at 1321 (citing United States v. Villamonte-Marquez, 462 U.S. 579, 584 n. 3 (1983) (upholding administrative search of ship following an informant's tip that a vessel was carrying marijuana and noting that there was "little logic in sanctioning . . . examinations of ordinary, unsuspect vessels but forbidding them in the case of suspected smugglers")(internal quotations omitted)); United States v. Thomas, 973 F.2d 1152, 1155-56 (5th Cir. 1992). The Tenth Circuit stated: "We accordingly hold that the inspection, at least at its inception, did not go beyond

-27-

what is permitted by the relevant statutes." United States v. Johnson, 408 F.3d at 1321.

The Tenth Circuit in United States v. Johnson also addressed whether the officers' search of the locked toolbox exceeded what §§ 591.6 and 4-111 permitted. See United States v. Johnson, 408 F.3d at 1322.  The Tenth Circuit explained that the statutes permit officers to examine "vehicles," vehicle "parts," and vehicle "parts . . . stored" at the salvage yard. Id.  The Tenth Circuit stated that Vehicle Identification Number (VIN) plates are "parts" of vehicles and that  nothing in the statutes obviously limits the officers to searching only for "major" or "large" parts of vehicles. Id.

While the officers in United States v. Johnson conducted a broad and detailed search of the entire premises,  the only item seized was the firearm found inside Johnson's toolbox. See id. The Tenth Circuit accordingly addressed whether the officers properly searched inside that toolbox.  See id.   At the time officers reached Johnson's locked toolbox, the officers had the following information: Johnson had been arrested attempting to steal a truck a few days before. See id. When officers commenced their administrative inspection of the salvage yard, another stolen vehicle was being driven off the premises by the owner's nephew. See id.  There was one, and possibly two, suspicious motorcycle frames very near Johnson's toolbox. See id.  The toolbox was large enough to contain license plates and VIN plates. See id.  Thus, the officers had at least a reasonable suspicion that the toolbox might contain something relevant to their administrative search and accordingly did not exceed what is permissible under the administrative inspection statutes when they searched Johnson's toolbox.  See id.  Furthermore, the Tenth Circuit stated that the fact that the toolbox was locked did not place it off limits from inspection. See id.; United States v. Biswell, 406 U.S. 311, 317 (1972) (holding that officers executing warrantless search under the authority of an administrative inspection statute were entitled to demand that gun dealer unlock storeroom).  The

Tenth Circuit did not directly address the constitutionality of the actual seizure of the firearm.

Furthermore, in V-1 Oil Co. v. State of Wyoming Department of Environmental Quality, the Tenth Circuit stated that, in regards to a statute being an adequate warrant substitute, "[t]o satisfy the certainty and regularity requirement, an inspection program must define clearly what is to be searched, who can be searched and the frequency of such searches." 902 F.2d at 1487 (internal quotations and citations omitted).

Other Circuits have dealt with this issue more directly. The United States Court of Appeals for the Ninth Circuit, in United States v. Argent Chemical Laboratories, Inc., 93 F.3d 572 (9th Cir. 1996), stated that a defendant's argument that the closely regulated business exception did not extend to seizures was untenable. See 93 F.3d at 577. The statute at issue in United States v. Argent Chemical Laboratories, Inc., regulated drug manufacturers, and expressly and specifically rendered articles "liable to seizure." 93 F.3d at 574, 577. The Ninth Circuit stated this wording alleviated the need for probable cause or a warrant to seize, because Congress expressly authorized seizures through the regulation. See 93 F.3d at 574, 577.

The Ninth Circuit in United States v. Argent Chemical Laboratories, Inc. acknowledged, however, that, while New York v. Burger discussed its criteria for closely regulated industries in terms of inspections only, warrantless seizures are appropriate when permitted by Congress. See id. at 574, n.1 (citing United States v. Biswell, 406 U.S. at 317 (finding that warrantless search and seizure of firearms on which the dealer had not paid the required special occupational tax was constitutional); Colonnade Catering Corp. v. United States, 397 U.S. at 77 (stating that warrantless seizure of illicit liquor was constitutional)). The Ninth Circuit noted that the Supreme Court in United States v. Biswell held that, because the unwarranted inspection was constitutionally

permissible, the seizure of the defendant's sawed-off rifles was not unreasonable under the Fourth Amendment.  See id.  The Ninth Circuit ultimately concluded that the closely regulated business exception "extends to seizure without warrant of what may be inspected without warrant, when Congress so authorizes."  Id. at 577 (internal quotations and citations omitted)(emphasis added).

In applying the precedent set out by the Ninth Circuit, a district court in California held that, "[f]or the pervasively regulated business exception to the warrant requirement to apply not only to searches but also to seizures, the statutory regulation must expressly authorize seizures."  Golden Day Schools, Inc. v. Pirillo, 118 F.Supp. 2d 1037, 1045 (C.D. Cal. 2000)(citing  United States v. Argent Chem. Labs., 93 F.3d at 574, 577). The district court elaborated by stating: "[G]iven the policies underlying the pervasively regulated business exception to the warrant requirement, it is reasonable to infer that the Legislature did not, through its silence, intend to expand the powers of state agents to seize . . . records without a warrant."  Golden Day Schools, Inc. v. Pirillo, 118 F.Supp. 2d at 1045.  In following the rules set out by the Ninth Circuit, the district court held that, because the regulations offered no notice of a seizure of records, the defendants could not justify a warrantless seizure of the school's files.  See id. at 1045-46.

The United States Court of Appeals for the Sixth Circuit, in discussing the unconstitutionality of a warrantless seizure under the relevant statute, held: "[N]othing in the Act authorizes the wholesale seizure of records which took place here.  Even where a statute requires records to be maintained and authorizes on-premise inspection of them in the normal course, no precedent sanctions direct access to the record without demand in the absence of a search warrant." United States v. Consolidated Coal Co., 560 F.2d 214, 217 (6th Cir. 1977).  The Sixth Circuit further stated: "It is, however, implicit . . . that the right to inspect does not carry with it the right, without

warrant in the absence of arrest, to reach that which is to be inspected by a resort to self-help in the face of the owner's protest." Id. (internal quotations and citations omitted).  In upholding the constitutionality of the warrant used to conduct a search of a coal mine, the Sixth Circuit held: "[W]arrants actually issued should be carefully tailored, by limiting the items to be seized, to prevent the abuses inherent in 'general, exploratory rummaging in a (company's) belongings.'" Id. (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467,(1971)).

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the legitimate "'need to protect officials who are required to exercise discretion and the related public interest in encouraging the vigorous exercise of official authority.'" Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)(quoting Butz v. Economou, 438 U.S. 478, 506 (1978)). Qualified immunity, therefore, "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

When a defendant asserts a qualified-immunity defense, the burden shifts to the plaintiff, who must establish: (i) that the defendant violated a constitutional or statutory right; and (ii) that the constitutional or statutory right violated was clearly established when the violation occurred. See Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836, 841-42 (10th Cir. 2005). "If the plaintiff fails to carry either part of [the] two-part burden, the defendant is entitled to qualified immunity." Albright v. Rodriguez, 51 F.3d 1531, 1535 (10th Cir. 1995).  In determining whether a defendant is entitled to qualified immunity, a court cannot assume that a constitutional violation exists; rather, a court must consider the constitutional violation issue before taking up the clearly established issue. See Kirkland v. St. Vrain Valley Sch. Dist. No. RE-1J, 464 F.3d 1182, 1188-89 (10th Cir. 2006).

In evaluating whether a qualified-immunity defense is applicable, the court will view the

evidence in the light most favorable to the non-moving party; however, the record must demonstrate that the plaintiff has satisfied his heavy two-part burden. See Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  When determining whether to grant summary judgment based on qualified immunity, the court must accept as true the facts in the light most favorable to the nonmoving party, and based on that, determine whether the nonmoving party established a constitutional violation. See Vigil v. South Valley Academy, No. 06-2309, 2007 WL 2693868, *2 (10th Cir. Sept. 12, 2007). If there is a factual dispute involving an issue on which qualified immunity turns, summary judgment based on a qualified-immunity defense in a 42 U.S.C. § 1983 action is inappropriate. See Archer v. Sanchez, 933 F.2d 1526, 1530 (10th Cir. 1991).

The plaintiff's burden to establish that the law is clearly established "must be undertaken in light of the case's specific context, not as a broad proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." Id. at 202.  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). "To be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. " Mimics, Inc. v. Village of Angel Fire, 394 F.3d at 842.  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id.  (internal citations and quotations omitted).

If the plaintiff establishes both a violation of a constitutional right and that the right was clearly established at the time of the alleged conduct, the burden shifts to the defendant, who must demonstrate that there are no genuine issues of material fact, and that the defendant is entitled to judgment as a matter of law. See Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002). Ultimately, the defendant still bears the normal summary judgment burden to prove that there is no genuine issue of material fact that would defeat the qualified immunity defense. See id.

If it is determined that the law was clearly established, the court must also consider whether, "in spite of the fact that the law was clearly established, 'extraordinary circumstances' -- such as reliance on the advice of counsel or on a statute -- 'so prevented [the official] from knowing that [his] actions were unconstitutional that [he] should not be imputed with knowledge of a clearly established right.'" Gomes v. Wood, 451 F.3d 1122, 1134 (10th Cir. 2006)(quoting Roska v. Peterson, 328 F.3d 1230, 1251 (10th Cir. 2003)). See Robinson v. Bibb, 840 F.2d 349, 350 (6th Cir. 1988); Fernandez v. Leonard, 784 F.2d 1209, 1216 (1st Cir. 1986). "As its name suggests, the extraordinary circumstances exception to the rule that a qualified immunity defense fails where the defendant violated a clearly established right applies only rarely." V-1 Oil Co. v. Wyo. Dep't of Envtl. Quality, 902 F.2d at 1488 (internal quotations and citations omitted). The circumstances most often considered for treatment as "extraordinary" is reliance upon counsel. V-1 Oil Co. v. Wyo. Dep't of Envtl. Quality, 902 F.2d at 1488 (citing Carey, Quick Termination of Insubstantial Civil Rights Claims: Qualified Immunity and Procedural Fairness, 38 Vand. L. Rev. 1543, 1544-55 (1985)). "Of course, such reliance is not inherently extraordinary, for few things in government are more common than the receipt of legal advice." V-1 Oil Co. v. Wyo. Dep't of Envtl. Quality, 902 F.2d at 1488.

-33-

"Reliance on a statute does not make an official's conduct per se reasonable." Mimics, Inc. v. Village of Angel Fire, 394 F.3d at 846 (10th Cir. 2005). Reliance on a statute is, however, a factor "to consider in determining whether the officer's actions were objectively reasonable, keeping in mind that the overarching inquiry is one of fair notice." Id. Whether an official's reliance on a statute makes his or her conduct objectively reasonable "depends on '[(i)] the degree of specificity with which the statute authorized the conduct in question; [(ii)] whether the officer in fact complied with the statute; [(iii)] whether the statute has fallen into desuetude; and [(iv)] whether the officer could have reasonably concluded that the statute was constitutional.'" Mimics, Inc. v. Village of Angel Fire, 394 F.3d at 846 (quoting Roska v. Peterson, 328 F.3d at 1253).

## ANALYSIS

At the hearing on September 19, 2007, Copar Pumice's counsel conceded that the mining industry, in which Copar Pumice is involved, is a pervasively regulated industry. See Tr. at 45:4-8 (Hart). Furthermore, Copar Pumice does not dispute the constitutionality of the New Mexico Air Quality Control Act governing the warrantless inspection of its mining site. See Plaintiff's Response at 4 (stating that "Copar does not dispute that the Air Quality Control Act's statutory scheme authorizing warrantless inspections is constitutional and meets the standards set forth in New York v. Burger, 482 U.S. 691 (1987)"). Thus, there is no issue that the Air Quality Control Act provides a constitutionally adequate substitute for a warrant. The questions presented to the Court are whether the search and the seizure were violations of Copar Pumice's Fourth Amendment rights and, if such acts were violations, whether the violations were clearly established at the time of the inspection. Because the Court believes that both the search and the seizure performed by Morris and Yantos violated Copar Pumice's Fourth Amendment rights, and because these violations were

-34-

clearly established at the time of the inspection, the Court finds that the Defendants are not entitled to qualified immunity.

I.      THERE ARE GENUINE ISSUES OF MATERIAL FACT WHETHER THE DEFENDANTS' WARRANTLESS SEARCH VIOLATED COPAR PUMICE'S FOURTH AMENDMENT RIGHTS.

The primary issues are: (i) whether there are genuine issues of material fact regarding the Defendants' compliance with the statute and permit authorizing a warrantless search; and (ii) whether, if the Defendants did not comply with the requirements of state law, such a search would fall within the boundaries of a lawful and reasonable warrantless search. See V-1 Oil Co. v. Wyo. Dep't of Envtl. Quality, 902 F.2d at 1485-86. Based on the record before it, the Court believes that there are genuine issues of material fact whether the Defendants followed the state law which was the "warrant substitute" under New York v. Burger. The Defendants' counsel conceded that one of the issues to consider in deciding whether the Defendants can take advantage of the exception to the warrant requirement is whether the Defendants complied with state law during their search. See Tr. at 53:7-21 (Court & Walz).[2] Accordingly, Copar Pumice is alleging that, because the search went beyond the bounds that the state statute and permit allow, the search was objectively unreasonable and violated its Fourth Amendment right to be free from unreasonable searches and

_____

[2] Specifically, the Court asked the Defendants' counsel: "Do you also agree with [the Plaintiff's attorney] that the issue comes down to whether to take advantage of this exception to the warrant requirement that it comes down to an issue of compliance with state law? Whether the individual defendants complied with state law?" Tr. at 53:7-11 (Court). The Defendants' attorney responded: "I think that's one [issue]. And number two [is] whether the state officials acted reasonably in carrying out the state's responsibilities and rights pursuant to the permit itself. I think the two have to be look[ed] at in conjunction in order to determine . . . whether their acts were reasonable. And I argue to the Court . . . that when you look at those two in conjunction or even independently, you . . . can come to no other conclusion that the actions taken by Yantos and Morris were reasonable under the circumstances." Id. at 53:12-21 (Walz).

seizures.  See Mimics, Inc. v. Village of Angel Fire, 394 F.3d at 846-47 (stating that an official's conduct is not objectively reasonable if the official "unlawfully enforces [a statute] in a particularly egregious manner, or in a manner which a reasonable officer would recognize exceeds the bounds of the [statute].")(internal quotations and citations omitted).

Copar Pumice has conceded that the relevant statute in this case constitutionally permits warrantless searches, see Plaintiff's Response, at 4.  Thus, the question for the Court is whether Morris and Yantos complied with the statute and the permit issued pursuant to the statute, which the parties agree are adequate substitutes for a warrant under Burger v. New York.  Additionally, the Court must determine whether Morris and Yantos' actions during the search were reasonable under the Fourth Amendment. If the Court finds that Morris and Yantos did not act reasonably under the statute and permit, then their actions can be deemed a violation of Copar Pumice's Fourth Amendment rights and the Court must assess whether the constitutional violation was clearly established at the time of the violation.

The relevant portions of the mining permit issued to Copar Pumice pursuant to the Air Quality Control Act state:

> 3.      Recordkeeping
>
> Daily records of the hours and days of operation, the daily production rates, and the frequency of the application of water or equivalent control measures shall be maintained.  This information shall be retained at the plant site for the most recent three (3) year period and shall be made available to Department personnel upon request.

Air Quality Permit at 4 (emphasis in original).  Permit Condition No. 9, entitled "Right to Access Property and Review Records," states:

> 9.      Right to Access Property and Review Records.

> The Department shall be given the right to enter the facility at all reasonable times to verify the terms and conditions of this permit. The company, upon request from an authorized representative of the Department, shall produce any records or information necessary to establish that the terms and conditions of this permit are being met.

Air Quality Permit at 8 (emphasis in original). The relevant portion of the Air Quality Control Act states:

> The secretary or the director or an authorized representative of either, upon presentation of his credentials:
>
>> A. shall have a right of entry to, upon or through any premises on which an emission source is located or on which any records required to be maintained by regulations of the environmental improvement board, the local board or by any permit condition are located; and
>>
>> B. may at reasonable times:
>>
>> (1) have access to and copy any records required to be established and maintained by regulations of the environmental improvement board or the local board or any permit condition;
>>
>> (2) inspect any monitoring equipment and method required by regulations of the environmental improvement board, the local board or by any permit condition; and
>>
>> (3) sample any emissions that are required to be sampled pursuant to regulation of the environmental improvement board, the local board or any permit condition.

N.M.S.A. 1978 § 74-2-13 (emphasis added).

While the Court finds no specific case law stating that an inspector must obey a permit, as well the state statute, to take advantage of the pervasively regulated warrantless search exception, because the permit was issued pursuant to the state statute, and because the permit furthers the specific requirements for a warrantless inspection by appearing to assist in informing the

-37-

commercial-premises owner of the scope of such a search, the Court believes that the state statute together with the permit act as the adequate substitute for a warrant under New York v. Burger. Furthermore, even if the permit is not considered to be part of the warrant substitute, the Court believes that there is a genuine issue of material fact whether the Defendants acted reasonably under the statute even without considering whether the inspectors acted reasonably under the permit. Viewing the facts in the light most favorable to the nonmoving party, the Court finds that the Defendants' search did not reasonably comply with the state statute or the permit issued pursuant to the state statute, and therefore constitutes a violation of Copar Pumice's Fourth Amendment rights. While the Court finds, and Copar Pumice concedes, that a warrantless search of Copar Pumice's facility was permissible under New York v. Burger, Morris and Yantos' failure to reasonably comply with the state statute and permit, which fulfilled the third prong of the New York v. Burger test, constituted a violation of Copar Pumice's Fourth Amendment right because they conducted an unreasonable search.

First, Copar Pumice contends that the state statute and permit required the Defendants to identify themselves by presenting their credentials. See Plaintiff's Response, at 2. Copar Pumice argues that there are genuine issues of material fact whether Morris and Yantos properly identified themselves by presenting their credentials. See I. Gomez Aff. ¶ 6, at 2. The Court agrees.

In his affidavit, Ismael Gomez states: "[T]hey did not show me any form of identification. If they introduced themselves, I did not understand them." I. Gomez Aff. ¶ 6, at 2. The Court believes that Ismael Gomez' affidavit raises a genuine issue of material fact whether Morris and Yantos complied with the plain language of the statute and properly identified themselves.

Because the statute and permit act as the warrant substitute, and satisfy one of the three

-38-

prongs that is necessary to permit a warrantless administrative search under <u>New York v. Burger</u>, the Court finds it unreasonable that Morris and Yantos did  not comply with the statute and permit's plain language.  Thus, Morris and Yantos' failure to identify themselves in accordance with the statute was a violation of Copar Pumice's Fourth Amendment rights.

The Defendants argue that, even if the inspectors did not identify themselves, because Ismael Gomez assumed by their appearance that they were inspectors, Morris and Yantos substantially complied with § 74-2-13 of the Air Quality Control Act's "presentation of credentials requirement." Defendant's Reply at 5.  In support of their contention, the Defendants cite to several cases, none of which are binding on this Court, in which the presentation of credentials requirement was satisfied when a uniformed official verbally identified himself.  <u>See id.</u>  The Court notes that these cases are distinguishable from the present situation because there is a genuine issue of material fact whether the inspectors even verbally identified themselves.

Additionally, Copar Pumice contends that no request or demand was made to view any records as its permit required.  <u>See</u> Air Quality Permit at 8.   Regarding whether a demand was made and consent was given, Ismael Gomez' affidavit states: "After saying some words to me that I didn't understand, the inspectors walked into the trailer at the mine.  I followed behind them into the trailer because I knew no one was in the trailer to meet with them.  I did not lead the inspectors into the trailer at the mine." <u>Id.</u> ¶ 7 at 2.  Furthermore, Ismael Gomez indicates that there was no permission given to inspect the records: "I did not give the inspectors permission to look through the trailer and I do not know if they sought permission because I don't speak English." <u>Id.</u> at 9.  Copar Pumice also notes that, if consent was sought and was denied, the inspectors were required to seek a warrant to conduct their search.  <u>See</u> <u>New Mexico Envtl. Improvement Div. v. Climax Chemical Co.</u> 105 N.M.

at 441, 733 P.2d at 1324 (stating that, in the event consent to enter and inspect is denied, an administrative search warrant is required).

While the Court cannot say that consent to enter was denied, there seems to be a genuine issue of material fact whether any request or demand to see the records was made. The permit states: "The company, upon request from an authorized representative of the Department, shall produce any records or information necessary to establish that the terms and conditions of this permit are being met." Air Quality Permit at 8. Ismael Gomez' affidavit raises a genuine issue of material fact whether a request was actually made, and whether the records were obtained by the company producing the information to the inspectors or whether the inspectors took the records themselves without production by Ismael Gomez.

As the substitute for a warrant under New York v. Burger, the statute and the permit must: (i) advise the owner of the commercial premises that the search is being made pursuant to the law and (ii) have a properly defined scope, that limits the discretion of the officers.   See V-1 Oil Co. v. Wyo. Dep't of Envtl. Quality, 902 F.2d at 1485 (stating that "the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the officers.")(internal citations and quotations omitted). Thus, the requirements within the plain language of the statute and the permit are what notify Copar Pumice that the search is made pursuant to law and are what define the scope of the search, limiting Morris and Yantos' discretion. Because Morris and Yantos did not comply with the plain language of the statute and the permit, their search did not comply with the warrantless requirements and was unreasonable.

If a state inspector goes outside the parameters of the state statute and permit that are acting

-40-

as a warrant substitute, he or she falls outside of the exception and must comply with the warrant requirement.  It is not possible for the Court to say that the Defendants acted objectively reasonable in these circumstances if they did not comply with the state statute.  See Mimics, Inc. v. Village of Angel Fire, 394 F.3d at 846-47 (stating that an official's reliance on a statute is not objectively reasonable if the official "unlawfully enforces [a] [statute] in a particularly egregious manner, or in a manner which a reasonable officer would recognize exceeds the bounds of the [statute].")(internal quotations and citations omitted).  Accordingly, viewing the facts in the light most favorable to the nonmoving party, because Defendants did not comply with the state statute and permit, deemed to be an adequate substitute for a warrant, their search was not within a warrant exception, and was unreasonable, violating Copar Pumice's Fourth Amendment rights.

## II.    THERE ARE GENUINE ISSUES OF MATERIAL FACT WHETHER THE DEFENDANTS' WARRANTLESS SEIZURE VIOLATED COPAR PUMICE'S FOURTH AMENDMENT RIGHTS.

Copar Pumice alleges that its constitutional rights were violated when Defendants Morris and Yantos seized its records.  See Plaintiff's Response, at 2.  N.M.S.A. 1978 § 74-2-13 states that, during an inspection, an authorized inspector may "have access to and copy any records required to be established and maintained by regulations of the environmental improvement board or the local board or any permit condition." N.M.S.A. 1978 § 74-2-13.  Copar Pumice argues that the seizure of its documents was unconstitutional, because the Air Quality Control Act's statutory scheme does not authorize warrantless seizures.  See Plaintiff's Response at 2; See v. City of Seattle, 387 U.S. at 544 (stating that, "while an agency has the right to conduct all reasonable inspections of such documents which are contemplated by statute on a non pervasively regulated commercial premises . . . it must delimit the confines of a search by designating the needed documents in a formal

subpoena"); Marshall v. Barlow's Inc., 436 U.S. at 313 (stating that the warrant requirement applies except where Congress has responded to "relatively unique circumstances" in providing otherwise); United States v. Argent Chem. Labs., 93 F.3d at 574 (noting that the pervasively regulated business exception to the warrant requirement extends to seizures of what may be inspected without a warrant when Congress so authorizes).

Further, Copar Pumice argues that some of the documents taken by Morris and Yantos were not records maintained pursuant to the terms of Copar Pumice's Air Quality Control Permit, but rather were maintained for payroll and Mine Safety and Health purposes. See Salazar Aff. ¶ 11, at 2.

The Court believes that Morris and Yantos' seizure of records went beyond the purview of the state statute and permit, and thus was unreasonable and a violation of Copar Pumice's Fourth Amendment rights. Because the statute and the permit act as a substitute for a warrant, it follows that similar principles will apply to the application of the statute as to the application of a warrant. "The Fourth Amendment requires search warrants to particularly describe[e] the place to be searched, and the persons or things to be seized." United States v. Angelos, 433 F.3d at 744 (internal quotations and citations omitted).

The Tenth Circuit has held that "[t]he Fourth Amendment requires that a search warrant describe the things to be seized with sufficient particularity to prevent a general exploratory rummaging in a person's belongings." United States v. Campos, 221 F.3d at 1147 (internal citations and quotations omitted). "A warrant's description of things to be seized is sufficiently particular if it allows the searcher to reasonably ascertain and identify the things authorized to be seized." United States v. Hargus, 128 F.3d at 1362 (internal quotations and citations omitted). "The

requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." Davis v. Gracey, 111 F.3d at 1478 (internal quotations and citations omitted).  "The test applied to the description of the items to be seized is a practical one, . . . and the language in warrants is to be read in a common sense fashion . . . . As an irreducible minimum, a proper warrant must allow the executing officers to distinguish between items that may and may not be seized." Id. (internal citations and quotations omitted).  Specifically, in defining how a statute limits the discretion of inspectors, the statutorily authorized search must be "carefully limited in time, place, and scope." United States v. Biswell, 406 U.S. at 315.

In this case, the statute and permit, that acted as the substitute for a warrant, did not contain any language that enabled the inspectors to seize documents that they found during their search. Furthermore, the statute did not list any items that could be seized.  The only reference regarding the officers having physical possession of the records states that the "the secretary or the director or an authorized representative of either . . . may at reasonable times . . . have access to and copy any records required to be established and maintained by regulations of the environmental improvement board or the local board or any permit condition." N.M.S.A. 1978 § 74-2-13.

If the purpose of a statute that acts as a substitute for a warrant is to be "carefully limited in time, place and scope," United States v. Biswell, 406 U.S. at 315, it does not follow that a seizure should be permitted under a statute that has no mention of seizure.  Furthermore, because the Tenth Circuit states that a warrant must "particularly describe the things to be seized," it seems that, if the warrant substitute statute does not describe any such items, the intent of the statute is for nothing

-43-

to be seized.  Davis v. Gracey, 111 F.3d at 1478.  Because the Tenth Circuit has held that warrants should be fashioned such that "nothing is left to the discretion of the officer executing the warrant," Davis v. Gracey, 111 F.3d at 1478, the Court believes that it is a violation of Copar Pumice's Fourth Amendment rights for an inspector to use his discretion to decide to seize documents under a statute and a permit that are silent to that affect.

Furthermore, the Court notes that, in viewing the facts in the light most favorable to Copar Pumice, it appears that Morris and Yantos were not told that the Copar Pumice facility did not have a copy machine on site.  See I. Gomez Aff. at 3 (stating "I did not inform Mr. Morris that there was no photocopier on site").  Although Morris and Yantos argue that they took the documents to copy because Ismael Gomez told them there was no on site copier, Copar Pumice's version of the facts suggest that Morris and Yantos seized the documents for some purpose other than copying.  The Court finds that the seizure of the documents was a violation of Copar Pumice's Fourth Amendment rights because seizure of any document was beyond the plain language of the statute and the permit, and thus unreasonable.

**III.     THE APPLICABLE LAW AND COPAR PUMICE'S CONSTITUTIONAL RIGHTS WERE CLEARLY ESTABLISHED AT THE TIME OF THE SEARCH AND PUT THE DEFENDANTS ON NOTICE THAT THE MANNER IN WHICH THEY CONDUCTED THE SEARCH WAS UNCONSTITUTIONAL.**

To determine if qualified immunity applies, the Court must address whether the applicable law and constitutional rights were clearly established at the time Morris and Yantos searched and seized Copar Pumice's documents.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation."  Id. at 202.  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight

-44-

of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City and County of Denver, 960 F.2d at 1498.

"To be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Mimics, Inc. v. Village of Angel Fire, 394 F.3d at 842. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that  in the light of pre-existing law the unlawfulness must be apparent." Id. The Court believes that the contours of Copar Pumice's right not to be subject to an unreasonable search, such as the one conducted by Morris and Yantos, was sufficiently clear that a reasonable official would understand that what Morris and Yantos did violated that right.

The search in question took place on August 28, 2006.  See Plaintiff's Complaint ¶ 8, at 2, filed Jan. 23, 2007 (Doc. 1).  At that time, the Supreme Court's  New York v. Burger opinion was approximately nineteen-years old.  See 482 U.S. 691.  The Donovan v. Dewey, decision, upon which New York v. Burger relied heavily, was approximately twenty-five years old.  See 452 U.S. 594. The Marshall v. Barlow's Inc. decision was almost twenty-eight  years old. See 436 U.S. 307.

It was clearly established that the Fourth-Amendment prohibition on unreasonable searches and seizures is applicable to commercial premises, see New York v. Burger, 482 U.S. at 699, and that the warrant requirement of the Fourth Amendment applies to commercial premises, see See v. City of Seattle, 387 U.S. at 543.  It was well established that the warrant requirement applies except where a legislature has responded to "relatively unique circumstances" in providing otherwise. Marshall v. Barlow's Inc.  436 U.S. at 313.  Furthermore, the Supreme Court of the United States had set out the requirements for a warrantless administrative search to be reasonable in New York

-45-

v. Burger.  See 482 U.S. at 702-703.

It was also clear that a regulatory scheme allowing warrantless entry under the pervasively regulated business exception must provide a "constitutionally adequate substitute for a warrant." Marshall v. Barlow's Inc. 436 U.S. at 313.  The Defendants should have reasonably known that,  to qualify for the warrantless search exception, they had to comply with all three prongs of the New York v. Burger test.  It was also reasonable for them to know that, if they did not avail themselves of the requirements of the statute and permit, which were a constitutional substitute for a warrant under New York v. Burger, their search would be  unreasonable.  Each of these rights are articulated in an opinion by either the Tenth Circuit or the Supreme Court of the United States. All of Copar Pumice's rights, therefore, were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Mimics, Inc. V. Village of Angel Fire, 394 F.3d at 842.

At the same time, the Court can find no precedent for the proposition that a warrantless search, done without compliance with the state statute, can come within the pervasively regulated business exception.  The Court is not aware of any "near-miss" exception to the warrant requirement or proposition that state officials do not have to reasonably comply with the applicable state statutes and permits constitutionally permitting irregular, warrantless searches.  Accordingly, Copar Pumice had a right not to be inspected without a search warrant, unless the state officials conducted their search pursuant to and in compliance with the substitute for a warrant -- the statute and the permit.

Furthermore, no extraordinary circumstances appear to have existed justifying the Defendants' failure to comply with state law or to secure a warrant.  Nothing appears to have prevented the Defendants from knowing the law and following it.  Additionally, reliance on a statute or regulation, such as the statute in this case, will not make an official's conduct objectively

reasonable if the official "unlawfully enforces [such] ordinance in a particularly egregious manner, or in a manner which a reasonable officer would recognize exceeds the bounds of the ordinance." Mimics, Inc. v. Village of Angel Fire, 394 F.3d at 846-47 (internal quotations and citations omitted).

The plain language of the statute and of the permit told Morris and Yantos what needed to be done. A reasonable officer would realize that, to comply with the statute and come within the warrantless exception, he or she must follow the statute. Morris and Yantos did not comply with the plain language of the statute or the permit. There is no basis to excuse the Defendants' violation of a well-established constitutional right on the basis of extraordinary circumstances. The Court will thus deny Defendants' motion for summary judgment on the basis of qualified immunity in regards to Morris and Yantos' search.

**IV.  THE APPLICABLE LAW AND COPAR PUMICE'S CONSTITUTIONAL RIGHTS WERE CLEARLY ESTABLISHED AT THE TIME OF THE SEIZURE AND PUT THE DEFENDANTS ON NOTICE THAT THE SEIZURE OF COPAR PUMICE'S DOCUMENTS WAS UNCONSTITUTIONAL.**

The Court has already determined that, at the time of the search, it was clearly established that an inspector violated a corporation's Fourth Amendment rights if he did not reasonably comply with the plain language of the statute and permit permitting him to conduct a warrantless investigation of a pervasively regulated business. The question the Court must now determine is whether it was clearly established that an inspector would be violating a corporation's Fourth Amendment rights if he did something during the search that was not mentioned in the governing statute or permit, that acted as a substitute for a warrant. Because the statute and permit under which Morris and Yantos operated acts as a substitute for a warrant, the Court believes that those documents must satisfy the same requirements as a regular warrant to allow the Defendants to reasonably seize Copar Pumice's documents.

-47-

At the time of the search, it was clearly established that "[t]he Fourth Amendment requires search warrants to particularly describe[e] the place to be searched, and the persons or things to be seized." United States v. Angelos, 433 F.3d at 744 (internal quotations and citations omitted). Furthermore, the Tenth Circuit had held that "[t]he Fourth Amendment requires that a search warrant describe the things to be seized with sufficient particularity to prevent a general exploratory rummaging in a person's belongings." United States v. Campos, 221 F.3d at 1147 (internal citations and quotations omitted). "A warrant's description of things to be seized is sufficiently particular if it allows the searcher to reasonably ascertain and identify the things authorized to be seized." United States v. Hargus, 128 F.3d at 1362 (internal quotations and citations omitted).

At the time of the search, the Tenth Circuit had stated that "[t]he requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." Davis v. Gracey, 111 F.3d at 1478 (internal quotations and citations omitted). "The test applied to the description of the items to be seized is a practical one . . . and the language in warrants is to be read in a common sense fashion . . . . As an irreducible minimum, a proper warrant must allow the executing officers to distinguish between items that may and may not be seized." Id. (internal citations and quotations omitted). Thus, at the time of the inspection, it was clearly established that, under a warrant, the items to be seized must be particularly described. It was also clearly established that the purpose of such a rule was to avoid leaving discretion to the individual conducting the search and to prevent general searches.

What was also clearly established, was that these general warrant principles carried over to

statutes which served as substitutes for warrants in searches of pervasively regulated businesses. While not specifically addressing the need for administrative statutes to authorize seizure, New York v. Burger examined a warrantless search and seizure under the closely regulated business exception. See 482 U.S. 691.   In New York v. Burger, the Supreme Court held that the warrantless administrative inspection of the pervasively regulated business was reasonable because it satisfied the three prongs of the test the Supreme Court set forth.   See id. at 702-703.   The trial court noted that, during the warrantless inspection, the inspectors seized several items while conducting their search. See People v. Burger,125 Misc.2d at 710, 479 N.Y.S.2d at 938.   The statute authorizing the warrantless search, however, did not specifically permit seizures and authorized only inspection. See New York v. Burger, 482 U.S. at 694.   The Supreme Court held that the inspection was constitutional and reasonable under the Fourth Amendment, but did not specifically address whether the seizure of the items, not expressly  permitted by the statute, was a violation of the Fourth Amendment.   See id. at 702-703.

In United States v. Colonnade Catering Corp., 397 U.S. 72 (1970), a federal agent who was a member of the Alcohol and Tobacco Tax Division of the Internal Revenue Services was a guest at party on Colonnade Catering's premises and noted a possible Federal excise-tax violation.   See id. at 73.   Federal agents later visited the premises and, without the manager's consent, inspected the cellar.   See id.   The agents asked for the locked liquor storeroom to be opened, and Colonnade Catering's president refused to open the door.   See id.   The agents admitted to not having a warrant and proceeded to break the lock on the storeroom door, enter the room, and removed bottles of liquor that they suspected of being refilled contrary to the command of 26 U.S.C. § 5301(c).   See United States v. Colonnade Catering Corp., 397 U.S. at 73.   The relevant statutes provided that the

-49-

Secretary of Treasury or his delegate has broad authority to enter and inspect the premises of retail

dealers in liquors.  See United States v. Colonnade Catering Corp., 397 U.S. at 73-74.  The statute

also provided that if the dealer refused to permit the inspection he or she would be fined.  See id. at

74.  The Supreme Court stated: "The question is whether the imposition of a fine for refusal to

permit entry -- with the attendant consequences that violation of inspection laws may have in this

closely regulated industry -- is under this statutory scheme the exclusive sanction, absent a warrant

to break and enter."  Id.  The Supreme Court stated that it had recognized the special treatment of

inspection laws of this kind in Boyd v. United States, 116 U.S. 616, 624 (1886).  The Supreme Court

stated: "(In) the case of excisable or dutiable articles, the government has an interest in them for the

payment of the duties thereon, and until such duties are paid has a right to keep them under

observation, or to pursue or drag them from concealment."  United States v. Colonnade Catering

Corp., 397 U.S. at 76 (quoting Boyd v. United States, 116 U.S. at 624).  The Supreme Court further

stated:

> The seizure of stolen goods is authorized by the common law; and the seizure of
> goods forfeited for a breach of the revenue laws, or concealed to avoid the duties
> payable on them, has been authorized by English statutes for at least two centuries
> past; and the like seizures have been authorized by our own revenue acts from the
> commencement of the government. The first statute passed by Congress to regulate
> the collection of duties, the act of July 31, 1789, 1 Stat. 29, 43, contains provisions
> to this effect. As this act was passed by the same Congress which proposed for
> adoption the original amendments to the Constitution, it is clear that the members of
> that body did not regard searches and seizures of this kind as unreasonable, and they
> are not embraced within the prohibition of the amendment. . . . (I)n the case of
> excisable or dutiable articles, the government has an interest in them for the payment
> of the duties thereon, and until such duties are paid has a right to keep them under
> observation, or to pursue and drag them from concealment.

United States v. Colonnade Catering Corporation, 397 U.S. at 76 (quoting Boyd v. United States,

116 U.S. at 623).  In United States v. Colonnade Catering Corporation, the Supreme Court stated:

"We agree that Congress has broad power to design such powers of inspection under the liquor laws as it deems necessary to meet the evils at hand." United States v. Colonnade Catering Corporation, 397 U.S. at 76.  Furthermore, the Court held: "Where Congress has authorized inspection but made no rules governing the procedure that inspectors must follow, the Fourth Amendment and its various restrictive rules apply." Id. at 77.  Ultimately, the Supreme Court held that, under the existing statutes, Congress selected a standard "that does not include forcible entries" and thus that the officers could not break and enter the storeroom without a warrant.  Id. at 77.

In United States v. Biswell, the Supreme Court again addressed the issue of a pervasively regulated business in which a warrantless search and seizure occurred.  See 406 U.S. 311.  Again, like in New York v. Burger, the relevant portion of the statute that the Supreme Court deemed to permit warrantless searches of the business did not specifically authorize the seizure of items located during inspection.  See United States v. Biswell, 406 U.S. at 312.  The Supreme Court, however, held that the seizure of two sawed-off rifles that police officers found during their inspection of a pawnshop in Hobbs, New Mexico was constitutional.  See id. at 317.  The pawnshop owner was indicted and convicted for dealing in firearms without having paid the occupational tax.  See id. at 313.  "We have little difficulty in concluding that where, as here, regulatory inspections further urgent federal interest, and the possibilities of abuse and the threat to privacy are not of impressive dimensions, the inspection may proceed without a warrant where specifically authorized by statute." Id. at 317.  In its opinion, the Supreme Court referenced its earlier opinion in United States v. Colonnade Catering Corp. and stated that "it is clear under Colonnade that the Fourth Amendment would not bar a seizure of illicit liquor."  United States v. Biswell, 406 U.S. at 314.  The Supreme Court also referenced its prior opinion's mention of the historically broad authority of government

-51-

to regulate the liquor industry and the approval of similar inspection laws. See  United States v. Biswell, 406 U.S. at 314.  Additionally, the Supreme Court quoted its language from United States v. Colonnade Catering Corp. detailing the history of the law regarding seizures of stolen goods and seizure of goods concealed to avoid the duties payable on them.  See id.   The Supreme Court explained that the history of duties law indicated that the members of Congress "did not regard searches and seizures of this kind as unreasonable, and they are not embraced within the prohibition of the amendment." United States v. Biswell, 406 U.S. at 314 (internal citations and quotations omitted). The Supreme Court stated that the "reasonableness of a warrantless search . . . will depend upon the specific enforcement needs and privacy guarantees of each statute." Id. at 321.

In See v. City of Seattle, the Supreme Court determined that a business owner's refusal  to permit a fire department's warrantless investigation of a locked commercial warehouse was constitutional.  See 387 U.S. at 546.  In coming to its decision, the Supreme Court stated: "It is now settled that, when an administrative agency subpoenas corporate books or records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." Id. at 544. The Supreme Court further stated: "The agency has the right to conduct all reasonable inspections of such documents which are contemplated by statute, but it must delimit the confines of a search by designating the needed documents in a formal subpoena." Id.  The Supreme Court held that such minimal limitations on administrative action is constitutionally required for investigative entry upon commercial establishments.  See id. at 545.  The Supreme Court stated: "Given the analogous investigative functions performed by the administrative subpoena and the demand for entry, we find untenable the proposition that the subpoena, which has been termed a 'constructive' search, is

subject to Fourth Amendment limitations which do not apply to actual searches and inspections of commercial premises." Id. at 545-46. The Supreme Court stated: "We therefore conclude that administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure." Id. at 546.  "Any constitutional challenge to such programs can only be resolved, as many have been in the past, on a case-by-case basis under the general Fourth Amendment standard of reasonableness." Id. Therefore, the Supreme Court held that See could not be prosecuted for exercising his constitutional right to insist that the fire inspector obtain a warrant authorizing entry upon his locked warehouse. See id.

The Tenth Circuit has provided some insight into the issue of administrative seizure.  In United States v. Herrera, a police officer seized a commercial vehicle that he mistakenly believed was pervasively regulated.  See 444 F.3d at 1241.  In clarifying the correct premise of an administrative search the Tenth Circuit stated: "An administrative search is . . . premised on the individual subject to the warrantless seizure and search knowingly and voluntarily engaging in a pervasively regulated business, and on the existence of a statutory scheme that puts that individual on notice that he will be subject to warrantless administrative seizures and searches." Id. at 1246 (internal quotations and citations omitted).

Other Circuits have dealt with this issue more directly.  The Ninth Circuit,  in United States v. Argent Chemical Laboratories, Inc., stated that a defendant's argument that the closely regulated business exception did not extend to seizures was untenable.  See 93 F.3d at 577.  The statute at issue in United States v. Argent Chemical Laboratories, Inc. regulated drug manufacturers and expressly and specifically rendered articles "liable to seizure."  93 F.3d at 574, 577.  The Ninth

-53-

Circuit stated this wording alleviated the need for probable cause or a warrant to seize, because Congress expressly authorized seizures through the regulation.  See 93 F.3d at 574, 577. The Ninth Circuit in United States v. Argent Chemical Laboratory, Inc. acknowledged, however, that, while New York v. Burger discussed  its criteria for closely regulated industries in terms of inspections only, warrantless seizure is appropriate when permitted by Congress. See id. at 574, n.1 (citing United States v. Biswell, 406 U.S. at 317 (finding that warrantless search and seizure of firearms on which the dealer had not  paid the required special occupational tax was constitutional); Colonnade Catering Corp. v. United States, 397 U.S. at 77 (stating that warrantless seizure of  illicit liquor was constitutional)).  The Ninth Circuit  noted that the Supreme Court in United States v. Biswell held that, because the unwarranted inspection was constitutionally permissible, the seizure of the defendant's sawed-off rifles was not unreasonable under the Fourth Amendment.  See id.  The Ninth Circuit ultimately concluded that the closely regulated business exception "extends to seizure without warrant of what may be inspected without warrant, when Congress so authorizes." Id. at 577 (internal quotations and citations omitted)(emphasis added).

The Sixth Circuit, in discussing the unconstitutionality of a warrantless seizure under the relevant statute, held that, "nothing in the Act authorizes the wholesale seizure of records which took place here.  Even where a statute requires records to be maintained and authorizes on-premise inspection of them in the normal course, no precedent sanctions direct access to the record without demand in the absence of a search warrant." United States v. Consolidated Coal Co., 560 F.2d at 217.  The Sixth Circuit  stated: "It is, however, implicit . . . that the right to inspect does not carry with it the right, without warrant in the absence of arrest, to reach that which is to be inspected by a resort to self-help in the face of the owner's protest."  Id. (internal quotations and citations

-54-

omitted).  In upholding the constitutionality of the warrant used to conduct a search of a coal mine, the Sixth Circuit held "warrants actually issued should be carefully tailored, by limiting the items to be seized, to prevent the abuses inherent in 'general, exploratory rummaging in a (company's) belongings.'" Id. (quoting Coolidge v. New Hampshire, 403 U.S. at 467).

Following the guidance of the Ninth Circuit, a federal district court held, "[f]or the pervasively regulated business exception to the warrant requirement to apply not only to searches but also to seizures, the statutory regulation must expressly authorize seizures." Golden Day Schools, Inc. v. Pirillo, 118 F.Supp. 2d at 1045 (citing  United States v. Argent Chem. Labs. Inc., 93 F.3d at 574, 577).  The district court elaborated by stating: "[G]iven the policies underlying the pervasively regulated business exception to the warrant requirement, it is reasonable to infer that the Legislature did not, through its silence, intend to expand the powers of state agents to seize . . . records without a warrant."  Golden Day Schools, Inc. v. Pirillo, 118 F.Supp. 2d at 1045.  In following the rules set forth by the Ninth Circuit, the district court held that, because the regulations offered no notice of a seizure of records,  the defendants could not justify a warrantless seizure of the school's files.  See id. at 1045-46.

The Court believes that the precedent specifically involving warrantless administrative seizures, as well as the precedent explaining the warrant requirements for seizures, clearly establish that the Defendants' seizure of Copar Pumice's records, that occurred during an unreasonable search, was a violation that was clearly established at the time of the violation.  In United States v. Herrera, the Tenth Circuit specifically stated: "An administrative search is . . . premised on the individual subject to the warrantless seizure and search knowingly and voluntarily engaging in a pervasively regulated business, and on the existence of a statutory scheme that puts that individual

on notice that he will be subject to warrantless administrative seizures and searches." 444 F.3d at 1246 (internal quotations and citations omitted)(emphasis added).  In this situation, the statutory scheme is silent regarding seizure.  The statutory scheme does not put Copar Pumice on notice that it will be subject to warrantless seizures.  In fact, the statutory scheme omits the term "seizure," and instead states that the inspector can have access to the documents and may copy the documents.

While the Court notes that the Supreme Court stated that the seizure of illegal weapons was permissible in United States v. Biswell and the seizure of illicit liquor was permissible in United States v. Colonnade Catering Corp., despite the silence of the statute permitting the warrantless search on the issue of seizure, the Court notes that the Supreme Court explained that the seizure of both of those illegal items, which were property that was concealed to avoid the duties payable on them, had a long history of being permissibly seized.  In Copar Pumice's situation, the parties have not presented to the Court any such law -- common law, cases, or statutory -- that has historically or presently permitted the seizure of the relevant documents.  Furthermore, the Court believes there is a distinction between the documents seized in this case, and illegally possessed guns and liquor. Because the Court has not been presented with other sources that provide permission for a seizure of Copar Pumice's documents, the permission needs to come from the warrant substitute, the statute or the permit, neither of which gives such permission.  The Court finds that Copar Pumice's right to not have its documents seized under an unreasonable search was clearly established, because it would be clear to a reasonable inspector that his conduct of seizing Copar Pumice's documents was unlawful in this situation.

**IT IS ORDERED** that Defendants' Motion for Summary Judgment on the Basis of Qualified immunity is denied.

-56-

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Holly A. Hart
Kristin L. Davidson
Scheuer, Yost & Patterson
Santa Fe, New Mexico

    *Attorneys for the Plaintiff*


Jerry A. Walz
Walz and Associates
Cedar Crest, New Mexico

    *Attorneys for the Defendants*