## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

COPAR PUMICE COMPANY, INC.,

                Plaintiff,

vs.                                   No. CIV 07-0079 JB/ACT

ALLAN MORRIS, in his individual capacity,
DAVID YANTOS, in his individual capacity,
MARY UHL, in her individual capacity,
DEBRA MCELROY, in her individual capacity,
and RON CURRY, in his individual capacity as
Secretary of the New Mexico Environment
Department,

                Defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Bench Trial Brief (Declaratory Judgment, Permanent Injunction, Attorney's Fees Incurred in Administrative Proceedings as Damages), filed July 30, 2009 (Doc. 138); (ii) the Defendants' Trial Brief as to Count III of Plaintiff's Amended Complaint, filed July 30, 2009 (Doc. 139); (iii) Defendant's Proposed Findings of Facts and Conclusions of Law, filed August 21, 2009 (Doc. 144) ("Defs. Proposed Findings"); (iv) Defendants' Post Bench Trial Supplemental Brief, filed August 21, 2009 (Doc. 145); (v) Plaintiff's Proposed Findings of Fact and Conclusions of Law, filed August 21, 2009 (Doc. 146)("Pl. Proposed Findings"); and (vi) a bench trial held on July 31, 2009. The Court held an evidentiary bench trial on July 31, 2009. The primary issues are: (i) whether Defendants Allan Morris and David Yantos violated Plaintiff Copar Pumice Company, Inc.'s rights under Article II, Section 10 of the New Mexico Constitution; (ii) whether the Court should grant injunctive and declaratory relief declaring that the information, evidence, and documents gathered and taken from Plaintiff Copar Pumice Company, Inc.'s premises during the August 28, 2006 search

and seizure may not be used by Defendant Ron Curry in any proceeding and permanently enjoin Curry from using that evidence in any proceeding; and (iii) whether Copar Pumice is entitled to costs and attorney's fees incurred in this lawsuit and incurred in the New Mexico Environment Department ("NMED") administrative proceeding. Because the Court is bound by the jury's determination that Morris and Yantos violated Copar Pumice's Fourth Amendment right when it unlawfully conducted a search and seizure at the El Cajete mine, and because the New Mexico Constitution protects individuals even more broadly from unlawful searches and seizures, the Court finds that Morris and Yantos also violated Article II, Section 10 of the New Mexico Constitution when it inspected Copar Pumice's El Cajete site on August 29, 2006. The Court will award Copar Pumice attorneys' fees and expenses incurred in connection with its defense in the NMED administrative proceedings related to the unlawful search and seizure of documents. The Court, however, finds that a permanent injunction restraining the use of evidence in the NMED administrative proceedings and declaratory relief for past conduct are not appropriate remedies and denies that portion of Copar Pumice's third claim for relief.

### **FINDINGS OF FACT**

The Court is familiar with the facts from extensive pretrial motions practice and from two trials. The parties have stipulated that the Court may use the record from both trials as the record for making the findings of fact in this case. Accordingly, the Court makes the following findings of fact related to the three issues reserved by agreement for resolution by the Court through a bench trial.

## I.   **FACTUAL BACKGROUND**

1.     Copar Pumice is a New Mexico corporation, with its principal place of business in Rio Arriba County, New Mexico, and is engaged in pumice mining. See Pretrial Order ¶ 1, at 10,

filed June 23, 2009 (Doc. 98).

2.     In 2006, Copar Pumice was mining pumice at the El Cajete mine, located on United States Forest Service lands in the area of Jemez Springs, New Mexico.  See Pretrial Order ¶ 1, at 10.

3.     Copar Pumice is engaged in a heavily regulated industry and was issued the following permits by the Air Quality Bureau of the NMED in connection with its El Cajete pumice mining plant: 899, 899-M-1, 899-M-2.  See Defense Exhibits B, C, & D.

4.     The operative permit, 899-M-2, imposed conditions on Copar Pumice with which it agreed to abide to operate its facility.  See Defense Exhibit D.

5.     The NMED is an agency of the state of New Mexico created pursuant to NMSA 1978, § 9A-7-4.

6.     Allan Morris is an employee of the NMED's Air Quality Bureau in Santa Fe, New Mexico who was acting under color of state law at all material times.  See Pretrial Order ¶ 2, at 10.

7.     David Yantos was an employee of the NMED's Air Quality Bureau in Santa Fe, New Mexico who was acting under color of state law at all material times.  See Pretrial Order ¶ 3, at 10.

8.     Ron Curry is the Secretary of the NMED and the final decision-maker in developing and implementing policies, procedures, and practices, in training and supervising NMED employees and officers, and in ratifying conduct of NMED's employees and officers. Curry acted under color of state law at all material times.  See Pretrial Order ¶ 4, at 10.

9.     It is NMED's policy and procedure to follow state law, see Defense Exhibits N, JJJ, its policies and procedures, see Defense Exhibits P, Q, and obtain consent in conducting both announced and unannounced inspections. If consent is not obtained, inspectors cannot enter the facility by force, but rather must contact their supervisor before proceeding further.  See Plaintiff's Exhibit 20.

10.     On August 28, 2006,  Morris and Yantos entered land where Copar Pumice was operating a pumice screening plant.  See Pretrial Order ¶ 5, at 10.

11.     The inspection was unannounced.  See Defs. Proposed Findings ¶4, at 2.

12.     Morris and Yantos' unannounced inspection was a complaint-based inspection, following the receipt of numerous citizen complaints from residents living near the El Cajete plant, which Copar Pumice was allegedly operating outside the permitted hours of operation and which allegedly was emitting dust and other particulates into the air.  See Trial Transcript at 188:13-15 (taken July 7, 2009)("July 7 Tr.")(Morris).[1]

13.     Morris and Yantos entered the plant through an open gate.  See July 7 Tr. at 191:4-11 (Morris).

14.     Morris and Yantos encountered and spoke with Ismael Gomez, a laborer and front end operator at the mine, who was wearing a shirt with Copar Pumice and his name.  See July 7 Tr. at 105:1-3l (Morris); Trial Transcript at 173:23-174:1 (taken July 6, 2009)("July 6 Tr.")(Manges, I. Gomez).

15.     I. Gomez and Elias Gomez, both laborers at the mine, were the only employees present at El Cajete when Morris and Yantos arrived.  See July 6 Tr. at 188:16-19 (Manges, I. Gomez).

16.     When Salazar is away from the mine, neither I. Gomez or E. Gomez are in charge. See July 6 Tr. at 165:16-167:2 (Manges, Martinez).

17.     The Inspection Report lists Kelly Armstrong, president of Copar Pumice, as the

---

[1] The Court's citations to the transcripts of the jury and bench trials refer to the court reporter's original, unedited versions.  Any final transcripts may contain different page and/or line numbers.

responsible official for the source.  See Plaintiff's Exhibit 12.

18.      The NMED General Inspection Procedures requires inspectors to present credentials and obtain consent from the source official.  See Plaintiff's Exhibit 20; Trial Transcript at 16:16-17:3 (taken July 8, 2009)("July 8 Tr.")(Yantos).

19.      No contact was made with Armstrong or any of the mine foremen before or during the inspection.  See July 8 Tr. at 16:12-15 (Yantos).

20.       At the time, Adrian Salazar, a plant manager at El Cajete, was at a dental appointment and not on the premises.  See Pretrial Order ¶ 5, at 10-11.

21.      I. Gomez is a Mexican national, authorized to do work in the United States, who speaks and understands only Spanish; he does not speak English and knows a few simple English words.  See Pretrial Order ¶ 8, at 12; July 6 Tr. at 172:12-21 (Manges, I. Gomez).  At trial, I. Gomez spoke primarily through a Spanish interpreter.[2]

22.      I. Gomez never spoke to Morris in full sentences.  See July 7 Tr. at 156:8 (Morris).

23.      I. Gomez did not have keys to the office or to the front gate of the mine.  See July 6 Tr. at 174:6-11 (Manges, Gomez).

24.      On August 28, 2006, I. Gomez was greeted by Morris and Yantos, who asked him for his supervisor, and I. Gomez told them his supervisor was not there.  See July 6 Tr. 176:10-12 (Gomez).

25.      I. Gomez thought Morris and Yantos were inspectors Mine Safety and Heath

---

[2] I. Gomez was asked, without the translation of his interpreter, if he understood specific English words.  He understood "inspection," "water," "base course," and "records."  He did not understand "conveyor," "photocopy," "particulate," "hours of operation," "ha[ul] roads," "search," "receipt," "sprays," "escort," or "process and transfer equipment"  July 7 Tr. at 180:16-181:25 (I. Gomez, Manges).

Administration because of "the things they had on their heads."  July 6 Tr. at 176:17-18 (Gomez);
July 7 Tr. at 146:7-9 (Martinez)(stating that I. Gomez told him the day after the inspection that
Morris and Yantos were inspectors).

26.     Morris and Yantos were wearing hard hats and safety goggles when they approached
I. Gomez.  See July 7 Tr. at 103:25-104:6 (Morris).

27.     I. Gomez went to the trailer on the El Cajete mine site, where Copar Pumice houses
its office, to get parts he needed for the conveyor he was repairing, and the inspectors followed him,
though he did not know why they followed him.  See July 6 Tr. 176:12-14 (Gomez).

28.     Morris and Yantos entered the trailer and removed twenty-four pages of records.  See
Pretrial Order ¶¶ 6-7, at 11; ¶ 7, at 15; July 7 Tr. at 115:22-23 (Morris).

29.     Morris and Yantos located, removed from the trailer, photocopied, and returned
without undue delay the twenty-four pages of records that facially appeared to reflect the hours of
operation which the permit mandated were to be kept.  See July 7 Tr. at 115:22-24 (Morris).

30.     State law allows for records to be photocopied during a lawful inspection.  See
NMSA 1978, § 74-2-13.

31.     Morris and Yantos also conducted an inspection of the Copar Pumice mine site
screening facility.  See Pretrial Order ¶ 8, at 11.

32.     I. Gomez did not accompany Morris and Yantos on the inspection.  See July 6 Tr.
at 174:21-22 (Manges, Gomez).

33.     I. Gomez could not consent to an inspection because he does not know how to speak
English.  See July 6 Tr. at 174:23-175:1 (Manges, Gomez).

34.     Copar Pumice had a policy requiring a supervisor or member of management to be
present at regulatory inspections.  See July 7 Tr. at 18:20-24 (Armstrong).

35.     Salazar, Armstrong, Ruben Velasco, foreman of the El Cajete mine, and Ralph Martinez, Copar Pumice's safety and environmental compliance coordinator, had authority to consent to inspections at the El Cajete mine.  See July 7 Tr. 19:12-18 (Manges, Armstrong).

36.     Before the August 28, 2006, inspection, there had not been an inspection of any kind at the El Cajete mine for which Salazar was not present.  See July 6 Tr. at 225:16-20 (Manges, Salazar).

37.     I. Gomez did not have any authority over the mine.  See July 6 Tr. at 226:14-15 (Manges, Salazar).

38.     Velasco never authorized I. Gomez to give consent to inspectors.  See July 6 Tr. at 256:21-24 (Manges, Velasco).

39.     Morris understood that I. Gomez did not have authority over the record-keeping at the mine.  See Administrative Hearing Transcript 309:4-13 (taken March 4, 2009)(Morris); July 7 Tr. at 4-22 (Morris).

40.     I. Gomez did not have authority to consent to the inspection, and I. Gomez therefore did not consent to the inspection and seizure of documents at issue on behalf of Copar Pumice.  See July 7 Tr. at 169:20-170:5 (Manges, Morris).

41.     Morris and Yantos could not reasonably believe, based on the totality of their interactions with I. Gomez, that they had consent to inspect the El Cajete mine site, enter the trailer, and look at records.  See July 7 Tr. at 169:20-170:5 (Manges, Morris).

42.     Morris and Yantos could not reasonably believe they had consent to take records, photocopy them, and return to Copar Pumice.  See July 7 Tr. at 115:19-21 (Morris).

43.     During the remainder of the August 28, 2006 inspection, Morris and Yantos noted various violations that were set forth in the Compliance Order.  See Plaintiff's Exhibits 8.

-7-

44.     During the August 28, 2006 inspection, Morris concluded that Copar Pumice was in violation of a number of permit conditions.  See Plaintiff's Exhibit 8.

45.      Following the inspection, Morris drafted a "Post Inspection Notification" and a "Notice of Violation" alleging that Copar Pumice was in violation of six permit conditions as a consequence of the inspection.  See Plaintiff's Exhibits 8 & 14.

46.     Inspections of Copar Pumice had occurred both before and after August 28, 2006, all without incident or accusations of constitutional violations.  See July 6 Tr. at 137:15-17 (Martinez).

47.     Morris returned to the El Cajete mine for another inspection on September 19, 2006. See Defense Exhibit T at 6; July 7 Tr. 165:20-22 (Morris).  At that inspection, Salazar showed Morris the same records that had previously been photocopied during the August 28, 2006 inspection.  See Plaintiff's Exhibit 34 at Vol. 1, Pg. 59; Plaintiff's Exhibit 27 ¶4, at 1.

48.     Copar Pumice invited NMED inspectors to return to the El Cajete site on March 6, 2007.  See Bench Trial Transcript at 27:14-16, taken July 31, 2009 ("Bench Tr.").

49.     The violations of Copar's permit conditions were separately noted on September 19, 2006, and March 6, 2007, and were also subjects of the Compliance Order.  See Plaintiff's Exhibit 14.

50.     Copar Pumice continued unabated in its operation of the El Cajete mine following the August 28, 2006, inspection until its closure.  See July 7 Tr. at 40:6-22 (Armstrong).

51.     Copar Pumice ceased operations in November 2007 and is not currently in operation. It closed for reasons not associated with the Defendants.  Copar Pumice did not renew its lease of the El Cajete mine site with the United States Forest Service, and Copar Pumice has not filed a reclamation plan that must be approved by New Mexico Energy, Minerals and Natural Resources

Department, Mining and Minerals Division.  Armstrong did not provide the Court with a date when Copar Pumice might resume operations at El Cajete, but the reclamation process has been initiated with the United States Forest Service.  See Bench Tr. at 21:5-23 (Manges, Armstrong);  July 7 Tr. at 40:6-22 (Armstrong).

## II.    NMED ADMINISTRATIVE PROCEEDINGS

52.    Copar Pumice requested and NMED instituted administrative proceedings to review the proposed penalties Copar Pumice faced as a result of the Compliance Order.  See Affidavit of Allan Morris ¶¶16-17, at 4 (executed Nov. 19, 2008), filed Nov. 11, 2008 (Doc. 76-3)("Morris Aff.").

53.    As a result of Morris' inspection of the Copar Pumice screening plant, he concluded that there were several possible areas of non-compliance by Copar Pumice with the conditions of its air quality permit.  See Morris Aff. ¶ 10, at 3.

54.    As a result of Morris' inspection and observations, on August 28, 2006, he completed, signed and dated an Air Quality Bureau Post Inspection Notification form which identified six areas of potential non-compliance with Copar's Air Quality Permit No. 899-M2.  See Morris Aff. ¶ 11, at 3.

55.    Based upon Morris' August 28, 2006, inspection and further investigation, he concluded that Copar Pumice was in violation of certain permit conditions, and as a result of his conclusion, Morris drafted a Notice of Violation describing six violations of Copar Pumice's air quality permit conditions.  See Morris Aff. ¶ 14, at 3.

56.    The administrative proceedings were held in March, 2009, and took place over seven days of hearings in which ten witnesses testified.  See Plaintiff's Exhibit 34.

57.    The administrative proceedings addressed the August and September 2006

inspections as well as the March 2007 inspection. The violations from the September 19, 2006 and March 6, 2007 inspections can be identified and separated from the violations and penalties identified during the August 28, 2006 inspection. See Plaintiff's Exhibit 34.

58.     The administrative hearing touched on the legality of the search and seizure at the El Cajete mine, including whether I. Gomez spoke or understood English, whether he consented to the search, whether he had authority to consent to the search, whether the investigators presented their credentials to I. Gomez, and whether the pumice plant was actually operating. See Plaintiff's Exhibit 34. Morris, I. Gomez, Salazar, Armstrong, Martinez, Velasco, and Richard Bell, former operations manager for Copar Pumice, each spoke about the August 26, 2006 incident in their testimony. See Plaintiff's Exhibit 34.

59.     The parties litigated the separate violations that were found at Copar Pumice's El Cajete mine from the inspections on August 28, 2006, September 19, 2006, and March 6, 2007. See Plaintiff's Exhibit 34.

60.     Copar Pumice notified the Defendants that it viewed the penalty proceedings to be a consequence of an unlawful search and seizure. See Plaintiff's Exhibits 16 & 17.

61.      While many of the witnesses touched upon the circumstances surrounding the August 28, 2006 inspection, the vast majority of the hearing concerned the violations that were found at the El Cajete mine site.[3]

62.     According to the testimony at the Administrative Hearing, there was an independent inspection on September 19, 2006, in which Salazar, with proper actual consent, voluntarily gave

---

[3] Copar Pumice contends that 35% of the administrative proceedings concerned the legality of the August 28, 2006 search, see Plaintiff's Proposed Findings ¶ 23, at 8, whereas the Defendants contend that 11% of the administrative proceedings concerned the legality of the search, see Bench Tr. at 70:10-15 (McElroy). See Plaintiff's Exhibit 34.

documents to Morris. These documents were the same documents that had previously been seized unlawfully. See Administrative Hearing Tr. Vol. 1, 235:23-236:10 (Grantham, Morris).

63.     Approximately twenty-two percent of the testimony and argument in the NMED administrative proceedings was devoted to addressing the August 28, 2006 incident, including the search itself, the seizure of documents, and the documents specifically seized that day.[4]

64.     The hearing office has not yet made a recommendation whether violations occurred and what penalties should be imposed.  NMED has moved to stay the administrative proceeding pending a final judgment in this matter.  See Complainant NMED's Motion to Stay Proceeding and Reopen Record at 2, filed August 28, 2009 (Doc. 149-2).

## III.     NATURE OF THIS ACTION.

65.     As a result of the inspection and removal of documents from the Copar Pumice mine site, on January 23, 2007, Copar Pumice filed a Complaint against Morris, Yantos, and Defendant Ron Curry, Secretary of NMED.   See Complaint for Violations of Civil Rights, filed January 23, 2007 (Doc. 1).

66.     Copar Pumice filed an Amended Complaint, seeking redress for violations of the Fourth Amendment to the United States Constitution and of Article II, Section 10 of the New Mexico Constitution.  See Amended Complaint for Violation of Civil Rights, filed July 3, 2007 (Doc. 36)("Amended Complaint").

67.     Copar Pumice made three claims: (i) that the inspection of its premises and removal

---

[4] Though there may be a number of ways to calculate how much of the administrative proceeding was devoted to the search and seizure violation on August 28, 2006, both parties chose to use percentages to illustrate how the issue was addressed.  The Court's own assessment, therefore, mirrors the method of the parties.  The Court reviewed all testimony and argument in the March, 2009, administrative proceeding and calculated what portion of that testimony and argument was devoted to the August 28, 2006 inspection.

of its records constituted an unreasonable search and seizure, and thus violated the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution; (ii) that the administrative-penalty assessment actions violated the equal-protection clause of the Fourteenth Amendment to the United States Constitution and Article II, Section 18 of the New Mexico Constitution; and (iii) Copar Pumice is entitled to prospective injunctive relief from Curry and NMED conducting warrantless searches, and declaratory relief that the search and seizure of Copar Pumice's mine was unconstitutional.  See Amended Complaint ¶¶ 23-37, at 5-7.

68.     The Court previously dismissed the prospective injunctive relief claims against the NMED because the Eleventh Amendment forecloses Copar Pumice's attempt to prevent the NMED from using or relying upon any and all documents that the NMED obtained as a result of its inspection of the Copar Pumice mine on August 28, 2006.  See Memorandum Order and Opinion, filed September 10, 2007 (Doc. 54).  Consequently, the injunctive relief claim is solely against Curry, in his official capacity as the Secretary of the NMED.

69.     The Court also dismissed Count II of Copar Pumice's Amended Complaint, the equal-protection claims advanced against Defendants Mary Uhl and Debra McElroy, pursuant to the Defendants' motion for summary judgment based on qualified immunity.  See Memorandum Opinion and Order, filed May 11, 2009 (Doc. 94).

### A.     JURY TRIAL ON THE FOURTH AMENDMENT VIOLATION CLAIM.

70.     A trial on the merits of the Fourth Amendment claim was held before a jury on July 6, 7, and 8, 2009.

71.     On July 8, 2009, the jury returned a verdict which found that Morris and Yantos had violated Copar Pumice's rights under the Fourth Amendment of the United States Constitution.  See Verdict Form, filed July 8, 2009 (Doc. 131).

72.     The jury awarded nominal damages of $1.00.  <u>See</u> Verdict Form.

**B.      BENCH TRIAL ON THE NEW MEXICO CONSTITUTIONAL CLAIM, INJUNCTIVE AND DECLARATORY RELIEF, AND DAMAGES ARISING FROM THE ADMINISTRATIVE HEARINGS.**

73.     The parties stipulated that certain issues were tried to the jury and certain issues were to be tried to the Court.  The parties agreed that the Court should determine the following issues:

> a.      The Parties waive any right they may have to a jury trial with regard to Count III of Pumice  Copar's Amended Complaint, which pertains to declaratory and injunctive relief, and agree that these claims shall be determined by the Court.

> b.      The Parties hereby waive any right they may have to a jury trial with regard to Pumice Copar's claims that its rights have been violated by Defendants under Article 2, Section 10 of the New Mexico Constitution, and agree that these claims shall be determined by the Court.

> c.      The Parties hereby waive any right they may have to a jury trial with respect to Pumice Copar's damage claim for its costs and reasonable attorneys' fees arising from the defense of certain administrative penalty proceedings before the New Mexico Environment Department AQCA 07-39 and agree that these matters shall be determined by the Court.

<u>See</u> Stipulation and Waiver Regarding Jury Trial of Certain Claims, filed July, 7, 2009 (Doc. 124)("Stipulation").

74.     The parties agreed that the Court was to consider all evidence introduced during the course of the jury trial in consideration of the issues before the Court.  <u>See</u> Pl. Proposed Findings at 3.

### 1.      <u>Article II, Section 10 of the New Mexico Constitution Claim</u>.

75.     Morris and Yantos could not have reasonably believed that I. Gomez had authority to consent to the inspection.  <u>See</u> Defendant's Findings ¶ 6, at 2.

76.     Morris and Yantos searched the trailer office of Copar Pumice and seized documents

without authorized consent.

### 2.      Injunctive Relief Claim Against Secretary Curry.

77.      Morris and Yantos obtained evidence during the course of their August 28, 2006 search and seizure of documents which resulted in the filing of Compliance Order No. AQCA 07-39 pending before the NMED and Secretary Curry.  See Plaintiff's Exhibit 27.

78.      Copar Pumice's Third Claim is "[f]or prospective injunctive relief enjoining NMED from interfering with Copar's privacy rights and right to be free of unreasonable searches and seizures and enjoining NMED from using or relying upon the records which were unlawfully seized for any purpose and in any proceeding," and "[f]or prospective injunctive relief enjoining NMED from pursuing its unlawful administrative penalty proceedings against Copar in violation of Copar's constitutional rights to free speech and association and constitutional right to be free from unlawful discrimination under the law . . . ."  Amended Complaint ¶ 5, at 8.

79.      Copar Pumice seeks a permanent injunction against Curry prohibiting him, and his employees, designees, or agents, from using any of the evidence, information, or documents seized or obtained during or as a result of the August 28, 2006 search and seizure in any administrative proceeding.  See Pl. Proposed Findings at 23.

80.      Specifically, Copar Pumice seeks to exclude the evidence obtained during the search, which includes: (i) the twenty-four pages of Copar Pumice's business records, which allegedly show that Copar Pumice failed to restrict hours of operation to ten hours per day, and which forms the basis of violation number 1 in the Compliance Order; (ii) Morris and Yantos' measurements and observations made on August 28, 2006 regarding location of a fence and alleged failure to restrict public access from the center of operations, which forms the basis of violation number 2; (iii) Morris' observations of dust made on August 28, 2006, which form the basis of violation

-14-

number 3; and (iv) the seizure of records found during the search of the office trailer, and other observations, which formed the basis of the record-keeping violations set forth in violation numbers 4 and 5 of the Compliance Order.  See Plaintiff's Exhibits 26 & 27.

81.    Additionally, Copar Pumice seeks to exclude any other evidence, measurements, photographs, statements and documents that Morris and Yantos gathered during the course of the August 28, 2006 inspection.  See Pl. Proposed Findings ¶ 31 at 10.

82.    The Court previously dismissed the prospective injunctive relief claims against the NMED because the Eleventh Amendment forecloses Copar Pumice's attempt to prevent the NMED from using or relying upon any and all documents that the NMED obtained as a result of its inspection of the Copar Pumice mine on August 28, 2006.  See Memorandum Order and Opinion, filed September 10, 2007 (Doc. 54).  Consequently, the injunctive relief claim is solely against Curry, in his official capacity as the Secretary of the NMED.

83.    During the course of the administrative hearing, NMED introduced a substantial amount of evidence obtained during the August 28 inspection, which Copar Pumice contends should be excluded.  See Exhibit 34.

84.    During the jury trial, NMED indicated that it would only withdraw one of the violations alleged in the Amended Compliance Order based upon the search and has not indicated that it will withdraw any of the evidence obtained.  See Plaintiff's Exhibit 27; Defendants' Exhibit DD.

85.    Even if the August 28, 2006 inspection had not taken place, a Compliance Order would have been issued against Copar Pumice based upon the September 19, 2006 and March 6, 2007 inspections, and a hearing would have been held.  See Bench Tr. at 77:4-14 (McElroy).

86.     Most violations and proposed penalties are resolved in the negotiation process, and the Compliance Order can be challenged in an administrative hearing.  See July 8 Tr. at 40:22-41:8 (McElroy).

87.     The administrative hearing officer makes a recommendation to be reviewed by the Cabinet Secretary, who will render a decision which can be appealed to the New Mexico Court of Appeals.  See July 8 Tr. at 41:11-12 (McElroy).

88.     Defendant Debra McElroy testified at the bench trial that the fines would only be minimally reduced if the August 28, 2006 inspection were determined to be unlawful.  See Bench Tr. at 74:6-20.

### 3.     Attorneys' Fees and Costs Arising From the Administrative Hearings.

89.     At the July 31, 2009 bench trial, the Court heard and received evidence regarding the attorneys' fees and costs associated with the March 2009 administrative hearing before the NMED. See Plaintiff's Exhibit 30; Bench Tr. at 11:8-13, 19:21-20:5.

90.     Copar Pumice argues it incurred attorneys' fees and costs in the NMED administrative hearings in the amount of $79,645.85.  See Plaintiff's Bench Trial Brief at 14, filed July 30, 2009 (Doc. 138).

91.     Copar Pumice contends that its damages in the form of attorneys' fees and costs incurred in the defense of the administrative proceeding are ongoing because the proceeding is ongoing.  See Plaintiff's Bench Trial Brief at 8, 12.

92.     The Defendants concede that Copar Pumice may be entitled to an award of reasonable fees and costs regarding the litigation of violations and penalties connected to the August 28, 2006 inspection.  See Defendant's Proposed Findings ¶ 11, at 6.

93.     Copar Pumice acknowledged that some of the costs incurred at the administrative

hearing pertaining to the defense of the validity of certain Copar Pumice operating records and spreadsheets are not recoverable.  See Plaintiff's Exhibit 34.

94.     Copar Pumice stated that a reduction of the total amount of defense costs attributable to defending the validity of the operating records issue would be twenty hours of Mr. Manges' work on that issue, or $4700.00 plus gross receipts tax thereon for total recoverable damages of $68,813.78.  See Plaintiff's Proposed Findings of Fact and Conclusions of Law ¶ 26, at 8-9, filed August 21, 2009 (Doc. 146)("Pl. Proposed Findings"); Plaintiff's Exhibit 30.

95.     Copar Pumice contends that the amount of damages sought is reasonable for the defense of a seven-day hearing because the fees were based upon records contemporaneously kept, actual hours spent, and upon reasonable hourly rates.  See Plaintiff's Exhibit 30.

96.     It was reasonably foreseeable to the Defendants that Copar Pumice would expend attorneys' fees as a result of the administrative-penalty proceeding instituted as a consequence of the inspection.  See Plaintiff's Exhibit 17.

97.     Defendants were on notice that Copar Pumice retained counsel for the defense of the proceedings as early as November 22, 2006.  See Plaintiff's Exhibit 17.

98.     The August 28, 2006, inspection and seizure proximately caused Copar Pumice to incur a portion of the attorneys' fees and costs resulting from its defense of the administrative proceeding.  See Plaintiff's Exhibit 30 and 37.

99.     Copar Pumice reserved the right to apply to the Court for additional fees which are expended on the administrative proceeding in the event such fees are recoverable under law and requested that the Court retain jurisdiction to enter such an award.  See Plaintiff's Proposed Findings of Fact and Conclusions of Law ¶ 26 n.1, at 8, filed August 21, 2009 (Doc. 146)

## CONCLUSIONS OF LAW

1.      The United States Court of Appeals for the Tenth Circuit has applied the doctrine of issue preclusion in holding that a jury's verdict binds the trial court where the jury determined factual issues that are common to the claims that the court:

> The true test is whether the jury verdict by necessary implication reflects the resolution of a common factual issue. If so, the district court may not ignore that determination, and it is immaterial whether, as here, the district court is considering equitable claims with elements different from those of the legal claims which the jury has decided.

AG Servs. of Am. v. Nielsen, 231 F.3d 726, 732 (10th Cir. 2000)(citing Butler v. Pollard, 800 F.2d 223, 225 (10th Cir. 1986).

2.      The Court is bound by both the actual findings of the jury and those that were necessarily implicit in its verdict, and the trial judge's findings on equitable claims may not conflict with the jury's determinations.  Ag. Servs. of Am. v. Nielsen, 231 F.3d at 730 (stating "[w]e must therefore turn to an analysis of what findings were actually made by the jury or were necessarily implicit in its verdict, . . . and whether the subsequent findings by the trial judge in deciding the equitable claims may have been in conflict with the jury's determinations.")(citing Butler v. Pollard, 800 F.2d 223, 225 (10th Cir. 1986)).

I.      **MORRIS AND YANTOS VIOLATED ARTICLE II, SECTION 10 OF THE NEW MEXICO CONSTITUTION.**

3.      Article II, Section 10 of the New Mexico Constitution provides:

> The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures, and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the persons or things to be seized, nor without a written showing of probable cause, supported by oath or affirmation.

N.M. Const. art. II, § 10.

4.      A warrantless search or seizure is presumed to be unreasonable and invalid under the Fourth Amendment of the Constitution of the United States and under the New Mexico Constitution unless it falls within a specific exception to the warrant requirement.  See United States v. Aquino, 836 F.3d 1268, 1271 (1988)(citation omitted).

5.      One of the exceptions to the federal and state constitution's warrant requirements is a search or seizure conducted by consent of the owner.   See State ex rel. Environmental Improvement Agency v. Albuquerque Publishing Co., 91 N.M. 125, 126, 571 P.2d 117, 118 (1977); N.M. Environmental Improvement Div. v. Climax Chem. Co., 105 N.M. 439, 440, 733 P.2d 1322, 1323 (Ct. App. 1986).

6.      Actual authority is where a third party has authority to consent to a search of property if that third party has either (i) mutual use of the property by virtue of joint access, or (ii) control for most purposes over it.  See United States v. Kimoana, 383 F.3d 1215, 1221 (10th Cir. 2004)(citing United States v. Rith, 164 F.3d 1323, 1329 (10th Cir. 1999)).

7.      Apparent authority is present when, even if the person giving consent does not possess actual authority, the inspector reasonably believes that the person who consents to entry has the authority to grant it.   United States v. Gutierrez-Hermosillo, 142 F.3d 1225, 1230 (10th Cir. 1998).

8.      To be valid under Article 2, Section 10 of the New Mexico Constitution, consent to a search must be freely and intelligently given, must be voluntary and not the product of duress or coercion, actual or implied, and must be proved by clear and positive evidence with the burden of proof on the state.  State v. Aull, 78 N.M. 607, 613, 435 P.2d 437, 443 (citing State v. Herring, 77 N.M.232, 421 P.2d 767 (1966)).

9.      Under New Mexico law, the person giving consent must have actual authority or

common authority with others in possession.   See State v. Duffy, 126 N.M. 132, 149-50, 967 P.2d 807, 824 (1998)(stating that "[a]n individual has authority to consent to the search of a dwelling if that person actually possesses the property or has common authority with others who are in possession."). The New Mexico Court of Appeals has declined to adopt the "apparent authority" exception that the Supreme Court of the United States formulated in Illinois v. Rodriguez, 497 U.S. 177 (1990), on the grounds that recognizing apparent authority to give consent would violate Article II, Section 10 of the New Mexico Constitution.   See State v. Wright, 119 N.M. 559, 564-65, 893 P.2d 455, 460-61 (Ct. App. 1995). The New Mexico Court of Appeals stated:

> We think the State's reliance on the officers' subjective belief that [a third party in the residence] had "apparent authority" to give consent to search the residence and the bedroom occupied by Defendant . . .   runs counter to the provisions of Article II, Section 10 of the New Mexico Constitution.  As noted by our Supreme Court in State v. Gutierrez, 116 N.M. 431, 446-47, 863 P.2d 1052, 1067-68 (1993), an individual's right to be free from unreasonable searches and seizures under Article II, Section 10 of our state constitution precludes the erosion of such right by recognition of a "good faith" exception as articulated by the United States Supreme Court in United States v. Leon, 468 U.S. 897 (1984).  We think the State's argument that this Court should recognize an "apparent authority" rule violates Article II, Section 10 of the New Mexico Constitution and is contrary to the rationale underlying our Supreme Court's decision in Gutierrez, 116 N.M. at 446-47, 863 P.2d at 1067-68.

119 N.M. at 564-65, 893 P.2d at 460-61.

10.   The Supreme Court of New Mexico has cited the New Mexico Court of Appeals' holding in State v. Wright that one individual must have actual authority and not just apparent authority to consent to warrantless searches, see State v. Duffy, 126 N.M. at 150, 967 P.2d at 825, but has not directly addressed the issue.  The Supreme Court has not disapproved of the holding in State v. Wright and has, on other occasions, found the state's protections against search and seizure is broader than the Fourth Amendment.   See State v. Bomboy, 144 N.M. 151, 153,

184 P.3d 1045, 1046-47 (2008)("Article II, Section 10 of the New Mexico Constitution gives broader protection to individuals in the area of automobile searches than is provided by the Fourth Amendment of the United States Constitution."); State v. Neal, 142 N.M. 176, 181, 164 P.3d 57, 62 (2007)("For the past fifteen years, [A]rticle II, [S]ection 10 has been construed to provide broader protections than the Fourth Amendment.")   The Court believes that the Supreme Court of New Mexico, if it were confronted with the issue in State v. Wright, would also conclude that the New Mexico Constitution affords greater protection than the United States Constitution in determining sufficient consent for a warrantless search.

11.     NMED policies concerning inspections require the inspectors to obtain actual consent from the entity for the inspection.  See Defendants' Exhibit P, at 4 ("Prior to making entry and conducting an inspection of the premises occupied by a regulated entity, NMED personnel shall obtain consent to do so from a representative of a regulated entity."); Plaintiff's Exhibit 20, at 7.

12.     Because a violation of the New Mexico Constitution does not provide for damages, the Court will, pursuant to the parties' stipulation, make a determination if a violation of the New Mexico Constitution occurred.  See Stipulation at 1.

13.     The jury returned a verdict, which found that Morris and Yantos violated Copar Pumice's rights under the Fourth Amendment.  See Verdict at 1.

14.     In doing so, the jury implicitly rejected the assertion that they reasonably believed I. Gomez had authority to consent to the inspection, and that I. Gomez gave actual consent to the inspection or seizure of the records.

15.     Because Copar Pumice has asserted a violation of the New Mexico Constitution against Morris and Yantos, and based on the fact that the jury has decided the federal search and seizure issue, Tenth Circuit authority indicates that the Court is bound by the jury's factual

determination that a federal constitutional violation occurred in determining whether Morris and Yantos violated Article II, Section 10 of the New Mexico Constitution.

16.     The Defendants concede that the Court may be bound whether Morris and Yantos violated the New Mexico Constitution based on the jury's determination and that the Court may be precluded from reaching a different result from the jury's finding as to the New Mexico constitutional claim.  See Defendants' Post Bench Trial Supplemental Brief at 3, 13.

17.     Additionally, as the Court independently found above, I. Gomez lacked actual authority to consent to an inspection of Copar Pumice's El Cajete mine, and he did not understand Morris and Yantos' questions; they did not in a meaningful way ask I. Gomez for consent; and I. Gomez did not actually consent to the August 28, 2006 inspection or seizure of records.

18.     The August 28, 2006 inspection and seizure was performed without Copar Pumice's consent, and there are no other applicable exceptions to the warrant requirement of Article II, Section 10 of the New Mexico Constitution.

19.     Because Article II, Section 10 of the New Mexico Constitution is broader in its protection against unlawful search and seizure than the Fourth Amendment of the United States Constitution, Morris and Yantos necessarily violated Copar Pumice's rights protected by Article II, Section 10 when they conducted the search and seizure on August 28, 2006.

20.     The Court finds that Morris and Yantos's August 28, 2006 search, inspection, and seizure of records violated Copar Pumice's rights under Article II, Section 10 of the New Mexico Constitution.

## II.     THE COURT WILL NOT GRANT COPAR PUMICE INJUNCTIVE OR DECLARATORY RELIEF.

21.     The Supreme Court stated in Bivens v. Six Unknown Fed. Narcotics Agents,

403 U.S. 388, 397 (1971), that, "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." 403 U.S. at 396-397 (quotation omitted).

22.    The United States Court of Appeals for the Tenth Circuit has stated: "[A] conclusion that the inspection . . . violated the Fourth Amendment would be of no practical significance in the absence of an exclusionary sanction.  If the exclusionary rule were inapplicable, even if a constitutional violation were to be found, no remedy would be available . . . ." Savina Home Inds., Inc. v. Sec. of Labor, 594 F.2d 1358, 1361 (10th Cir. 1979).

### A.    THE COURT WILL NOT GRANT AN INJUNCTION REQUIRING CURRY AND THE NMED TO EXCLUDE THE EVIDENCE OBTAINED DURING THE AUGUST 26, 2006 SEARCH AND SEIZURE.

23.    The Court has jurisdiction over Curry.

24.    Curry is the final decision maker in the administrative proceeding pending before him entitled Environmental Protection Division v. Copar Pumice Company, Inc., Case No. AQCA-07-39 (CO) brought by NMED against Copar Pumice.  See Plaintiff's Trial Brief at 11 n.2.

25.    The Defendants conceded during the bench trial that evidence obtained during an unlawful search and seizure could not be used in the NMED administration proceeding.  See Bench Tr. at 12:19-13:9 (Court, Walz).

26.    The Defendants also argued, however, that the proper remedy, if the Defendants do not obey federal constitutional law in the NMED proceedings, is an appeal to the New Mexico Court of Appeals.  See Bench Tr. at 13:10-19 (Court, Walz); July 7 Tr. at 54:2-8 (Armstrong).

27.    Under New Mexico law, aggrieved individuals have the right to appeal any administrative action:

   A.    Any person adversely affected by an administrative action taken by

the environmental improvement board, the local board, the secretary or the director may appeal to the court of appeals.  All appeals shall be upon the record made at the hearing and shall be taken to the court of appeals within thirty days following the date of action

\* \* \* \*

C.    Upon appeal, the court of appeals shall set aside the action only if found to be:

(1)    arbitrary, capricious or an abuse of discretion;

(2)    not supported by substantial evidence in the record; or

(3)    otherwise not in accordance with law.

D.    After a hearing and a showing of good cause by the appellant, a stay of the action being appealed may be granted:

(1)    by the environmental improvement board, the local board, the department or the local agency, whichever took the action being appealed; or

(2)    by the court of appeals if the environmental improvement board, the local board, the department or the local agency denies a stay or fails to act upon an application for a stay within sixty days after receipt of the application.

NMSA 1978, § 74-2-9.

28.    In cases of deference to state agencies, appeal from the decision of the agency would be to the state court systems.  See Crystal Clear Communs., Inc. v. Southwestern Bell Tel. Co., 415 F.3d 1171, 1177 (10th Cir. 2005).

29.    The Court must give deference to a state agency's enforcement of its policies and procedures.  See Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 112 (1991)(stating that, "since there is no reason to believe federal enforcement agencies are any less competent than their state counterparts, it would be anomalous to afford more deference to one than the other."); Burford v. Sun Oil Co., 319 U.S. 315, 334 (1943)(stating that the comprehensive state statutory scheme

-24-

should be given a "sound respect," and that the state administrative system should determine matters the state desires to have determined administratively and not in the first instance by its court system).

30.     Copar Pumice did not present any authority, nor has the Court found authority, supporting the ability of a district court to enjoin the use of evidence or otherwise dictate the procedures of a state administrative proceeding.[5]

31.     The applicability of the exclusionary rule to civil and administrative proceedings is uncertain.  In United States v. Janis, 428 U.S. 433 (1976), the exclusionary rule was not extended to forbid the use in federal civil proceedings evidence that state officials illegally seized, because the likelihood of deterring unlawful police conduct was not sufficient to outweigh the social costs that exclusion imposes.  See 428 U.S. at 454; Desist v. United States, 394 U.S. 244, 254 n. 24 (1969) (stating that "[we] simply decline to extend the court-made exclusionary rule to cases in which its deterrent purpose would not be served.").  The United States Court of Appeals for the Tenth Circuit in Savina Home Inds., Inc. v. Sec. of Labor, 594 F.2d 1358 (10th Cir. 1979), held that the

_____

[5] The Supreme Court in Gibson v. Berryhill, 411 U.S. 564 (1973), expressly declined to address whether the Anti-Injunction Act, 28 U.S.C. § 2283, which provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of jurisdiction, or to protect or effectuate its judgments," applies to state administrative proceedings.  411 U.S. at 573 n.12.  The Tenth Circuit has not addressed the issue.  Every other circuit that has addressed the issue has held that the Anti-Injunction Act does not apply to state administrative proceedings.  See Entergy Ark., Inc. v. Nebraska, 210 F.3d 887, 900-01 (8th Cir. 2000); Bud Antle, Inc. v. Barbosa, 45 F.3d 1261, 1271 (9th Cir. 1995); Kerr-McGee Chem. Corp. v. City of West Chicago, 914 F.2d 820, 824 (7th Cir. 1990); American Motor Sales Corp. v. Runke, 708 F.2d 202, 204-05 (6th Cir. 1983); Engelman v. Cahn, 425 F.2d 954, 958 (2d Cir. 1969).  The issue in these cases, however, was whether a federal district court may issue an injunction staying an administrative proceeding altogether.  Copar Pumice is not asking the Court to stay further NMED administrative proceedings, but rather asks the Court to dictate the evidentiary procedures in the proceedings.  There appears to be no authority granting a district court that power over state administrative proceedings which overcomes the deference given to the administrative agency's policies and procedures.

exclusionary rule is applicable to Occupational Safety and Health Administration proceedings. See 594 F.2d at 1363 ("Certainly considerations of preserving judicial integrity and deterring official lawlessness do not become inconsequential simply because an illegal search is conducted by the Department of Labor instead of by the Department of Justice."). But see Todd Shipyards Corp. v. Sec. of Labor, 586 F.2d 683, 689 (9th Cir. 1978)(holding that the exclusionary rule does not apply to Occupational Safety and Health Administration proceedings, because "the Supreme Court has never applied the exclusionary rule in a civil proceeding suggests that the rule should not be applied to OSHA proceedings.")(citing United States v. Janis, 428 U.S. at 447). The Supreme Court has thus far not addressed the division among the courts.[6]

32.     Because the Court must give deference to NMED's enforcement of its policies and procedures, including its administrative hearing evidentiary procedures, and because the appropriate forum for appeal of the NMED's assessment is in the state courts and not in the federal district courts, the Court will not enjoin Curry from using evidence gathered during the August 28, 2006 inspection in NMED administrative proceedings.

### B.    PERMANENT INJUNCTIVE RELIEF IS NOT AN APPROPRIATE REMEDY FOR THE VIOLATION OF COPAR PUMICE'S FOURTH AMENDMENT RIGHTS.

33.     The Supreme Court has set forth a four-factor test which a plaintiff seeking a

---

[6] Copar Pumice argues that the exclusionary rule applies in administrative proceedings involving penalties such as the pending administrative proceeding against Copar Pumice, the cases it cited do not unequivocally stand for this proposition. Savina Home Indus., Inc. v. Secretary of Labor did not address the uncertainty in the law. See 594 F.2d at 1362. United States v. Cunningham, 413 F.3d 1199, 1203 (10th Cir. 2005), was a criminal case affirming the district court's denial of a motion to suppress evidence obtained from a police search that was lawful under the inevitable-discovery doctrine. See 413 F.3d at 1203. It did not address civil proceedings or administrative proceedings.

permanent injunction must satisfy: (i) that it has suffered an irreparable injury; (ii) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (iii) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (iv) that the public interest would not be disserved by a permanent injunction. eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).

34.    An injunction is an "extraordinary remedy" to prevent future violations, and should be used sparingly.   See Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah, 114 F.3d 1513, 1522 (10th Cir. 1997).

35.    In situations where alleged conduct is based on a prior violation of rights, it is improper to impose injunctive relief.   See United States v. Oregon State Medical Society, 343 U.S. 326, 333 (1952)("The sole function of an action for injunction is to forestall future violations. It is so unrelated to punishment or reparations for those past that its pendency or decision does not prevent concurrent or later remedy for past violations by indictment or action for damages by those injured."); LAW v. National Collegiate Athletic Assoc., 185 F.R.D. 324, 329 (D. Kan. 1999)(denying injunctive relief where hints that defendants were predisposed to commit future acts was remote and citing defendant's argument that "mere proof of a past violation does not justify injunctive relief because an injunction is only available to prevent continuing or future harm.").

### 1.    Copar Pumice Will Not Suffer Irreparable Injury if a Permanent Injunction Is Not Granted.

36.    The NMED has policies and procedures in place that, on their face, appear to be constitutional, and require consent before inspection.  See Defendants' Exhibit P and Exhibit Q.

37.    NMED appears to require consent, and its failure to secure proper consent in this one

instance appears to be an isolated incident rather than a deliberate policy.

38.     The NMED conducted subsequent inspections of Copar Pumice's facility after the August 28, 2006 inspection, on September 19, 2006 and March 6, 2007, without incident and with consent from authorized representatives. <u>See</u> Bench Tr. at 24:5-2-8 & 27:14-16 (Walz, Armstrong)

39.     McElroy gave undisputed testimony that she has knowledge of around 1,600 inspections of permit holders that preceded the August 28, 2006 inspection, and all were without complaint of any constitutional wrongdoing. <u>See</u> Bench Tr. 58:7-17 (McElroy).

40.     Also, Copar Pumice is not currently operating El Cajete, though Copar Pumice has begun the process of reclamation with the United States Forest Service. <u>See</u> Bench Tr. at 21:5-23 (Manges, Armstrong);  July 7 Tr. at 40:6-22 (Armstrong).

41.     Copar Pumice has not yet paid any of the penalties set forth in the Compliance Order and the Compliance Order does not preclude Copar Pumice from continuing with its operation.

42.     Copar Pumice has not shown that it suffered irreparable harm that cannot be compensated by damages.

43.     Copar Pumice has not shown that NMED or its employees would violate Copar Pumice's Fourth Amendment rights during future inspections regarding its permits.

44.     No irreparable harm flowed from the August 28, 2006, inspection, nor did it impact Copar Pumice's operation of the El Cajete mine.

45.     Even if the August 28, 2006 inspection had not taken place, there still would have been a Compliance Order arising from evidence obtained during the September 19, 2006, and March 6, 2007, inspections of El Cajete.

46.     The finding of a violation and issuance of a Compliance Order would not necessarily impact the running of Copar Pumice's operation. The Compliance Order starts a dispute resolution

process, and the decision of the Cabinet Secretary can be appealed to the New Mexico Court of Appeals.

### 2.   The Nominal Damages Awarded by the Jury Provided an Adequate Remedy at Law.

47.   Copar Pumice has shown few, if any, damages other than attorneys' fees and costs, suffered as a result of the August 28, 2006 search.

48.   The nominal damage award given by the jury provided Copar Pumice an adequate remedy at law for an isolated incident of search and seizure that is not likely to reoccur.

49.   If a future violation were to occur, Copar Pumice is well-equipped to pursue its claims for compensatory and punitive damages, such as were presented in this lawsuit.

### 3.   The Balance of the Hardships Weighs in Curry's Favor.

50.   The NMED has in place policies and procedures regarding inspections that are, on their face, constitutional.  See Plaintiff's Exhibit 20.

51.   The August 28, 2006, inspection was not conducted in accordance with state law or permit conditions, or in accordance with NMED's policies and procedures, which required consent to perform an inspection.

52.   There has been no showing or facts introduced into evidence that the NMED and/or its employees are likely to conduct inspections in the future in an unconstitutional manner.

53.   The inspection of August 28, 2006, at Copar Pumice's El Cajete mine, which violated the Fourth Amendment and for which a jury awarded one dollar in nominal damages against Morris and Yantos, was an isolated incident.

54.   If Copar Pumice resumes operations at El Cajete, an injunction would make further efforts to hold Copar Pumice in compliance with its permit conditions difficult, if not impossible,

as an injunction would improperly restrict NMED's ability to prove and deter permit violations.

55.     In balancing the hardships between the parties, equity falls in favor of denying an injunction.

**4.      The Public Interest Will be Disserved if a Permanent Injunction Is Granted.**

56.     The permit conditions that the NMED issues aim to protect employees of the mines, the environment, and citizens from environmental harm.

57.     The granting of a permanent injunction would hinder Curry and the NMED from performing its statutory functions in regulating certain industries through the issuance and enforcement of permit conditions.

58.     The public interest would not be served by the granting of a permanent injunction.

59.     Copar Pumice is not entitled to injunctive relief precluding use of the evidence obtained during the August 28, 2006 inspection.  Copar Pumice needs to establish in the administrative proceedings that the evidence, secured in multiple searches rather than just one unconstitutional search, is so tainted that it should be excluded.  Also, state law may preclude its use even if federal law does not.  Finally, any appeal and remedy is more appropriate on appeal to the New Mexico Court of Appeals rather than collaterally to a federal district court judge.  The Court will avoid interfering with the pending state administrative proceedings, see 28 U.S.C. § 2283, and will not grant an injunction.

**C.      THE COURT WILL DENY COPAR PUMICE'S CLAIM FOR DECLARATORY RELIEF.**

60.     "A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply proclaim liability from a past act." Lawrence v. Kuenhold, 271 Fed. Appx. 763, 766 (10th Cir. 2008)(citing Utah Animal Rights

Coalition v. Salt Lake City Corp., 371 F.3d 1248, 1266 (10th Cir. 2004)(McConnell, J.,

concurring)("[A] declaratory judgment action involving past conduct that will not recur is not

justiciable."); Francis E. Heydt Co. v. United States, 948 F.2d 672, 676-77 (10th Cir. 1991))

      61.    The Tenth Circuit has stated that a district court should consider the following factors

when deciding whether to entertain a request for declaratory relief:

> [1] whether a declaratory action would settle the controversy; [2] whether it would
> serve a useful purpose in clarifying the legal relations at issue; [3] whether the
> declaratory remedy is being used merely for the purpose of procedural fencing or to
> provide an arena for a race to res judicata; [4] whether use of a declaratory action
> would increase friction between our federal and state courts and improperly encroach
> upon state jurisdiction; and [5] whether there is an alternative remedy which is better
> or more effective.

State Farm Fire & Casualty Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994).

      62.    State courts, and by extension, state administrative tribunals, are bound by decisions

of federal courts in federal question cases with claim preclusive and issue preclusive effect.  See

Semtek Int'l, Inc. v. Lockheed Martin Corp., 531 U.S. 497, 507 (2001).

      63.    The Court has found that Morris and Yantos violated Article II, Section 10 of the

New Mexico Constitution, which settles the controversy at issue.

      64.    The Court does not find, however, that there is any evidence suggesting future

violations of Copar Pumice's Article II, Section 10 rights.  The policies and procedures of the

NMED require consent for inspections, and the evidence suggests that the August 28, 2006 search

was an isolated incident.

      65.    Moreover, the El Cajete site is no longer in operation, and there has been no

indication when, if ever, it may recommence, and therefore there is no likelihood of future harm by

Morris and Yantos.

      66.    As the NMED administrative proceedings have not yet been concluded, the Court's

ruling that Morris and Yantos violated the New Mexico constitutional may be helpful in the resolution of the pending administrative proceedings; however, the Court finds that a declaratory judgment is unnecessary as there is no likelihood of future violations.

67.     Because the August 28, 2006 incident was an isolated incident of past harm, and there is no evidence to suggest future harm, the Court will not grant Copar Pumice declaratory relief.

## III.   COPAR PUMICE IS ENTITLED TO ATTORNEYS' FEES AND COSTS ARISING FROM THE PORTION OF THE ADMINISTRATIVE HEARINGS DIRECTLY RELATED TO THE AUGUST 28, 2006 UNLAWFUL SEARCH AND SEIZURE.

68.     The NMED administrative proceeding litigated before an Administrative Hearing Officer involved three separate inspections: August 28, 2006, September 19, 2006, and March 6, 2007.  See Plaintiff's Exhibit 37.

69.     A plaintiff who has established liability for a deprivation of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of the deprivation.  See Court's Final Jury Instructions (with citations), Instruction No. 30, at 32, filed July 8, 2009 (Doc. 127)("J.I."); Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1251 (D.N.M.)(Browning, J.).

70.     Damages include attorneys' fees incurred in the defense of an administrative penalty proceeding where the expenditure is a foreseeable result of the act of defendants.  See J.I. No. 30. Train v. City of Albuquerque, 629 F. Supp. 2d at 1250.

71.     The Defendants concede that Copar Pumice may be entitled to an award of reasonable fees and costs regarding the litigation of violations and penalties connected to the August 28, 2006 inspection.  See Bench Tr. at 15:1-3 (Court, Walz); Defendant's Proposed

Findings ¶ 11, at 6.[7]

72.    Copar Pumice submitted reports of attorneys' fees and costs incurred during the entirety of the administrative proceeding, including not only the efforts devoted to the unlawful search and seizure, but also the time and expenses associated with NMED's subsequent, consensual inspections at El Cajete and the violations that were discovered during those inspections.  See Plaintiff's Exhibit 30.

73.    The Count reviewed all the testimony from the March 2009 administrative hearing and finds that fifteen percent of the administrative proceeding transcript directly addressed the unlawful search and seizure arising from the August 28, 2006 inspection of the El Cajete mine.

74.    The Court finds that approximately an additional seven percent of the proceedings was devoted exclusively to evidence obtained solely through in the unconstitutional search and seizure.[8]

---

[7] Although the Defendants conceded in both their Proposed Findings and during the Bench Trial that Copar Pumice may be entitled to an award of reasonable fees and costs arising out of the litigation connected with the August 28, 2006 inspection, in the Defendants' Post Bench Trial Supplemental Brief, filed August 21, 2009 (Doc. 145), the Defendants argue Copar Pumice should not recover for Morris and Yantos' unconstitutional conduct.  The Court believes that the Defendants are unreasonably splitting hairs, as it was Morris and Yantos' unlawful conduct that caused the litigation of the search-and-seizure issue in the administrative proceedings. The Court finds it is proper to award fees and costs associated with all aspects of the August 28, 2006 incident. The Defendants also direct the Court's attention to evidence in the administrative record that Copar Pumice had falsified documents related to the penalties imposed by NMED for operating outside permitted hours of operation.  See Bench Tr. at 64:23-65:10 (McElroy).  The Court views this as a separate issue from the determination of an award for attorneys' fees and costs arising out of the efforts expended during the administrative hearing related to the August 28, 2006 search and seizure, and although the Court is reducing the attorneys' fees from what Copar Pumice requested, the falsified records issue was not a factor in the Court's determination.

[8] The Court reviewed all testimony and argument in the March, 2009, administrative proceeding and attempted to determine which violations arose exclusively from the August 28, 2006, inspection, and not through the subsequent inspections on September 19, 2006 and March 6, 2007.

75.     Copar Pumice submitted time and expense reports regarding its counsels' efforts expended preparing and litigating before the NMED Administrative Hearing Officer. See Plaintiff's Exhibit 30.

76.     The time and expense report does not on its face parse out the amount of fees directly related to the search and seizure issue, or to the evidence seized in the unlawful search and seizure. See Plaintiff's Exhibit 30.

77.     The Court has reviewed the descriptions of attorney time, and has isolated the efforts expended on the search and seizure issue and on the evidence seized in the unlawful search and seizure.  The Court finds that Copar Pumice's counsel expended 87.8 hours preparing and raising the search and seizure issue before the Administrative Hearing Officer, and in dealing with the evidence seized in the first search.[9]

78.     The Court used the following billing rates -- which it finds reasonable -- for the attorneys and paralegals at Corneau Maldegen Templeman Indall, LLP: partners at a rate of $235.00 per hour, associates at the rate of $150.00 per hour, and paralegals at the rate of $75.00 per hour. For the attorney at Scheuer, Yost & Patterson, P.C., the court used the rate of $200.00 per hour. See Plaintiff's Exhibit 30.

79.     The Court concludes that the proper award of attorneys' fees plus gross tax is $15,899.76.

80.     The Defendants have not challenged the unreasonableness of particular entries, and

---

[9] Specifically, the Court calculates that, from the firm of Corneau Maldegen Templeman Indall, LLP, Joseph E. Manges, partner, expended 19.7 hours, Sharon W. Horndeski, associate, expended 65.3 hours, M. Jodi Haines, paralegal, expended 1.0 hour, and Thea L. Gondek, paralegal, expended 1.1 hour.  From the firm of Scheuer, Yost & Patterson, P.C., Holly A. Hart, Of Counsel, expended 0.7 of an hour on the relevant search and seizure issues.

the Court, in its review, does not see that Copar Pumice unreasonably incurred time or made unnecessary efforts.

81.    The Court's calculated award of attorneys' fees represents approximately twenty-two percent of the original fees that Copar Pumice requested.  The Court finds that, because the counsel for Copar Pumice did not parse out the expenses by issue, the equitable way of awarding proper expenses is to use the correlative ratio of attorneys' fees that the Court finds appropriate.  Applying that ratio to the requested expenses, the Court further awards $318.39 in expenses.

82.    Copar Pumice shall bear its own attorneys' fees and costs for the remaining portion of the administrative hearing, which the Court finds are not directly associated with the unlawful search and seizure issue, or with the evidence that Morris and Yantos seized in the unlawful search.

83.    Copar Pumice also requests the Court to reserve limited jurisdiction to award additional fees arising from the ongoing administrative proceeding.  See Plaintiff's Findings ¶ 15, at 14.  Copar Pumice does not cite any precedent that permits the Court to retain such jurisdiction once this final judgment has been entered, nor has the Court found any precedent supporting Copar Pumice's request.[10]  Moreover, because this judgment will have resolved the issue of the August 28, 2006 unlawful search and seizure, with collateral estoppel effect, the Court expects that little, if any, of the future administrative proceedings will continue to be devoted to that determination and thus no further fees should arise because of it.

84.    In conclusion, the Court finds:

A.    Copar Pumice's request for injunctive relief is denied.

---

[10] A district court may possess ancillary jurisdiction to enforce a settlement agreement post-dismissal if the court expressly retains jurisdiction, see Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994), but there is no indication in the case law that the court may retain jurisdiction to award additional fees arising from ongoing matters.

      B.     Copar Pumice's request for declaratory relief is denied.

      C.     Copar Pumice is entitled to reduced attorneys' fees and costs arising from the NMED administrative proceedings.

**IT IS ORDERED** that Alan Morris and David Yantos' violated Copar Pumice's rights under Article II, Section 10 of the New Mexico Constitution, and Copar Pumice is entitled to damages in the amount of $16,218.15, which represents its attorneys' fees and expenses, including gross taxes. Copar Pumice's request for a permanent injunction denying Curry from using evidence gathered on August 28, 2006 and its request for declaratory relief are denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Joseph E. Manges
Sharon W. Horndeski
John Indall
Comeau, Malgeden, Templeman & Indall, LLP
Santa Fe, New Mexico

     *Attorneys for the Plaintiff*

Jerry A. Walz
Marcus Serna
Walz and Associates
Cedar Crest, New Mexico

     *Attorneys for the Defendants*