# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

COPAR PUMICE COMPANY, INC.,

              Plaintiff,

vs.                                                                                    No. CIV 07-0079 JB/ACT

ALLAN MORRIS, in his individual capacity,
DAVID YANTOS, in his individual capacity,
MARY UHL, in her individual capacity,
DEBRA MCELROY, in her individual capacity,
and RON CURRY, in his individual capacity as
Secretary of the New Mexico Environment
Department,

              Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Renewed and Supplemental

Motion for Attorneys Fees and Related Nontaxable Expenses, filed November 17, 2009 (Doc.

161)("Renewed Motion for Fees");[1] and (ii) the Defendants' Motion Requesting the Court to Strike

the Award of Costs to Copar Pumice, filed December 16, 2009 (Doc. 172)("Motion to Strike"). The

Court held a hearing on October 28, 2011. The primary issues are: (i) whether Plaintiff Copar

Pumice Company, Inc. may seek attorney's fees and costs beyond those awarded in the Court's

Final Judgment, filed October 27, 2009 (Doc. 159); (ii) whether Copar Pumice's damage award is

a de minimus or nominal award such that the Court should not award attorney's fees; (iii) if the

Court should award attorney's fees, to what amount is Copar Pumice entitled; and (iv) whether the

Court should strike the Plaintiff's Verified Bill of Costs, filed November 20, 2009 (Doc. 163). The

---

[1]The Renewed Motion for Fees is intended to supplement the Plaintiff's Motion for Attorney Fees and Related Nontaxable Expenses, filed July 27, 2009 (Doc. 136), which the Defendants contended was filed prematurely. See Renewed Motion for Fees ¶ 1, at 1. Accordingly, although the Court does not specifically address document 136, this Memorandum Opinion and Order resolves all issues presented in that motion as well.

Court will grant in part and deny in part the Renewed Motion for Fees.  The Court will award Copar Pumice $111,961.03 in attorney's fees and $2,380.17 in expenses, because it was a prevailing party that received more than nominal damages.  The Court will deny the Motion to Strike and award Copar Pumice $6,857.43 in costs pursuant to rule 54 of the Federal Rules of Civil Procedure.

## **FACTUAL BACKGROUND**

Copar Pumice is engaged in the business of pumice mining.  See Amended Complaint for Violation of Civil Rights ¶ 4, at 2, filed July 3, 2007 (Doc. 36)("Amended Complaint"); Findings of Fact, Conclusions of Law, and Order ¶ 1, at 2, filed October 23, 2009 (Doc. 158)("Findings of Fact").  In 2006, and at all times material to this lawsuit, Copar Pumice was mining pumice and operating a screening plant at the El Cajete mine located on United States Forest Service lands in the area of Jemez Springs, New Mexico.  See Amended Complaint ¶ 4, at 2; Findings of Fact ¶ 2, at 3.  Adrian Salazar is the plant manager of Copar Pumice's El Cajete mine.  See Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, filed July 16, 2007 (Doc. 40)("Plaintiff's MSJ Response"); Affidavit of Adrian Salazar ¶ 1, at 1 (executed July 13, 2007), filed July 16, 2007 (Doc. 40-2); Findings of Fact ¶ 20, at 5.

Copar Pumice's operation of the El Cajete pumice screening facility is subject to the terms of New Mexico's Air Quality Control Act, regulations adopted pursuant to the Act, and Air Quality Permit No. 899-M-2 issued by the New Mexico Environment Department's Air Quality Bureau. See Memorandum in Support of Defendants' Motion for Summary Judgment on the Basis of Qualified Immunity, filed June 25, 2007 (Doc. 33)("Defendants' Qualified Immunity MSJ"); Letter to Stephen K. Stellavato from Cecilia Williams, Bureau Chief Air Quality Bureau at 1 (dated November 20, 1998), filed June 25, 2008 (Doc. 33-3)("Air Quality Permit Letter"); Findings of Fact ¶ 3, at 3.  The NMED Air Quality Permit was issued to Copar Pumice pursuant to the New Mexico

Air Quality Control Act and the regulations adopted thereunder.   See Air Quality Permit Letter at 1; Findings of Fact ¶ 4, at 3.  Specifically, the New Mexico Environmental Department ("NMED") Air Quality Permit issued to Copar Pumice states that it is issued "pursuant to the Air Quality Control Act (Act) and regulations adopted pursuant to the Act, including Title 20, New Mexico Administrative Code (NMAC), Chapter 2, Part 72, (20 NMAC 2.72), Construction Permits, Subpart II and is enforceable pursuant to the Act and the air quality control regulations applicable to this source." Air Quality Permit Letter at 1.

Pursuant to the NMED Air Quality Permit, Copar Pumice's operation of the pumice screening facility was subject to specific enumerated conditions, including:

3.    Recordkeeping

Daily records of the hours and days of operation, the daily production rates, and the frequency of the application of water or equivalent control measures shall be maintained.  This information shall be retained at the plant site for the most recent three (3) year period and shall be made available to Department personnel upon request.

Condition 3 has been placed in the permit in accordance with 20 NMAC 2.72, Sections 210.B.4 and 210.F, to allow the Department to determine compliance with the terms and conditions of the permit.

Compliance with Condition 3 will be based on Department inspection of records and logs.

Air Quality Permit Letter at 4 (emphasis in original).  Permit Condition No. 9, entitled "Right to Access Property and Review Records," states:

9.    Right to Access Property and Review Records.

The Department shall be given the right to enter the facility at all reasonable  times to verify the terms and conditions of this permit.  The company, upon request from an authorized representative of the Department, shall produce any records or information necessary to establish that the terms and conditions of this permit are being met.

-3-

> Condition 9 has been placed in the permit in accordance with 20 NMAC 2.72, Sections 210.B and 210.F, and 20 NMAC 2.73, to allow the Department to determine compliance with the terms and conditions of the permit.
>
> Compliance with Condition 9 will be based on Department inspections of the facility, production of records and information required to be maintained, and non-restricted entry to the property as defined in this condition.

Air Quality Permit Letter at 8 (emphasis in original). Conditions numbers 3 and 9 were "placed in the permit . . . to allow the Department to determine compliance with the terms and conditions of th[e] permit." Air Quality Permit Letter at 4, 8.

On August 28, 2006, as a result of a citizen complaint, NMED Environmental Compliance Specialists, Defendants Allan Morris and David Yantos, arrived at the El Cajete mine to conduct an inspection of Copar Pumice's pumice screening facility. See Memorandum in Support of Defendants' Motion for Summary Judgment, filed June 24, 2007 (Doc. 29)("Defendant's MSJ"); Affidavit of Allan Morris ¶ 4, at 1 (executed May 23, 2007), filed June 24, 2008 (Doc. 29-2); Findings of Fact ¶ 12, at 4. The Air Quality Bureau employs Morris and Yantos as Environmental Compliance Specialists. See Morris Aff. ¶ 1, at 1; Affidavit of David Yantos ¶ 1, at 1 (executed on May 23, 2007), filed June 24, 2007 (Doc. 29-3); Findings of Fact ¶¶ 7-8, at 3. Morris and Yantos conducted a compliance inspection of Copar Pumice's pumice screening facility. See Plaintiff Copar Pumice Company, Inc.'s Response to Defendants' Motion for Summary Judgment on the Basis of Qualified Immunity at 1-2, filed July 16, 2007 (Doc. 39)("Plaintiff's Qualified Immunity Response"); Findings of Fact ¶¶ 10-11, at 4.

At the time that Morris and Yantos arrived at Copar Pumice's facility, Salazar, the plant manager, was away from the mine at a dental appointment. See Salazar Aff. ¶ 4, at 1; Plaintiff's MSJ Response ¶ 2, at 4; Findings of Fact ¶ 20, at 5. The Defendants did not have a warrant. See Complaint for Violation of Civil Rights ¶ 11, at 3, filed January 23, 2007 (Doc. 1)("Complaint");

Amended Complaint ¶ 11, at 3.  The inspection took place on a Monday from approximately 3:00

p.m. until 4:55 p.m.  <u>See</u> Morris Aff. ¶¶ 5, 22 at 3, 6.

When Morris and Yantos arrived at the facility, there were only two employees working at

the mine.  <u>See</u> Plaintiff's MSJ Response ¶¶ 5-6, at 4; Findings of Fact ¶ 15, at 4.  One of the Copar

Pumice employees at the site during the inspection was Ismael Gomez, who is employed as a laborer

and front-end loader operator.  <u>See</u> Plaintiff's MSJ Response ¶¶ 5-6, at 4; Affidavit of Ismael Gomez

¶ 1, at 3 (executed July 12, 2007), filed July 16, 2007 (Doc. 40-1)("I. Gomez Aff.").  Copar Pumice

had employed Ismael Gomez for six months when the inspection occurred.  <u>See</u> Salazar Aff. ¶ 7,

at 1.

I. Gomez is a Mexican national who is authorized to work in the United States.  <u>See</u> I.

Gomez Aff. ¶¶ 1, 2 at 1; Findings of Fact ¶ 21, at 5.  I. Gomez speaks and understands only Spanish.

<u>See</u> I. Gomez Aff. ¶ 4, at 1; Plaintiff's MSJ Response ¶ 8, at 4; Findings of Fact ¶ 21, at 5.  I. Gomez

does not speak or understand English, although he knows a few words in English.  <u>See</u> I. Gomez

Aff. ¶ 4, at 1; Plaintiff's MSJ Response ¶ 8, at 4; Findings of Fact ¶ 21, at 5.

The other Copar Pumice employee at the site during the inspection was Elias Gomez, who

is also employed as a laborer and loader operator.  <u>See</u> Salazar Aff. ¶ 10, at 2.  Copar Pumice

contends that neither I. Gomez nor E. Gomez have supervisory authority at the mine, have any

record-keeping functions, or have any legal authority to grant or deny access to inspectors.  <u>See</u>

Salazar Aff. ¶ 10, at 2; Plaintiff's MSJ Response ¶ 14, at 5; Findings of Fact ¶ 16, at 4.

Morris and Yantos approached I. Gomez.  <u>See</u> Defendant's Qualified Immunity MSJ ¶ 22

at 7; Findings of Fact ¶ 14, at 4.  I. Gomez was wearing a shirt with the names "Copar" and "Ismael"

on it.  Motion for Summary Judgment ¶ 9, at 4; Findings of Fact ¶ 14, at 4.  I. Gomez informed

Morris and Yantos that Copar Pumice employed him, that the plant manager was not present, and

that the manager was not reachable by telephone.  See Motion for Summary Judgment ¶ 10, at 4; Findings of Fact ¶ 24, at 5.

I. Gomez assumed that Morris and Yantos were inspectors with the Mine Safety and Health Administration, because they wore hardhats when they approached him,.  See I. Gomez Aff. ¶ 6, at 2; Findings of Fact ¶ 25, at 5-6.  I. Gomez went to a trailer on the El Cajete mine site, where Copar Pumice houses its office, to get parts that they needed, and the inspectors followed him, though he did not know why they followed him.  See Findings of Fact ¶ 27, at 6.  Morris and Yantos entered the trailer and removed twenty-four pages of records.  See Findings of Fact ¶ 28, at 6.  Morris and Yantos located, removed from the trailer, photocopied, and returned without undue delay the twenty-four pages of records that facially appeared to reflect the hours of operation which the permit mandated were to be kept.  See Findings of Fact ¶ 29, at 6.  Morris and Yantos also conducted an inspection of the Copar Pumice mine-site screening facility.  See Findings of Fact ¶ 31, at 6.  I. Gomez did not accompany Morris and Yantos on the inspection.  See Findings of Fact ¶ 32, at 6.

I. Gomez could not consent to the inspection because he does not speak or understand English.  See Findings of Fact ¶ 33, at 6.  Copar Pumice had a policy requiring a supervisor or member of management be present at regulatory inspections.  See Findings of Fact ¶ 34, at 6.

After the inspectors left, Ruben Velasco, the foreman of Copar Pumice's El Cajete mine, returned to the mine.  See Affidavit of Ruben Velasco ¶¶ 1, 8 at 1-2 (executed July 13, 2007), filed July 16, 2007 (Doc. 40-4)("Velasco Aff.").  I. Gomez informed Velasco that two inspectors had come to the mine while Salazar was gone.  See Velasco Aff. ¶ 9, at 2.  I. Gomez stated that he did not know from where the two inspectors came or what their business was.  See Velasco Aff. ¶ 9, at 2.  I. Gomez informed Velasco that the inspectors had entered and searched the trailer.  See Velasco Aff. ¶ 10, at 2.  Velasco later learned that the inspectors seized records belonging to Copar Pumice --

none of which were maintained pursuant to the terms of Copar Pumice's Air Quality Permit.  See Velasco Aff. ¶ 10, 11 at 2.

Morris concluded that Copar permit was violating a number of permit conditions. See Findings of Fact ¶ 44, at 8.  Following the inspection, Morris drafted a "Post Inspection Notification" and a "Notice of Violation" alleging that Copar Pumice was in violation of six permit conditions as a consequence of the inspection.  Findings of Fact ¶ 45, at 8.  Morris returned for another inspection on September 19, 2006.  See Findings of Fact ¶ 47, at 8.  At that inspection, Salazar showed Morris the same records that had previously been photocopied during the August 28, 2006 inspection.  See Findings of Fact ¶ 47, at 8.

As a result of Morris' inspection and observations, on August 28, 2006, he completed, signed and dated an Air Quality Bureau Post Inspection Notification form which identified six areas of potential non-compliance with Copar Pumice's Air Quality permit.  See Findings of Fact ¶ 54, at 9.  After further investigation, Morris concluded that Copar Pumice was in violation of certain permit conditions, and he drafted a Notice of Violation describing six violations.  See Findings of Fact ¶ 55, at 9.  The NMED, Morris, and Yantos "initiated an administrative penalty proceeding against Copar relying upon the records which they . . . seized from Copar."  Amended Complaint ¶ 15, at 3.  The administrative proceedings were held in March 2009, and took place over seven days of hearings in which ten witnesses testified.  See Findings of Fact ¶ 56, at 9.  The administrative hearing touched on the legality of the search and seizure at the El Cajete mine, and several witnesses testified regarding the August 26, 2006 incident.  See Findings of Fact ¶ 58, at 10.

After filing its Complaint, Copar Pumice asserted that McElroy and Uhl "intentionally began to treat Copar differently than other similarly situated mine permitees."  Memorandum Opinion and Order at 3, filed May 11, 2009 (Doc. 94)("May 11, 2009 MOO").  Copar Pumice alleged that the

Defendants "conspired and agreed" to "arbitrarily and maliciously" issue Copar Pumice notices of violation alleging violations of Copar Pumice's mining permit.  May 11, 2009 MOO at 3.  Copar Pumice contended that the Defendants "arbitrarily, capriciously, and maliciously" construed Copar Pumice's mining permit to prohibit activities in which it had previously been permitted to engage. May 11, 2009 MOO at 3.  Copar Pumice asserted that these interpretations resulted in administrative penalties totaling $81,912.00.  See May 11, 2009 MOO at 3.

## PROCEDURAL BACKGROUND

Copar Pumice brought this civil rights action pursuant to 42 U.S.C. § 1983.  See Doc. 1.  On July 3, 2007, Copar Pumice filed the Amended Complaint seeking redress for violations of the Fourth and Fourteenth Amendments of the United States Constitution, and Article 2, Section 10 of the New Mexico Constitution.  See Doc. 36.  Copar Pumice made three claims: (i) that the inspection of its premises and the removal of its records constituted an unreasonable search and seizure, and thus violated the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution; (ii) that the administrative-penalty assessment actions violated the Equal-Protection Clause of the Fourteenth Amendment and Article II, Section 18 of the New Mexico Constitution; and (iii) that Copar Pumice was entitled to prospective injunctive relief prohibiting Defendant Ron Curry and the NMED from conducting warrantless searches, and declaratory relief that the search and seizure of Copar Pumice's mine was unconstitutional.  See Amended Complaint ¶¶ 23-37, at 5-7. Copar Pumice requested monetary damages against the Individual Defendants,[2] and declaratory and injunctive relief against the NMED.  See Amended Complaint at 7-8.

Before trial, the Court dismissed the prospective injunctive relief claims against the NMED

_____

[2]Defendants Allan Morris, David Yantos, Mary Uhl, Debra McElroy, and Ron Curry are collectively referred to as the "Individual Defendants."

after finding that the Eleventh Amendment foreclosed Copar Pumice's attempt to prevent the NMED from using or relying upon any and all documents that the NMED obtained as a result of its inspection of the Copar Pumice mine on August 28, 2006. See Memorandum Order and Opinion at 11, filed September 10, 2007 (Doc. 54)("Sept. 10, 2007 MOO"). Thus, only the injunctive relief claim against Ron Curry, in his official capacity as the Secretary of the NMED, remained against him at the time of trial. See Sept. 10, 2007 MOO at 10-11. Pursuant to Defendants' Qualified Immunity MSJ, the Court also dismissed Count II of Copar Pumice's Amended Complaint, which contained equal-protection claims against Uhl and McElroy. See May 11, 2009 MOO at 1. The Court found that there was a genuine issue of material fact whether Uhl and McElroy engaged in discriminatory treatment, but granted the motion for summary judgment because there were material differences between Copar Pumice and the allegedly similarly situated entities. See May 11, 2009 MOO at 1-2.

On July 6, 2009, the Court decided two motions in limine. See Memorandum Opinion and Order at 1, filed July 6, 2009 (Doc. 114)("July 6, 2009 MOO"). The Court determined that, although the Complaint emphasized the search of the business office, Copar Pumice could present evidence on and could seek damages for "the fees and expenses it ha[d] incurred in responding to the notices of violation and administrative penalty assessment." July 6, 2009 MOO at 5. The Court stated that none of the previous motions indicated that "Copar was restricting its claims, and particularly its damages, to only the office search." July 6, 2009 MOO at 6. The Court also determined that it would not exclude evidence that Copar Pumice allegedly falsified records related to its hours of operation. See July 6, 2009 MOO at 2. In a motion in limine, Copar Pumice asked that the Court exclude evidence that a Copar Pumice employee may have falsified records relating to Copar Pumice's hours of operation. See July 6, 2009 MOO at 2. The Court found that, because

-9-

Copar Pumice sought damages relating to the penalties levied in the administrative proceeding, the evidence is relevant to the propriety of the penalties.  See July 6, 2009 MOO at 3.

The parties stipulated that certain issues were to be tried to the jury and that the Court would try certain issues.  See Stipulation and Waiver Regarding Jury Trial of Certain Claims, filed July 7, 2009 (Doc. 124)("July 7, 2009 Stipulation").  Specifically, the parties agreed that the Court should determine Copar Pumice's claims: (i) pertaining to declaratory and injunctive relief; (ii) that the Defendants had violated Copar Pumice's rights under Article 2, Section 10 of the New Mexico Constitution; and (iii) for damages for costs and reasonable attorney's fees arising from the defense of certain administrative penalty proceedings before the NMED.  See July 7, 2009 Stipulation at 1-2.

Copar Pumice's Fourth Amendment claim was tried before a jury on July 6, 7, and 8, 2009. On July 8, 2009, the jury returned a verdict for Copar Pumice, finding that Morris and Yantos had violated Copar Pumice's rights under the Fourth Amendment and awarding nominal damages of $1.00.  See Verdict Form, filed July 8, 2009 (Doc. 131).

On July 27, 2009, Copar Pumice requested that the Court award it attorney's fees and costs in the amount of $99,524.04.  See Plaintiff's Motion for Attorney's Fees and Related Nontaxable Expenses at 3, filed July 27, 2009 (Doc. 136)("Motion for Fees").  Copar Pumice argues that it is entitled to the fees and costs requested, because it has prevailed on a significant legal issue in the case, and because the jury's award of nominal damages is sufficient to support an award of attorney's fees.  See Plaintiff's Memorandum in Support of Motion for Attorney's Fees and Related Nontaxable Expenses, filed July 27, 2009 (Doc. 137).  The Defendants argue that Copar Pumice's request for fees and costs was premature.  See Defendants' Response in Opposition to Plaintiff's Motion for Attorney Fees and Related Nontaxable Expenses at 4-5, filed August 10, 2009 (Doc. 142)("Response to Motion for Fees").  The Defendants assert that there were outstanding issues in

-10-

the case -- whether Copar Pumice was entitled to declaratory and injunctive relief -- and that the Court had not yet entered a final judgment. <u>See</u> Response to Motion for Fees at 4-5. The Defendants also contend that the Court should significantly reduce the amount of attorney's fees, because the jury awarded Copar Pumice only $1.00 in nominal damages. <u>See</u> Response to Motion for Fees at 5. The Defendants assert that several of Copar Pumice's time entries are excessive, including: (i) entries for legal research; (ii) entries in conjunction with administrative matters; and (iii) entries related to the preparation of responses to the Defendants' motions for summary judgment, for abstention, and to dismiss. <u>See</u> Response to Motion for Fees at 3-4. Copar Pumice argues that the Defendants failed to show that a determination of attorney's fees and costs would prejudice them. <u>See</u> Plaintiff's Reply in Support of Motion for Attorney's Fees and Related Nontaxable Expenses at 2, filed September 2, 2009 (Doc. 150)("Reply to Motion for Fees"). Copar Pumice contends that no precedent from the United States Court of Appeals for the Tenth Circuit barred it from requesting supplemental fees at a later date -- after final judgment is entered. <u>See</u> Reply to Motion for Fees at 3. Copar Pumice defends its time entries and argued that it prepared the majority of the pretrial documents in the case, because the Court required it to prepare the initial drafts of the pretrial order, jury instructions, and other trial documents. <u>See</u> Reply to Motion for Fees at 7.

In its separate bench trial on July 31, 2009, the Court found that Morris and Yantos' August 28, 2006 search, inspection, and seizure of records violated Copar Pumice's rights under Article II, Section 10 of the New Mexico Constitution. <u>See</u> Findings of Fact ¶ 20, at 22. In its Findings of Fact, the Court held that it was "bound by both the actual findings of the jury and those that were necessarily implicit in its verdict." Findings of Fact ¶ 2, at 18. The Court found that Morris and Yantos violated Article II, Section 10 of the New Mexico Constitution, because the jury implicitly

rejected the assertion that I. Gomez had authority to consent to the inspection and because Article

II, Section 10 of the New Mexico Constitution is broader in its protection against unlawful searches

and seizure than the Fourth Amendment.  See Findings of Fact ¶¶ 13-20, at 21-22.  The Court denied

Copar Pumice's request for a permanent injunction enjoining Curry from using the evidence

obtained at the August 28, 2006 search.  See Findings of Fact  ¶ 32, at 26.  The Court held:

> Because the Court must give deference to NMED's enforcement of its policies and
> procedures, including its administrative hearing evidentiary procedures, and because
> the appropriate forum for appeal of the NMED's assessment is in the state courts and
> not in the federal district courts, the Court will not enjoin Curry from using evidence
> gathered during the August 28, 2006 inspection in the NMED administrative
> proceedings.

Findings of Fact ¶ 32, at 26.  The Court also denied Copar Pumice's request for declaratory relief.

See Findings of Fact ¶ 67, at 32.  The Court held:

> 66.     As the NMED administrative proceedings have not yet been concluded, the Court's
>
> ruling that Morris and Yantos violated the New Mexico constitution[] may be helpful
>
> in the resolution of the pending administrative hearings; however, the Court finds
>
> that a declaratory judgment is unnecessary as there is no likelihood of future
>
> violations.
>
> 67.     Because the August 28, 2006 incident was an isolated incident of past harm, and
>
> there is no evidence to suggest future harm, the Court will not grant Copar Pumice
>
> declaratory relief.

Findings of Fact ¶¶ 66-67, at 31-32.  Lastly, the Court found that Copar Pumice was entitled to

attorney's fees and costs arising form the portion of the administrative hearings directly related to

the August 28, 2006 search and seizure, and awarded damages in the amount of $16,218.15.  See

Findings of Fact at 36.  On October 27, 2009, the Court entered its Final Judgment in favor of Copar

Pumice on its claims under the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution and ordered the Defendants to pay damages to Copar Pumice in the amount of $16,219.15.  See Final Judgment at 2, filed October 27, 2009 (Doc. 159).

Copar Pumice filed its Renewed Motion for Fees on November 17, 2009.  See Doc. 161. Copar Pumice contends that, as the prevailing party, it is entitled to reasonable attorney's fees and expenses pursuant to rule 54(d) of the Federal Rules of Civil Procedure.  See Renewed Motion for Fees ¶ 6, at 2.  Copar Pumice  argues that, under 42 U.S.C. § 1988, an award of attorney's fees is appropriate in a nominal-damages case when the prevailing party achieves "enough success" to be entitled to the award.  Plaintiff's Memorandum in Support of Renewed and Supplemental Motion for Attorney's Fees and Nontaxable Expenses at 4, filed November 17, 2009 (Doc. 162)("Memorandum in Support of Renewed Motion for Fees")(citing Brandau v. Kansas, 168 F.3d 1179, 1181(10th Cir. 1999)).  Copar Pumice contends that, in making this determination, courts must examine the following factors set forth in Brandau v. Kansas: "(i) the difference between the judgment recovered and the judgment sought; (ii) the significance of the legal issue on which the plaintiff prevailed; and (iii) the public purpose served by the litigation."  Memorandum in Support of Renewed Motion for Fees at 4.  Copar Pumice contends that it is entitled to an award of attorney's fees under an examination of these factors.  See Memorandum in Support of Renewed Motion for Fees at 6-7.  Copar Pumice further asserts that, in its Findings of Fact, the Court found that the rates its attorneys charged were reasonable, and argues that the entries were reasonable and necessary to the litigation.  See Memorandum in Support of Renewed Motion for Fees at 9.

In their response, the Defendants argue that the Court's Final Judgment forecloses Copar Pumice's subsequent request for additional attorney's fees and costs.  See Response in Opposition to Plaintiff's Renewed and Supplemental Motion for Attorney's Fees and Related Nontaxable

Expenses and Motion to Tax Costs at 3, filed December 13, 2009 (Doc. 171)("Response to Renewed Motion for Fees").  The Defendants assert that, because the Final Judgment decided all issues and dismissed with prejudice all claims before the Court, the Court should not consider the Renewed Motion for Fees.  See Response to Renewed Motion for Fees at 3.  The Defendants further contend that, even if the Court considers Copar Pumice's Renewed Motion for Fees, the Court should not increase the amount of fees and costs beyond that which it awarded in the Final Judgment.  See Response to Renewed Motion for Fees at 5.  The Defendants base their argument on the following factors:

> (i) the jury's award of nominal damages against Morris and Yantos in the amount of one dollar on only one claim, Count I; (ii) Plaintiff submitted during discovery and in the administrative and federal proceedings falsified documents; (iii) Defendants Uhl and McElroy prevailed on the Equal Protection Claim as to Count II; (iv) The jury did not award punitive damages; (v) Plaintiff's request appears to be a windfall for the attorneys, far and above the jury's total compensatory damage award of one dollar; and (vi) Defendants prevailed in the bench trial regarding Copar's claims for injunctive and declaratory relief requested by Plaintiff.

Response to Renewed Motion for Fees at 5.  They assert that "Plaintiff incredulously suggests that the '. . . motion is to include additional fees incurred in the litigation of the bench trial, preparation of Copar's findings of fact and conclusions of law related thereto, and post-trial briefing on Defendants' motion for new trial and for judgment as a matter of law."  Response to Renewed Motion for Fees at 5.

Copar Pumice argues that both rule 54(d)(2)(A) of the Federal Rules of Civil Procedure and D.N.M.LR-Civ. 54.5(a) allow a prevailing party to move for attorney's fees after entry of a final judgment.  See Plaintiff's Reply in Support of Renewed and Supplemental Motion for Attorney's Fees and Related Nontaxable Expenses at 2, filed January 8, 2010 (Doc. 175)("Reply Renewed Motion for Fees").  Copar Pumice argues that no rule or case law prevents it from seeking the

additional fees it has incurred.  <u>See</u> Reply Renewed Motion for Fees at 2.  Copar Pumice argues that,

in the Final Judgment, the Court addressed the attorney's fees that Copar Pumice incurred in the

administrative proceeding as an element of damages, but asserts that the Court did not consider, or

rule on, the amount of fees and costs that Copar Pumice incurred in pursuing its federal court action.

<u>See</u> Reply Renewed Motion for Fees at 4.  Copar Pumice further asserts that the Court, in its Final

Judgment, did not rule on the issue of attorney's fees, and it contends that its application for

attorney's fees under 42 U.S.C. § 1988 is a separate and collateral proceeding from the Court's

decision on the merits.  <u>See</u> Reply Renewed Motion for Fees at 4.  Copar Pumice argued that the

parties and the Court agreed that the issue of attorney's fees would be considered separately and at

the conclusion of the litigation.  <u>See</u> Reply Renewed Motion for Fees at 5 (citing Clerk's Minutes

at 2, filed July 31, 2009 (Doc. 140)).[3]

     Copar Pumice disputes the Defendants' contention that it is not entitled to the entire amount

of attorney's fees requested.  <u>See</u> Reply Renewed Motion for Fees at 8.  Copar Pumice argues that,

although the jury awarded nominal damages on the Fourth Amendment claim, the Court awarded

damages in the amount of $16,218.15 on the Fourth Amendment claim, which are not nominal.  <u>See</u>

Reply Renewed Motion for Fees at 6.  Copar Pumice further asserts that, although the Court denied

------

[3]At the July 31, 2009 bench trial, the Defendants asserted that they were unsure whether it
would be more beneficial for the Court to hear the § 1988 fees issue at that hearing or to wait for the
Defendants to file a response and hold a separate hearing.  <u>See</u> Transcript of Hearing at 8:6-9:1 (July
31, 2009)(Walz)("July 31, 2009 Tr.").  The Court then asked Copar Pumice whether it should
address § 1988 attorney's fees in a separate proceeding.  <u>See</u> July 31, 2009 Tr. at 34:3-8 (Court).
Copar Pumice asserted that it had no objection to postponing review of their application for § 1988
fees until after the Court had determined the other issues.  <u>See</u> July 31, 2009 Tr. at 34:9-17
(Manges).  Copar Pumice also clarified that it was seeking only the attorney's fees related to the
administrative hearing as damages.  <u>See</u> July 31, 2009 Tr. at 34:18-20 (Court, Manges).  At the end
of the bench trial, the Court stated that it would issue its findings of fact and conclusions of law and
that, at some later point, the Court would hear the parties arguments regarding attorney's fees
pursuant to § 1988.  <u>See</u> July 31, 2009 Tr. at 91:16-20 (Court).

its claim for injunctive relief, Copar Pumice effectively prevailed on this claim, because the Defendants conceded that they would not use the unlawfully obtained evidence in the administrative proceeding. See Reply Renewed Motion for Fees at 7. Copar Pumice contends that this concession was obtained as a direct result of the litigation and obviated the need for the injunctive relief sought. See Reply Renewed Motion for Fees at 7. Copar Pumice also argues that it prevailed, in part, on its claim for declaratory relief. See Reply Renewed Motion for Fees at 7. It contends that it prevailed on the underlying constitutional claims, because the jury found that the Defendants had violated Copar Pumice's rights under the Fourth Amendment and the Court held that the Defendants violated its rights under Article II, Section 10 of the New Mexico Constitution. See Reply Renewed Motion for Fees at 7. With respect to its Equal Protection claim against McElroy and Uhl, Copar Pumice points out that it reduced its fee request for arguing the Defendants' Motion for Summary Judgment by four hours. See Reply Renewed Motion for Fees at 7. Copar Pumice also argues that the Defendants have not questioned or identified any of its time records with enough specificity for Copar Pumice to formulate a response. See Reply Renewed Motion for Fees at 7.

In addition to its request for attorney's fees and expenses, Copar Pumice filed its Motion to Tax Costs. See Plaintiff's Motion to Tax Costs, filed November 20, 2009 (Doc. 164)("Motion to Tax Costs"). In its motion, pursuant to rule 54 and D.N.M.LR-Civ. 54, Copar Pumice requests costs for deposition transcript fees, witness fees and mileage, interpreter's fees, and trial exhibit expenses in the amount of $6,857.43. See Motion to Tax Costs at 1-2. On December 9, 2009, the Clerk of the Court taxed the entire amount requested against the Defendants. See Minute Order at 1, filed December 9, 2009 (Doc. 169). On December 16, 2009, the Defendants requested that the Court strike the Clerk's award of costs. See Motion to Strike at 1. In their Motion to Strike, the Defendants assert that the District Court Clerk's award of costs was improper, because it did not

-16-

take into consideration: (i) that Copar Pumice received only nominal damages from the jury; (ii) that Uhl and McElroy were the prevailing parties as to Count II; and (iii) that the Court denied Copar Pumice's claims for declaratory and injunctive relief following the bench trial. See Motion to Strike at 1-2. The Defendants also argue that the Court has already addressed and resolved the issue of attorney's fees and costs. See Motion to Strike at 2. The Defendants contend that Copar Pumice is "attempting to backdoor a further award of costs by filing its Motion to Tax Costs." Motion to Strike at 2.

In response to the Motion to Strike, Copar Pumice asserts that it need not prevail on every claim to recover its costs under rule 54. See Plaintiff's Response in Opposition to Defendants' Motion Requesting the Court to Strike the Award of Costs at 2, filed January 8, 2009 (Doc. 177)("Response to Motion to Strike"). Copar Pumice argues that the costs sought in the Motion to Tax Costs are distinct from those that the Court previously awarded in the Final Judgment. See Response to Motion to Strike at 3. Copar Pumice contends that it had previously sought at trial only its expenses related to the administrative hearing. See Response to Motion to Strike at 3. Copar Pumice contends that it now seeks costs for items that were reasonably necessary to the litigation of the case. See Response to Motion to Strike at 3. It specifically argues that the transcription costs of the administrative hearings were reasonably necessary and should be reimbursable, even if they were also used for other purposes, because they were introduced into evidence, they were important to the damage computation, and Copar Pumice has not been otherwise reimbursed for them. See Response to Motion to Strike at 3-4.

In their reply brief, the Defendants argue that Copar Pumice should be awarded costs only after Court review. See Reply Brief in Support of Defendants' Motion Requesting the Court to Strike the Award of Costs to Copar Pumice at 2, filed January 25, 2010 (Doc. 181)("Reply in

Support of Motion to Strike"). The Defendants argue that the Court has made no findings regarding the difference between the amount recovered and the judgment sought, the significance of the legal issue on which Copar Pumice prevailed, or whether the litigation served a public purpose. See Reply in Support of Motion to Strike at 2. The Defendants assert that the Court should take into consideration that Copar Pumice prevailed on only one of its claims and that the jury awarded only nominal damages. See Reply in Support of Motion to Strike at 3. The Defendants also contend that the Court has already addressed Copar Pumice's request for fees and costs associated with the related administrative proceeding. See Reply in Support of Motion to Strike at 3. They argue that the Final Judgment adjudicated all of Copar Pumice's claims against them, including its requests for fees and costs. See Reply in Support of Motion to Strike at 3.

On November 23, 2009, the Defendants filed a Notice of Appeal. See Doc. 165. At the August 24, 2010, hearing, the Court and the parties agreed that the Court would consider the issue of fees and costs after the Tenth Circuit determined the issues that the Defendants had raised on appeal. See Transcript of Hearing at 7:11-19; 9:12-15; 12:1-4 (August 24, 2010)(Court, Manges, Walz)("Aug. 24, 2010 Tr.").[4] On March 14, 2011, the Court filed an Amended Final Judgment to correct a clerical error and to delete Curry's name as one of the parties liable for violating Copar Pumice's Fourth Amendment rights. See Memorandum Opinion and Order at 1, filed March 14, 2011 (Doc. 202); Amended Final Judgment at 1-2, filed March 14, 2011 (Doc. 203). On appeal, Morris and Yantos challenged the Court's denial of the Defendants Qualified Immunity MSJ. See Copar Pumice Co., Inc. v. Morris, 639 F.3d 1025, 1026 (10th Cir. 2011). The Tenth Circuit found that, because Morris and Yantos withdrew their rule 50(b) motion and because the Court's

_____

[4] The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions. Any final transcripts may contain slightly different page and/or line numbers.

denial was based on factual -- rather than legal issues, Morris and Yantos had waived appellate review.  See Copar Pumice Co., Inc. v. Morris, 639 F.3d at 1026.  Accordingly, the Tenth Circuit affirmed this Court's holding.  See Copar Pumice Co., Inc. v. Morris, 639 F.3d at 1032.

At the October 28, 2011 hearing, before hearing counsel's arguments, the Court discussed its opinion that, after the Court awarded attorney's fees and damages to Copar Pumice, this was no longer a nominal-damages case.   See Transcript of Hearing at 3:19-21 (October 28, 2011)(Court)("Oct. 28, 2011 Tr.").  The Court stated that, if this was a nominal-damages case, the Court's previous decision in Sanchez v. Matta, No. 03-0297, 2005 WL 2313621 (D.N.M. July 29, 2005)(Browning, J.), would give the parties guidance as to what the Court would do with a nominal damages award.  See Oct. 28, 2011 Tr. at 3:17-18 (Court).  The Court stated that, in its view, this case more closely resembled a standard civil rights case, where attorney's fees often greatly exceed the actual award.  See Oct. 28, 2011 Tr. at 3:22-24 (Court).  The Court indicated that, if that were the case, Sanchez v. Matta may not be the proper guide, and the proper analysis may be the standard analysis whether the fees were reasonably and necessarily incurred.  See Oct. 28, 2011 Tr. at 3:24-4:2 (Court).  The Court also suggested that it may need to reduce some of the fees and costs, because some of Copar Pumice's claims were not successful.  See Oct. 28, 2011 Tr. at 4:3-5 (Court).  The Court stated that the bulk of Copar Pumice's fees and individual time entries seemed necessarily and reasonably incurred, and that it should award fees for most time entries.   See Oct. 28, 2011 Tr. at 4:14-18; id. at 5:17-19 (Court).

The Court also addressed the Defendants' argument that the Final Judgment foreclosed Copar Pumice's ability to claim additional fees and costs.  See Oct. 28, 2011 Tr. at 4:20-21 (Court).  The Court stated that requests for fees and costs are collateral matters, which the Court may address after entry of a final judgment.  See Oct. 28, 2011 Tr. at 4:21-24 (Court).  The Court referenced the

-19-

Supreme Court of the United States' decision in <u>White v. New Hampshire Department of Employment Security</u>, 455 U.S. 445 (1982), which held that district courts have continuing jurisdiction to determine fee amounts after the entry of final judgment.  <u>See</u> Oct. 28, 2011 Tr. at 4:24-5:1 (Court).  Thus, the Court determined that it could proceed to determine what fees might be appropriate.  <u>See</u> Oct. 28, 2011 Tr. at 5:1-2 (Court).

Copar Pumice argued that the damages in this case were not nominal, because the Court awarded $16,218.15 in damages in addition to the jury's award of $1.00.  <u>See</u> Oct. 28, 2011 Tr. at 9:24-10:7 (Manges).  Copar Pumice represented that, as a result of this litigation, the NMED withdrew two violations from the administrative proceeding against Copar Pumice, resulting in an effective gain of $15,000.00 to Copar Pumice.  <u>See</u> Oct. 28, 2011 Tr. at 9:12-19 (Manges).  It also contended that the Court's finding that there had been an illegal search and seizure had collateral estoppel effect in the administrative proceeding, and  resulted in the exclusion of evidence in that proceeding.  <u>See</u> Oct. 28, 2011 Tr. at 10:8-19 (Manges).[5]  Copar Pumice contended that its recovery far exceeded the jury's nominal damages award.  <u>See</u> Oct. 28, 2011 Tr. at 10:20-22 (Manges).  Copar Pumice argued that its requests for fees and costs is proper under 42 U.S.C. § 1988.  <u>See</u> Oct. 28, 2011 Tr. at 16:22-24 (Manges).  Additionally, Copar Pumice asserted that it did not believe that the Defendants had argued that the hourly rates billed by Copar Pumice's counsel were unreasonable.  <u>See</u> Oct. 28, 2011 Tr. at 17:12-18 (Manges).  Copar Pumice argued that the Defendants made only two specific arguments of excessive time spent, and that they failed to show how Copar Pumice's time entries were excessive in either instance.  <u>See</u> Oct. 28, 2011 Tr. at 17:18-

---

[5]In its Findings of Fact, the Court stated: "Moreover, because this judgment will have resolved the issue of the August 28, 2006 unlawful search and seizure, with collateral estoppel effect, the Court expects little, if any, of the future administrative proceedings will continue to be devoted to that determination."  Findings of Fact ¶ 83, at 35.

24 (Manges).

The Defendants agreed that the hourly rates for Copar Pumice's claimed attorney's fees were reasonable given the experience of counsel and the prevailing market rates.  See Oct. 28, 2011 Tr. at 22:4-6 (Walz).  The Defendants argued, however, that the Court should give consideration to the jury's award of $1.00 and reduce Copar Pumice's fee award.  See Oct. 28, 2011 Tr. at 23:13-19 (Walz).  The Defendants agreed that the Court's $16,218.15 award for damages takes this case out of the nominal-damages category.  See Oct. 28, 2011 Tr. at 23:9-18 (Walz).  They argued that, under Hensley v. Eckerhart, 461 U.S. 424 (1983), the Court should reduce the fees awarded.  See Oct. 28, 2011 Tr. at 24:1-5 (Walz).  The Defendants based this assertion on the arguments raised in their briefing, adding that, notwithstanding the Court's damages award, Copar Pumice's awarded relief was minimal in comparison to the relief originally sought.  See Oct. 28, 2011 Tr. at 25:23-26:2 (Walz).[6]  The Defendants asserted that they did not wish to preclude Copar Pumice from receiving its reasonable attorney's fees and costs, but that Copar Pumice should not receive attorney's fees and costs for those claims on which it did not succeed and which were not inextricably interwoven with its successful claims.  See Oct. 28, 2011 Tr. at 27:15-20 (Walz).  The Defendants stated that they believe fees in the neighborhood of $85,000.00 to $90,000.00 would be appropriate and fair. See Oct. 28, 2011 Tr. at 28:10-17(Court, Walz).  Copar Pumice argued that all of its requested fees

---

[6]In its Complaint, Copar Pumice sought "direct, incidental, consequential and punitive damages" against Morris and Yantos.  Complaint ¶ 1, at 4.  In its Amended Complaint, Copar Pumice sought "direct, incidental, consequential and punitive damages" against Morris, Yantos, Uhl, and McElroy.  Amended Complaint ¶ 1, at 7.  In closing arguments during the jury trial, Copar Pumice argued that its damages included $66,712.00 in penalties assessed through the administrative proceeding.  See Trial Transcript at 97:10-12 (Manges).  Additionally, in the Plaintiff's Proposed Findings of Fact and Conclusions of Law, Copar Pumice asserted that it "incurred damages in the form of attorneys' fees in the amount of $68,813.78."  Doc. 146 ¶ 13, at 14.  The jury awarded $1.00 in nominal damages and no punitive damages, see Verdict Form at 1-2, and in its Findings of Fact the Court awarded $16,218.15, see Findings of Fact at 36.

-21-

were interwoven with the Fourth Amendment claims on which it prevailed, and that, even under a Hensley v Eckerhart analysis, it should prevail on its claim for fees. See Oct. 28, 2011 Tr. at 33:1-4 (Manges).

The Court then clarified that the Defendants' argument regarding a reduction in costs was essentially the same as its argument for a reduction in attorney's fees, and that the Defendants believed that the Hensley v. Eckerhart analysis applies to a prevailing party's requested costs. See Oct. 28, 2011 Tr. at 33:24-34:7 (Court, Walz). Copar Pumice argued that the prevailing party is entitled to costs under rule 54 and that, once a party is deemed the prevailing party, it should receive all costs allowable under that rule. See Oct. 28, 2011 Tr. at 34:17-20 (Manges). Copar Pumice asserted that it had never had a case in which the Court reduced its claim for costs as a result of a partial victory. See Oct. 28, 2011 Tr. at 34:20-22 (Manges).

## LAW REGARDING JURISDICTION OVER ATTORNEY'S FEES

"[Q]uestion[s] of attorney's fees and costs are collateral to and separate from a decision on the merits." Bell v. Bd. of Cnty. Comm'rs of Jefferson Cnty., 451 F.3d 1097, 1101 n.2 (10th Cir. 2006)(citing Utah Women's Clinic, Inc. v. Leavitt, 75 F.3d 564, 567 (10th Cir.1995)). In White v. New Hampshire Department of Employment Security, the Supreme Court stated:

> Section 1988 provides for awards of attorney's fees only to a "prevailing party." Regardless of when attorney's fees are requested, the court's decision of entitlement to fees will therefore require an inquiry separate from the decision on the merits -- an inquiry that cannot even commence until one party has "prevailed." Nor can attorney's fees fairly be characterized as an element of "relief" indistinguishable from other elements. Unlike other judicial relief, the attorney's fees allowed under § 1988 are not compensation for the injury giving rise to an action. Their award is uniquely separable from the cause of action to be proved at trial.

455 U.S. at 451-52 (citing Hutto v. Finney, 437 U.S. 678, 695 n.24 (1978)).

The Supreme Court has since noted that "[i]t is well established that a federal court may

consider collateral issues after an action is no longer pending." Willy v. Coastal Corp., 503 U.S. 131, 138 (1992)(citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395-96 (1990)).  In Willy v. Coastal Corp., the Supreme Court explained that a district court's consideration of such collateral issues implicates no constitutional concern, because it "does not signify a district court's assessment of the legal merits of the complaint," and "therefore does not raise the issue of a district court adjudicating the merits of a 'case or controversy' over which it lacks jurisdiction." Willy v. Coastal Corp., 503 U.S. at 396.   Furthermore, the Tenth Circuit has held that "an award of attorneys fees for the case is perhaps the paradigmatic example of a collateral issue." McKissick v. Yuen, 618 F.3d 1177, 1196 (10th Cir. 2010). See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. 08-1101, 2011 WL 1336509, at *3-4 (D.N.M. Mar. 31, 2011)(Browning, J.).

## LAW REGARDING 42 U.S.C. § 1988

42 U.S.C. § 1983 and its fee-shifting provision, 42 U.S.C. § 1988, seek to encourage attorneys to litigate civil rights violations.  Section 1988(b) provides: "[T]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.  "[T]here are two elements in deciding whether to award attorney's fees.  First, the party seeking fees must qualify as a 'prevailing party.'  Second, the fee itself must be 'reasonable.'" Phelps v. Hamilton, 120 F.3d 1126, 1129 (10th Cir. 1997)(quoting 42 U.S.C. § 1988(b)).

For the purpose of determining attorney's fees, a court may determine that plaintiffs are "prevailing parties . . . if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. at 433.  In Farrar v. Hobby, the Supreme Court later elaborated on this description:

> To qualify as a prevailing party, a civil rights plaintiff must obtain at least some

relief on the merits of his claim.  The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement.  Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement.  Otherwise the judgment or settlement cannot be said to "affect the behavior of the defendant toward the plaintiff."  Only under these circumstances can civil rights litigation effect "the material alteration of the legal relationship of the parties" and thereby transform the plaintiff into a prevailing party.  In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

Farrar v. Hobby, 506 U.S. 103, 111 (1992)(citations omitted).  The Supreme Court has stated that "this is a generous formulation that brings the plaintiff only across the statutory threshold."  See Hensley v. Eckerhart, 461 U.S. at 433.  The district court must then determine what fee is reasonable.  See Hensley v. Eckerhart, 461 U.S. at 433; Phelps v. Hamilton, 120 F.3d at 1130 ("Once a court determines that a party is a prevailing party, it must then determine what amount of reasonable attorney's fees should be awarded.").

    To determine a reasonable attorney's fee, the district court must first arrive at a "lodestar" figure by multiplying the hours that plaintiff's counsel reasonably spent on the litigation by a reasonable hourly rate.  Jane L. v. Bangerter, 61 F.3d 1505, 1511 (10th Cir. 1995)(citing Blum v. Stenson, 465 U.S. 886, 888 (1984); Hensley v. Eckerhart, 461 U.S. at 433)).  This lodestar figure "provides an objective basis on which to make an initial estimate of the value" of an attorney's services.  Hensley v. Eckerhart, 461 U.S. at 433.  The prevailing party requesting an award of its fees must submit evidence to support its claim of time spent and rates claimed.  See Hensley v. Eckerhart, 461 U.S. at 434.  If the evidence is inadequate, the district court may reduce the fee award accordingly.  See Hensley v. Eckerhart, 461 U.S. at 434.

    A district court may also make adjustments to the lodestar to reflect a plaintiff's overall success level.  See Jane L. v. Bangerter, 61 F.3d at 1511 (citing Hensley v. Eckerhart, 461 U.S. at

435-36).  "In making such adjustments, however, Hensley requires that lower courts make qualitative comparisons among substantive claims before adjusting the lodestar either for excellent results or limited success." Jane L. v. Bangerter, 61 F.3d at 1511.  The district court must consider the relationship between the fees awarded and the degree of success obtained, and must make a qualitative assessment to determine when limited results will nonetheless justify full recovery or to what extent a plaintiff's "limited success" should reduce the lodestar. Jane L. v. Bangerter, 61 F.3d at 1511.  "There is no precise rule or formula" for making such determinations. Hensley v. Eckerhart, 461 U.S. at 436.  In Hensley v. Eckerhart, the Supreme Court explained the rationale behind this approach:

> Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead, the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

461 U.S. at 436.

Furthermore, when a plaintiff brings related claims, failure on some claims should not preclude full recovery if the plaintiff achieves success on a significant, interrelated claim.  See Hensley v. Eckerhart, 461 U.S. at 440 ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."); Jane L. v. Bangerter, 61 F.3d at 1512.  Claims are related when they are either based on "a common core of facts" or based on "related legal theories." Hensley v. Eckerhart, 461 U.S. at 435.  In both cases, the district court should refrain from reducing the amount of the prevailing party's attorney's fee award.  See Jane L. v. Bangerter, 61 F.3d at 1512. The Tenth Circuit has "refused to permit the reduction of an attorneys fee request if successful and unsuccessful claims are based on a 'common core of facts.'" Jane L. v. Bangerter, 61 F.3d at 1512

-25-

(citing Tidwell v. Fort Howard Corp., 989 F.2d 406, 412-13 (10th Cir. 1993)(holding that the trial court abused its discretion in reducing attorney's fees for a plaintiff who prevailed under some provisions of the Equal Pay Act, but failed on her Title VII and state law claims)).  The Tenth Circuit has also recognized that "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee."  Jane L. v. Bangerter, 61 F.3d at 1512 (citing Hensley v. Eckerhart, 461 U.S. at 435).

## NOMINAL DAMAGES AND THEIR EFFECT ON THE COURT'S AWARD OF ATTORNEY'S FEES

Nominal damages are "[a] trifling sum awarded when a legal injury is suffered but there is no substantial loss or injury to be compensated." Black's Law Dictionary 447 (9th ed. 2009).  Thus, a judge or jury may award nominal damages where a plaintiff has suffered a legal injury, but has not shown the extent of the loss or damage suffered, or if "the plaintiff establishes a breach of contract or a tort of the kind that is said to be 'actionable per se' but fails to establish a loss caused by the wrong."  Black's Law Dictionary, supra, 447 (citing C. McCormick, Handbook on the Law of Damages § 20, at 85 (1935); S. Waddams, The Law of Damages 477–78 (3d ed. 1997)).  See Court's Final Jury Instructions (with citations), Instruction No. 32, at 34, filed July 8, 2009 (Doc. 127)("If you find that Copar Pumice is entitled to a verdict in accordance with these instructions, but do not find that Copar Pumice has sustained actual damages, then you must return a verdict for Copar Pumice in a nominal sum such as one dollar.").

In Farrar v. Hobby, the Supreme Court held that "a plaintiff who wins nominal damages is a prevailing party under § 1988." 506 U.S. at 112. See Koopman v. Water District No. 1, 41 F.3d 1417, 1420 (10th Cir. 1994)("It is clear that under Farrar v. Hobby, [the plaintiff] is a prevailing

party because he was awarded nominal damages.").  "Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under Section 1988."  <u>Farrar v. Hobby</u>, 506 U.S. at 114.  "[I]n some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all."  <u>Farrar v. Hobby</u>, 506 U.S. at 115.  The most important factor in determining the reasonableness of an attorney's fees award is the degree of success obtained.  <u>See</u> <u>Farrar v. Hobby</u>, 506 U.S. at 115.  In a civil rights action for compensatory and punitive damages, an award of only nominal damages highlights the plaintiff's failure to prove actual injury or any basis for awarding punitive damages.  <u>See</u> <u>Farrar v. Hobby</u>, 506 U.S. at 115.  "When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all."  <u>Farrar v. Hobby</u>, 506 U.S. at 115.

Justice Clarence Thomas wrote the majority opinion, in <u>Farrar v. Hobby</u>, in which Chief Justice William Rehnquist and Justices Sandra Day O'Connor, Antonin Scalia, and Anthony Kennedy joined.  Justice O'Connor noted that she joined the majority's opinion, concurred in the judgment, and wrote separately to explain more fully why it was appropriate to deny fees in the case.  <u>See</u> <u>Farrar v. Hobby</u>, 506 U.S. at 116 (O'Connor, J., concurring).  Justice O'Connor recognized that the plaintiff met the "minimum condition for prevailing party status," but made clear that fees must still be reasonable.  <u>Farrar v. Hobby</u>, 506 U.S. at 117 (O'Connor, J., concurring).  In her concurrence, Justice O'Connor noted that the "relevant indicia of success" in nominal damages cases are: (i) the difference between the judgment recovered and the recovery sought; (ii) the significance of the legal issue on which the plaintiff prevailed; and (iii) the public purpose of the litigation.  <u>Farrar v. Hobby</u>, 506 U.S. at 121-22 (O'Connor, J., concurring).

In <u>Phelps v. Hamilton</u>, the Tenth Circuit adopted Justice Sandra Day O'Connor's three-part

analysis from her concurring opinion in Farrar v. Hobby for determining whether a party achieved enough success to be entitled to an award of attorney's fees.  See 120 F.3d at 1131-32.  Since Farrar v. Hobby, the Tenth Circuit has repeatedly awarded attorney's fees to plaintiffs who recover nominal damages.  See Brandau v. Kansas, 168 F.3d at 1183 ("[W]hat is controlling [in determining entitlement to a fee award] is Plaintiff's vindication of her civil rights and of important rights of co-workers, even if she sought only a modest amount of damages."); Phelps v. Hamilton, 120 F.3d at 1131 ("The general rule under § 1988 is that the prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"); Koopman v. Water Dist. No. 1, 41 F.3d 1417, 1421 (10th Cir. 1994)(reversing denial of attorney's fees where the plaintiff was awarded $1.00 in nominal damages).  See also Sanchez v. Matta, 2005 WL 2313621 at *4 ("Indeed this Court could not locate any decisions in which the Tenth Circuit has reversed a district court for awarding fees when there was an award of nominal damages.").  Furthermore, this Court has noted that "[the Tenth] [C]ircuit has recognized that the 'district court's discretion to deny fees to a prevailing party is quite narrow.'"  Sanchez v. Matta, 2005 WL 2313621 at *5 (citing Phelps v. Hamilton, 120 F.3d at 1131)).

The Tenth Circuit has also affirmed a district court decision finding that a plaintiff who recovers a nominal award is a prevailing party entitled to an award of attorney's fees.  See, e.g., Nephew v. City of Aurora, 830 F.2d 1547, 1550-51 (10th Cir. 1987)(en banc).  In Nephew v. City of Aurora, the jury awarded the plaintiffs nominal damages of $1.00.  See 830 F.2d at 1550-51.  The Tenth Circuit, sitting en banc, concluded: "Because the district court found that the most important aspect of the judgment was the vindication of plaintiffs' civil rights and its message to the police department, we cannot conclude that the trial court's award [of attorneys' fees] was an abuse of discretion."  Nephew v. City of Aurora, 830 F.2d at 1550-51.

-28-

## LAW REGARDING RULE 54

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs -- other than attorney's fees -- should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).  A district court has broad discretion in deciding whether to award costs.  See Howell Petroleum Corp. v. Samson Resources Co., 903 F.2d 778, 783 (10th Cir. 1990).  There are, however, some limitations on a district court's discretion.  See Cantrell v. Int'l Broth. of Elec. Workers, AFL-CIO, Local 2021, 69 F.3d 456, 458 (10th Cir. 1995).  First, rule 54 creates a presumption that a court will award costs to a prevailing party.  See Cantrell v. Int'l Broth. of Elec. Workers, AFL-CIO, Local 2021, 69 F.3d at 458-59 ("[I]t is well-established that Rule 54 creates a presumption that the district court will award costs to the prevailing party.").  Second, if a court chooses not to award costs to a prevailing party, it must provide a valid reason for doing so.  See Cantrell v. Int'l Broth. of Elec. Workers, AFL-CIO, Local 2021, 69 F.3d at 459.

A district court has discretion in deciding whether to award costs to a party that achieves only partial success in some circumstances.  See Howell Petroleum Corp. v. Samson Res. Co., 903 F.2d at 783.  In Roberts v. Madigan, 921 F.2d 1047 (10th Cir. 1990), the plaintiffs appealed a district court decision to award the defendants their entire costs under rule 54(d), because the defendants had not prevailed on all claims.  See 921 F.3d at 1058.  The Tenth Circuit held that a district court does not abuse its discretion when it awards full costs to a party who prevails on the majority of claims and the central claims at issue.  See Roberts v. Madigan, 921 F.2d at 1058.  Thus, the Tenth Circuit affirmed the district court's ruling, basing its holding "on the broad discretion of the district court" to award costs.  Roberts v. Madigan, 921 F.2d at 1058.  The Tenth Circuit also noted that other circuits have upheld district court awards of full costs when a party prevailed on only part of

its case.  See Roberts v. Madigan, 921 F.2d at 1058 (citing United States v. Mitchell, 580 F.2d 789, 793 (5th Cir. 1978); K-2 Ski Co. v. Head Ski Co., Inc., 506 F.2d 471, 477 (9th Cir. 1974)).  In Haynes Trane Service Agency, Inc. v. American Standard, Inc., 573 F.3d 947 (10th Cir. 2009), the Tenth Circuit held that a district court did not abuse its discretion in awarding costs to the defendant where the defendant was unsuccessful on each of its counterclaims, but the plaintiff was similarly unsuccessful on each of its claims.  See 573 F.3d at 967.  It held that "[i]n a case like this in which all claims and counterclaims have failed, costs may be awarded to the counterclaimant if it 'successfully fend[ed] off a large claim . . . despite failure to prevail on a [smaller] counterclaim." Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc., 573 F.3d at 967.

## ANALYSIS

The Court will grant in part and deny in part Copar Pumice's Renewed Motion for Attorney's Fees.  Copar Pumice prevailed on its claims that the Defendants violated its Fourth Amendment rights as well as its rights under Article 2, Section 10 of the New Mexico Constitution. Although Copar Pumice did not prevail on its claims for injunctive and declaratory relief, the Court finds that those claims were related to its successful claims.  The Court will reduce its award of attorney's fees to Copar Pumice, because its unsuccessful Equal Protection violation claim was unrelated to its successful claims.  Because Copar Pumice has prevailed on the central claims it put at issue, the Court will deny Defendant's Motion to Strike Costs.

## I.   THE COURT HAS JURISDICTION OVER COPAR PUMICE'S CLAIMS FOR ATTORNEY'S FEES AND COSTS.

As an initial matter, this Court must address its jurisdiction to entertain the matters now before the Court.  In their Response to Renewed Motion for Fees, the Defendants argue that the Court's Final Judgment prevents Copar Pumice from making any further claims against the

Defendants, including claims for attorney's fees and costs for the federal litigation.  See Response to Renewed Motion for Fees at 2-3.  The Defendants also contend that, because the Court awarded attorney's fees and costs to Copar Pumice in the amount of $16,218.15 for the administrative proceeding, Copar Pumice is now attempting to re-litigate the Court's previous award.  See Response to Renewed Motion for Fees at 3.  Finally, the Defendants argue that Copar Pumice's Renewed Motion for Fees is, in reality, a surreply for which Copar Pumice never sought leave to file.  See Response to Renewed Motion for Fees at 4.

Copar Pumice responds that its application for attorney's fees is a "separate and collateral proceeding from the decision on the merits and is based upon Copar being the 'prevailing party' in the case by virtue of the Final Judgment."  Reply Renewed Motion for Fees at 4 (citing Bell v. Bd. of Cnty. Comm'rs of Jefferson Cnty., 451 F.3d at 1101-1102).  The Court agrees with Copar Pumice that its fee request is collateral to the Court's Final Judgment and that the Court has jurisdiction to decide the Renewed Motion for Fees.  See Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 395 (1990)("It is well established that a federal court may consider collateral issues after an action is no longer pending."); McKissick v. Yuen, 618 F.3d at 1196 ("[A]n award of attorneys fees for the case is perhaps the paradigmatic example of a collateral issue . . . .").  The Supreme Court has also held that motions for costs or attorney's fees are "independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree."  Cooter & Gell v. Hartmax Corp., 496 U.S. at 395-96.  Determinations of collateral issues, such as the imposition of costs and attorney's fees, are not judgments on the merits of an action, and thus may be made after the principal suit has terminated.  See Cooter & Gell v. Hartmax Corp., 496 U.S. at 396.

Moreover, as the Supreme Court has made clear, "the court's decision of entitlement to fees will therefore require an inquiry separate from the decision on the merits -- an inquiry that cannot

-31-

even commence until one party has 'prevailed.'" White v. N.H. Dep't Empl. Sec., 455 U.S. at 451-52. That the Court entered its Final Judgment before deciding Copar Pumice's request for fees does not foreclose the Court's ability to award fees or strip the Court of jurisdiction over the issues now before it. Rather, the Final Judgment allows Copar Pumice to seek fees. See White v. N.H. Dep't Empl. Sec., 455 U.S. at 451-52 ("[A motion for attorney's fees] does not imply a change in the judgment, but merely seeks what is due because of the judgment.").

Although the Court previously awarded Copar Pumice $16,218.15 in attorney's fees as damages on its Fourth Amendment claim, that amount represented the attorney's fees that Copar Pumice incurred in the administrative proceeding that the NMED brought against it. See Findings of Fact at 36. This amount was awarded as part of Copar Pumice's damages for the Defendants' violation of its Fourth Amendment rights, in addition to the jury's nominal award of $1.00. See Findings of Fact at 32; Oct. 28, 2011 Tr. at 19:18-20 (Court). Thus, although the Court awarded damages for attorney's fees, they were not the fees that Copar Pumice incurred in prosecuting this case against the Defendants.[7] The fees awarded after the bench trial represent the compensatory damages Copar Pumice suffered as a result of the Defendants' Fourth Amendment violation. See Findings of Fact at 36. Copar Pumice now seeks its attorney's fees as the prevailing party in this case, which it is entitled to under 42 U.S.C. § 1988. See 42 U.S.C. § 1988. The Court therefore, rejects the Defendants' argument that the Final Judgment already includes the award of attorney fees and costs to Copar Pumice for its efforts in litigating this action. The Court has jurisdiction over

---

[7]As the Court noted in its July 6, 2009 MOO, Copar Pumice was seeking "damages for 'the fees and expenses it has incurred in responding to the notices of violation and administrative penalty assessment.'" July 6, 2009 MOO at 5 (citation omitted). Additionally, at the July 31, 2009 bench trial, the Court stated that it would issue its findings of fact and conclusions of law and that, at some later point, the Court would hear the parties arguments regarding attorney's fees pursuant to § 1988. See July 31, 2009 Tr. at 91:16-20 (Court).

these matters and will decide the issues before it.

## II.   COPAR PUMICE IS ENTITLED TO ITS REASONABLE FEES INCURRED IN PROSECUTING THIS CASE.

The Court finds that Copar Pumice is a prevailing party and that its total damages award is not nominal.  The Court also finds that Copar Pumice's hourly rates as well as the hours expended on this litigation were reasonable.  The Court determines that the lodestar amount is $124,401.14. The Court will, however, reduce this lodestar amount to reflect Copar Pumice's degree of success. The Court will award Copar Pumice reasonable attorney's fees in the amount of $105,740.97.

### A.   COPAR PUMICE IS A PREVAILING PARTY.

To recover attorney's fees under 42 U.S.C. § 1988, the party seeking the fees must first qualify as a prevailing party.  See 42 U.S.C. § 1988; Phelps v. Hamilton,120 F.3d at 1129.  Parties seeking fees qualify as a prevailing party "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  Hensley v. Eckerhart, 461 U.S. at 433.  The Supreme Court has stated that "this is a generous formulation that brings the plaintiff only across the statutory threshold."  Hensley v. Eckerhart, 461 U.S. at 433.  To qualify as a prevailing party, the party seeking fees need not achieve full success on all of its claims.  See Farrar v. Hobby, 506 U.S. at 111 ("To qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim.")(emphasis added).  It is sufficient that the party seeking fees "obtain[s] an enforceable judgment against the defendant from whom fees are sought" that "directly benefit him at the time of the judgment."  Farrar v. Hobby, 506 U.S. at 111.

The Court finds that Copar Pumice qualifies as a prevailing party under the "generous formulation" that the Supreme Court has set forth in Hensley v. Eckerhart. Copar Pumice succeeded on its Fourth Amendment claims, and in doing so, obtained an enforceable judgment against the

-33-

Defendants.  See Final Judgment at 1.  The Final Judgment includes an award of damages in the amount of $16,219.15,[8] which represents a direct benefit to Copar Pumice at the time of the judgment.  See Final Judgment at 1-2.  Copar Pumice also successfully defended its right to be free from illegal search and seizure under both the federal and state constitutions.  Lastly, Copar Pumice benefitted from this litigation, because the NMED dismissed two of the initial alleged violations against Copar Pumice in the administrative proceedings.  See Tr. at 9:12-19 (Manges).

Copar Pumice was thus successful on its claims for violation of its Fourth Amendment and Article II, Section 10 rights.  It was ultimately unsuccessful on its claims for Equal Protection violation, and its requests for declaratory and injunctive relief.  See Findings of Fact at 35-36.  Although Copar Pumice did not succeed on all of its claims, it is nonetheless a prevailing party, because it obtained an enforceable judgment under § 1983 against the Defendants that directly benefitted Copar Pumice at the time of the judgment.  See Farrar v. Hobby, 506 U.S. at 111.

### B.    COPAR PUMICE'S TOTAL DAMAGES AWARD WAS NOT NOMINAL.

The Court finds that Copar Pumice's total award of $16,219.15 in this matter takes this case out of the realm of nominal damages.  The term "nominal damages" describes an award of a "trifling amount" when there has been a legal injury, but a plaintiff fails to establish that the injury caused any loss.  Black's Law Dictionary, supra, at 447.  See Court's Final Jury Instructions (with citations), Instruction No. 32, at 34 ("If you find that Copar Pumice is entitled to a verdict in accordance with these instructions, but do not find that Copar Pumice has sustained actual damages, then you must return a verdict for Copar Pumice in a nominal sum such as one dollar.").  In this

---

[8]This amount includes the $1.00 in nominal damages that the jury awarded and the $16,218.15 for attorney's fees, expenses, and gross receipts taxes arising from the NMED administrative proceeding that the Court awarded.  See Final Judgment at 1-2.

case, the jury awarded Copar Pumice the $1.00 nominal amount.  See Verdict Form at 1.  The parties

agreed, however, to reserve the question of Copar Pumice's damages in the form of its attorney's

fees and costs related to its defense of the NMED administrative proceeding for the Court.  See July

7, 2009 Stipulation; Findings of Fact, ¶ 73c at 13.  After the bench trial, the Court awarded Copar

Pumice damages for the administrative fees and costs in the amount of $16,815.15.  See Final

Judgment at 2.  The Court's damages award demonstrates that Copar Pumice established that the

Defendants' violation of its Fourth Amendment rights caused it to suffer a loss.  Moreover, the

award was more than a trifling amount.  See Wallace v. DTG Operations, Inc., 563 F.3d 357, 362

(8th Cir. 2009)("Clearly, however, the jury's award of $30,000 actual damages in this case is not

a nominal amount . . . ."); Hubbard v. United States, 480 F.3d 1327, 1332 (Fed. Cir. 2007)("[T]he

$400 damages in this case were not 'nominal' in the sense in which the Supreme Court apparently

used that term in Farrar . . . ."); Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir.

1996)("Morales' damages award of $17,500 in compensatory damages, while substantially less than

what he sought, was not nominal.").  While less than what Copar Pumice sought during the trials,

the amount of the award is not nominal for that reason or any other.  At the hearing, the Defendants

conceded this point and admitted that the Court's $16,218.15 damages award takes this case out of

the nominal-damages category.  See Oct 28, 2011 Tr. at 23:9-18 (Walz).  Accordingly, the Court

finds that this case is not a nominal-damages case.

### C.      THE COURT DETERMINES THE LODESTAR AMOUNT OF ATTORNEY'S FEES IS $124,401.14.

Having determined that Copar Pumice is a prevailing party for the purposes of §1988, the

Court must next calculate a "lodestar" figure by multiplying the hours that plaintiff's counsel

reasonably spent on the litigation by a reasonable hourly rate.  See Jane L. v. Bangerter, 61 F.3d at

1511.  The Defendants do not dispute Copar Pumice's hourly billing rates in its calculation of attorney's fees, and, at the October 28, 2011 hearing, the Defendants agreed that the rates Copar Pumice's attorneys charged were reasonable.  See Oct. 28, 2011 Tr. at 22:4-6 (Walz).  Furthermore, similar rates were before the Court when it determined Copar Pumice's damages related to the attorney's fees and costs expended at the administrative proceedings.  See Findings of Fact ¶ 78, at 34.  There, the Court found that the rates were reasonable.  See Findings of Fact ¶ 78, at 34.  In its Findings of Fact, the Court stated:

> The Court used the following billing rates -- which it finds reasonable -- for the attorneys and paralegals at Comeau Maldegen Templeman Indall, LLP: partners at a rate of $235.00 per hour, associates at the rate of $150.00 per hour, and paralegals at the rate of $75.00 per hour.  For the attorney at Scheuer, Yost & Patterson, P.C., the court used the rate of $200.00 per hour.

Findings of Fact ¶ 78, at 34 (citation omitted).  In the Renewed Motion for Fees and associated affidavits, Copar Pumice uses similar rates: (i) $235.00 per hour for partners; (ii) $200.00 per hour for senior associates; (iii) $150.00 per hour for other associates; and (iv) $75.00 per hour for paralegals.  See Renewed Motion for Fees ¶7, at 2-3; Affidavit in Support of Motion for Attorney's Fees and Related Nontaxable Expenses ¶ 6, at 4 (executed November 17, 2009), filed November 17, 2009 (Doc. 161-1)("Manges Aff.").  Given that the Defendants do not dispute the reasonableness of these rates and that the Court has found similar rates reasonable for these attorneys, the Court will accept as reasonable the billing rates used that Copar Pumice to calculate its attorney's fees. See Avendano v. Smith, No. 11-0556, 2011 WL 5822733, at *2 (D.N.M. Nov. 3, 2011)(Browning, J.)(finding rates of $180.00 per hour reasonable); Mountain Highlands, LLC v. Hendricks, No. 08-0239, 2010 WL 1631856, at *9-10 (D.N.M. Apr. 2, 2010)(Browning, J.)(approving an hourly rate of $170.00 to $210.00 per hour as reasonable for commercial litigation); Allahverdi v. Regents of Univ. of N.M., No. 05-0277, 2006 WL 1304874, at *2 (D.N.M. Apr. 25, 2006)(Browning,

J.)(finding hourly rate of $225.00 reasonable in a public-employment dispute); Kelley v. City of Albuquerque, No. 03-0507, 2005 WL 3663515, at *15-17 (D.N.M. Oct. 24, 2005)(Browning, J.)(finding $250.00 per hour to be a reasonable rate in an employment dispute).

The Defendants have, however, challenged the reasonableness of some of Copar Pumice's time entries.  See Response to Renewed Motion for Fees ¶ 7, at 4 (incorporating Defendants' Response to Motion for Fees at 3-4).  In particular, the Defendants assert that Copar Pumice spent an excessive amount of time performing legal research and preparing responses to the Defendants' motions for summary judgment, for abstention, and to dismiss.  See Response to Renewed Motion for Fees at 3-7.  The Defendants specifically assert that Kristin Davidson's 64.2 hours and Holly A. Hart's 27.3 hours spent on the responses are excessive.  See Response to Motion for Fees at 3.  Hart is in an of-counsel position with Scheuer, Yost & Patterson and acted as lead attorney in this matter until April 2008 when Joseph E. Manges, a partner with Comeau, Maldegen, Templeman, and Indall, LLP took over as lead counsel.  See Affidavit of Holly A. Hart ¶ 4, at 1, filed July 27, 2009 (Doc. 136-2)("Hart Aff.").  Davidson is an associate with Scheuer, Yost & Patterson LLP.  See Hart Aff. ¶ 5, at 2.  Copar Pumice argues that the time spent performing legal research was reasonable, because its counsel was responsible for drafting the pretrial order, approximately eighty-eight percent of the jury instructions, and other trial documents.  See Reply to Motion for Fees at 7.  Copar Pumice also argues that the Defendants' motions, and Copar Pumice's responses thereto, were lengthy and complex.  See Reply to Motion for Fees at 8.  It also points out that the Court denied all of the Defendants' motions and that the Court's opinions on those motions totaled 126 pages. See Reply to Motion for Fees at 8.

The Court has previously found an entry of 62 hours to prepare a single response was reasonable where the legal issues were important and required considerable research.  See Kelley

v. City of Albuquerque, 2005 WL 3663515 at *14.  In this case, the Defendants contend that the 91.5

hours Copar Pumice spent responding to the Defendants' four motions is excessive.  The Court

disagrees that this amount of time is excessive.  Copar Pumice's time of approximately 22.875 hours

on each response is considerably less than the 62 hours found to be reasonable in Kelley v. City of

Albuquerque.  As in Kelley v. City of Albuquerque, here the legal issues were important and also

required considerable research, and Copar Pumice successfully argued against many of Defendants'

motions.  See Memorandum Opinion and Order at 11, filed September 10, 2007 (Doc. 54)(denying

the motion to dismiss, with the exception of one paragraph); Memorandum Opinion and Order at

1, filed October 9, 2007 (Doc. 55)(denying the Defendants' motion to dismiss on the basis of the

Younger v. Harris, 401 U.S. 37 (1971), doctrine); Memorandum Opinion and Order at 1-2, filed

March 21, 2008 (Doc. 60)(denying the Defendants' motion for summary judgment on the basis of

qualified immunity, because there were genuine issues of material fact and because the law was

clearly established at the time of the violation); Memorandum Opinion and Order at 49, filed March

29, 2008 (Doc. 61)("Mar. 29, 2008 MOO")(granting in part and denying in part the Defendants'

motion for summary judgment and finding that there were genuine issues of material fact: (i)

whether Morris and Yantos' search and seizure exceeded Copar Pumice's consent; and (ii) whether

Ismael Gomez gave consent for the search and seizure that was conducted).  The Court spent a

considerable amount of time researching and deciding these issues as well, and the Court's efforts

resulted in four opinions totaling 126 pages.  The Court cannot say that the considerable amount of

time Copar Pumice's attorneys spent researching and writing these four responses was unreasonable.

The time that Copar Pumice spent is comparable, or less, than the considerable time that the Court

took to decide the difficult, constitutional issues of law and fact.  Furthermore, Ms. Hart was the

senior attorney, while Ms. Davidson was the associate on the case.  Having the junior attorney do

the majority of the work on the responses with review by the senior attorney is an efficient way to work.  For these reasons, and because Defendants have provided no other justification for their assertion that Copar Pumice spent excessive time on the responses, the Court does not find the time spent to be unreasonable.  See Kelley v. City of Albuquerque, 2005 WL 3663515 at *14 (without more than the defendants' mere suggestion that the plaintiff should have spent less time on its response, the Court declined to cut the hours in such an arbitrary manner).

The Court will also address other objections to specific time entries.  The Defendants assert that Sharon W. Horndeski's entry of 21.8 hours, including 5.8 hours researching whether attorney fees are appropriate, and 10.2 hours researching damages and jury instructions, are excessive. See Response to Motion for Fees at 3.  Ms. Horndeski is an associate with Comeau, Maldegen, Templeman & Indall, LLP and has been employed there since 2000.  See Manges Aff. ¶ 4(b), at 3. Researching attorneys fees pre-trial was appropriate in this case, however, because Copar Pumice asked for the attorney's fees associated with the administrative proceedings as damages.  One would expect the attorneys involved to spend time researching whether and what fees related to the administrative proceeding could be recovered.  The Court also finds the research into damages and fees appropriate, because the Defendants filed a motion in limine seeking to disallow claims for damages resulting from the search that occurred outside the premises.  See New Mexico Environment Department Defendant's Motions in Limine at 5, filed June 26, 2009 (Doc. 100).  In its July 6, 2009 MOO, the Court held that it would not limit the scope of the damages in the ways that the Defendants requested.  See July 6, 2009 MOO at 6-7.  With respect to the 10.2 hours spent researching damages and jury instructions, the Defendants do not explain why they believe this entry is excessive.  In a complicated case, such as this one, where liability was split between a jury trial and a bench trial, the Court would expect significant time to be spent on researching damages and

preparing the jury instructions. The Court spent a lot of time on the damages issue and the jury instructions; counsel spent 10.2 hours on this issue; the Court spent days.

The Defendants next challenge 19.4 hours of Jaime L. Wisenfield's time entries "including research for jury instructions and damages, and in some instances, performing tasks that were duplicative of the legal research conducted by Sharon W. Horndeski." Response to Motion for Fees at 3. Ms. Wisenfield is an associate with Comeau, Maldegen, Templeman & Indall, LLP and has worked there since 2006. See Manges Aff. ¶ 4(c), at 3. The Defendants do not explain which entries are duplicative, identify which entries make up these 19.4 hours, or state why these entries are excessive. Having reviewed the records submitted, the Court does not believe that these entries are redundant or excessive. Again, the Court spent more time on these issues than these attorneys combined. Furthermore, as Copar Pumice points out, these associates did not work on the same jury instructions. See Reply to Motion for Fees at 6. The Defendants assert that 7.1 hours of Jennifer Salazar's time, spent researching "consent exception[s]" under the Fourth Amendment are excessive. Response to Motion for Fees at 3. Again, the Defendants do not explain why these hours are excessive. The Court does not believe that these hours are excessive given that consent exceptions to the Fourth Amendment were an issue that the Court decided in its Mar. 29, 2009 MOO and which the Court found was a genuine issue of material fact for the jury to decide at trial. See Mar. 29, 2009 MOO at 49. The Court spent more time on these issues than all of Copar Pumice's attorneys combined.

The Defendants argue that Joseph E. Manges' time entries for 6.3 hours, including an entry for "work on jury instructions and legal research on availability on penalties as damages" dated June 17, 2009, were excessive. Response to Motion for Fees at 3. The entry to which the Defendants object covers "[w]ork on civil rights trial preparation; start work on jury instructions; legal research

on availability of penalties as damages in a civil rights case; update research on elements of causes of action; defenses, remedies; e-mails to J. Walz; conferences with clients, witnesses." Comeau, Maldegen, Templeman, Indall, LLP Billed Time at 5, filed November 17, 2009 (Doc. 161-3). The Defendants assert that this entry occurred after "most of the research and jury instructions [were] completed by the three [attorneys] referenced above." Response to Motion for Fees at 3. Mr. Manges is a partner, however. It is logical that he would review a final draft of the jury instructions and confirm his associates' research, so that he is not charging his client at a higher rate to perform work that could be done by someone less senior, but still ensuring the correctness of the work. Furthermore, Mr. Manges spent only part of his time reviewing the jury instructions and researching damages. The Court does not believe that this entry reflects excessive work. Also a litigation partner's work and last minute research on the eve of trial is not unusual, and is to be expected. The Court does not recall the recovery of administrative penalties being a major issue before trial, as the parties focused on the recovery of fees. The Court would expect a partner to take a larger role in preparing for trial and reviewing materials as the trial approaches.

The Defendants also challenge 9.9 hours of Ms. Hart's time, which they assert are "Attorneys Fees in conjunction with administrative matters" and were spent on "review of penalty assessments, notice of violations, and requesting administrative review." Response to Motion for Fees at 3. As Copar Pumice points out in its Reply to Motion for Fees, the Defendants do not explain why any of these 9.9 hours are excessive. See Reply to Motion for Fees at 7. The Defendants also do not identify which entries they believe are excessive. The 115.2 hours, for which Copar Pumice seeks attorney's fees for the work of Scheuer, Yost & Patterson P.C., stem from a July 9, 2009 bill. See Scheuer, Yost & Patterson Bill at 23-25 (dated July 9, 2009), filed July 27, 2009 (Doc. 136-2). None of the entries for Ms. Hart's time relate to administrative matters. The

bill reflects entries for: (i) five hours on June 8, 2007 for travel, legal research regarding the Fourth Amendment, discovery, and qualified immunity; (ii) six hours from July 9, 2007 related to review of the motion to dismiss, the I. Gomez affidavit, the motions for summary judgment, a conference, and further legal research; (iii) 5.3 hours from July 10, 2007 spent researching and drafting a response to the motion for summary judgment; (iv) 6.5 hours from July 11, 2007 reviewing a translated version of the I. Gomez affidavit, sending electronic transmissions to her clients and opposing counsel, preparing further affidavits, and editing the response to the motion for summary judgment; (v) 4.5 hours from July 16, 2007, reviewing and revising the briefs on summary judgment, qualified immunity, and abstention; (vi) five hours from September 18, 2007 spent preparing for the motions hearing; and (vii) 8.5 hours from September 19, 2007 spent preparing for the hearing on qualified immunity, traveling to Albuquerque, New Mexico to attend the hearing, and attending the hearing. See Scheuer, Yost & Patterson Bill at 23-25. These entries add up to the 40.8 hours for which Copar Pumice seeks attorney's fees. None of these entries relate to administrative matters or the administrative hearing. Furthermore, the Defendants assert that, although Ms. Hart's affidavit states that associate Kristopher C. Knutson assisted with the penalty proceeding, Ms. Hart's affidavit lists no attorney's fees attributable to Mr. Knutson. See Response to Motion for Fees at 4. Ms. Hart's affidavit correctly excludes fees for Mr. Knutson, however, because she attests that he assisted only during the administrative-penalty proceeding. See Hart Aff. ¶ 4, at 2. Ms. Davidson assisted in the representation during the federal litigation, and Copar Pumice seeks attorney's fees for her work. See Hart Aff. ¶ 5, at 2. Accordingly, the Court finds that these entries are not excessive, duplicative, or inappropriate.

The Defendants did not challenge any of the expenses which Copar Pumice seeks in its Motion for Fees and its Renewed Motion for Fees. The law firm of Comeau, Maldegen, Templeman

Indall, LLP asserts that Copar Pumice incurred at its firm attorney's fees of $101,513.50 and related expenses of $1,972.16.  See Manges Aff. ¶ 6, at 4.  The law firm of Scheuer, Yost & Patterson, P.C. asserts that Copar Pumice incurred at its firm attorney's fees of $22,887.64 and related expenses of $408.01.  See Hart Aff. ¶ 6, at 2.  Because the Court finds that Copar Pumice's claimed hourly rates are reasonable, and because the Court finds that its time spent in litigating this matter is reasonable, the Court calculates the lodestar amount to be $124,401.14 in attorney's fees with $2,380.17 in expenses.[9]

### D.   THE COURT WILL ADJUST THE LODESTAR AMOUNT BASED ON COPAR PUMICE'S DEGREE OF SUCCESS.

Once the Court determines the lodestar amount, it may adjust that amount based on the degree of success obtained by the prevailing party.  In doing so, "the district court must consider the relationship between the fee awarded and the degree of success obtained and must make a qualitative assessment to determine when limited results will nonetheless justify full recovery, or to what extent plaintiff's 'limited success' should effect a reduction in the lodestar."  Jane L. v. Bangerter, 61 F.3d at 1512.  Failure on some claims, however, should not preclude full recovery if a plaintiff achieves success on a significant, interrelated claim.  See Jane L. v. Bangerter, 61 F.3d at 1512 ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.").  Claims are related to one another when they are either based on "a common core of facts" or based on "related legal theories."  Hensley v. Eckerhart, 461 U.S. at 435.  In both

---

[9]In the Renewed Motion for Fees, Copar Pumice asks that the Court issue a judgment awarding attorney's fees in the amount of $124,401.14, related expenses of $2,380.17, and the attorney's fees as damages awarded in the Final Judgment for a total award of $142,999.46.  The Court need not and should not include the $16,218.15 of  attorney's fees already awarded in the damages award, because the Court included this amount to Copar Pumice in the Final Judgment.

cases, the district court should refrain from reducing the amount of the prevailing party's attorney's fee award.  See Jane L. v. Bangerter, 61 F.3d at 1512.

Copar Pumice asserted three claims: (i) that the inspection of its premises and removal of its records constituted an unreasonable search and seizure, which violated the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution; (ii) that the administrative-penalty-assessment actions violated the Equal Protection Clause of the Fourteenth Amendment and Article II, Section 18 of the New Mexico Constitution; and (iii) that Copar Pumice was entitled to prospective injunctive relief prohibiting Curry and the NMED from conducting warrantless searches, and declaratory relief that the search and seizure of Copar Pumice's mine was unconstitutional.  See Amended Complaint ¶¶ 23-37, at 5-7.  Copar Pumice  prevailed on its claims that the Defendants violated its rights under both the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution.  See Verdict Form at 1; Findings of Fact at 36.  The Court denied Copar Pumice's claims for injunctive and declaratory relief.  See Findings of Fact ¶ 20, at 22.  The Court also dismissed Copar Pumice's Equal Protection claims against Uhl and McElroy.  See May 11, 2009 MOO at 29.

Copar Pumice successfully established that Morris and Yantos violated  its rights under the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution.  See Verdict Form; Findings of Fact ¶ 20, at 22.  Copar Pumice alleged, and successfully proved, that Morris and Yantos searched the mine and seized documents belonging to Copar Pumice without a warrant and without proper consent.  See Findings of Fact at ¶ 76, at 13.  These claims resulted from Morris and Yantos' actions at the August 28, 2006 inspection of the El Cajete mine.  See Amended Complaint at 3.  While Copar Pumice cannot receive fees incurred litigating solely on the state law claims, the Fourth Amendment issue was the dominant issue, and little, if any, time was spent only on the state

constitutional claim that was based on the state constitution's counterpart to the Fourth Amendment.

Conversely, Copar Pumice based its Equal Protection claims on facts and events that occurred after the August 28, 2006 mine inspection. Copar Pumice contended that, as a direct result of its Complaint against the NMED, McElroy and Uhl "intentionally began to treat Copar differently than other similarly situated mine permittees." Amended Complaint ¶ 18, at 4. Specifically, Copar Pumice alleged that the Defendants "conspired and agreed" to "arbitrarily and maliciously" issue Copar Pumice notices of violation alleging violations of Copar Pumice's mining permit. Amended Complaint ¶ 19, at 4. Copar Pumice alleged that the Defendants' assessment of fines, and especially the increase of those fines, "directly resulted from Copar's exercise of its constitutionally protected rights to object to the unlawful entry on its premises and seizure of its records in the administrative penalty proceedings and to file this lawsuit." Amended Complaint ¶ 16, at 3-4.

Copar Pumice's unsuccessful Equal Protection claims are factually and legally distinct from its successful Fourth Amendment and Article II, Section 10 claims. Copar Pumice's Equal Protection claims were based on events occurring after the August 28, 2006, mine inspection. See Amended Complaint ¶¶ 18-19, at 4. Its Fourth Amendment claims, however, were based solely on events occurring at the El Cajete mine on August 28, 2006. See Amended Complaint ¶¶ 23-26, at 5. Copar Pumice brought its Equal Protection claims against McElroy and Uhl, whereas its successful Fourth Amendment claims were against Morris and Yantos. The determination that Morris and Yantos violated Copar Pumice's right to be free from unreasonable search and seizure did not aid in, and was not dependent on, the Court's analysis of the Equal Protection claim. See Jane L. v. Bangerter, 61 F.3d at 1513 (finding that, where the determination of a successful claim does not aid the court's analysis of the unsuccessful claim, the claims are unrelated for the purposes of determining a limited success reduction). Furthermore, because the claims were based on

different facts and directed toward different Defendants, there was not "one bundle of proof presented on the . . . issues," entitling Copar Pumice's attorneys to be fully compensated.  <u>Tidwell v. Fort Howard Corp.</u>, 989 F.2d 406, 412 (10th Cir. 1993); <u>Jane L. v. Bangerter</u>, 61 F.3d at 1512. Because the claims were based on distinct facts and were not based on related legal theories, the Court will reduce its award of attorney's fees to Copar Pumice to reflect its unsuccessful equal protection claim.  The Court, however, views this case overwhelmingly as a Fourth Amendment case.  Copar Pumice brought this civil rights action under 42 U.S.C. §1983 based primarily on its allegations that the Defendants violated its Fourth Amendment rights. <u>See</u> Amended Complaint ¶ 1, at 1.  Because Copar Pumice prevailed on its Fourth Amendment claim, the Court finds that Copar Pumice obtained extensive success on its central claim.  The Court will thus only reduce Copar Pumice's lodestar amount ten percent to reflect Copar Pumice's unsuccessful Equal Protection claims.  This reduction reflects that Copar Pumice was unsuccessful in pursuing its equal protection claim, but also reflects Copar Pumice's success on the claims driving the litigation -- the Fourth Amendment claim.

The Court has looked through the time entries which Copar Pumice submitted and, because the time entries do not single out the Equal Protection claims, does not believe that there is a meaningful way to more specifically determine how much time Copar Pumice's attorney's spent on the Equal Protection claims.  Only one time entry specifically mentions Copar Pumice's Equal Protection claims. <u>See</u> Scheuer, Yost & Patterson Bill at 23.  Ms. Davidson logged one hour of time spent analyzing the case law regarding a "class of one" Equal Protection claim.  Scheuer, Yost & Patterson Bill at 23.  The Court notes that it granted the Defendants' motion for summary judgment regarding Copar Pumice's Equal Protection claims on May 11, 2009. <u>See</u> Doc. 94.  That was two months before trial and before the majority of the time entries for which Copar Pumice seeks

attorney's fees.  The Court has, in other contexts, awarded a percentage of the attorney's fees sought when the prevailing party did not prevail on all aspects of their motion.  See Gonzales v. City of Albuquerque, No. 09-0520,  2010 WL 553308, at *12 (D.N.M. Feb. 9, 2010)(Browning, J.)("[B]ecause the Plaintiffs did not prevail on all aspects of the motion to compel, the Court will not shift all the Plaintiffs' attorney's fees to the Defendants.  The Court, therefore, orders the Defendants to pay to the Plaintiffs ninety-five percent of the attorney's fees . . . ."); Stranger v. Checker Auto Parts, No. 05-0632, 2006 WL 1304948, at *18 (D.N.M. Mar. 24, 2006)(Browning, J.)("Although the Court is granting the motion in part and denying the motion in part, the Court is granting a large portion of CSK's requests and is denying only a small portion and believes that 80 percent is a just and reasonable apportionment.").  Although Copar Pumice was unsuccessful in its pursuit of its Equal Protection claims, such claims represented only a small percent of the case and were not added until the Amended Complaint.  The central claim of this case was the Fourth Amendment violation.  The Equal Protection claims were added later and dismissed before trial. Accordingly, the time spent on those claims represents only a small percentage of the time spent on the case as a whole.  The Court finds that a ten-percent reduction in the lodestar amount to reflect the lack of success on this claim is appropriate.  This reduction totals approximately $12,439.84. The Court finds that such a reduction is small enough to reflect that this claim was not part of the central thrust of the case, but large enough to reflect that there was a motion for summary judgment and part of a hearing devoted to this claim.  The Court will therefore reduce by ten percent the lodestar amount.

With respect to Copar Pumice's claims for injunctive and declaratory relief, and state constitutional claims, the Court finds that these claims are sufficiently related to Copar Pumice's successful claims, because they share a common core of facts.  While the Court cannot award fees

for the state claims there does not appear to be any additional time spent on the state claims that would not also support the Fourth Amendment claims. Copar Pumice's requests for injunctive and declaratory relief were related to its claim that Morris and Yantos violated its Constitutional rights. See Amended Complaint ¶ 34, at 7 ("Copar is entitled to prospective injunctive relief against NMED enjoining the department from engaging in warrantless searches and seizures of permittee's records . . . ."); id. ¶ 35, at 7 ("A real and actual controversy exists between Copar and Curry . . . inasmuch as Curry contends that NMED has the right to conduct warrantless searches and seizures of a permittee's business records and Copar disputes the existence of that right."). Although the Court found that there was no danger of irreparable future harm stemming from these violations, the facts and events occurring at the August 28, 2006 inspection, and the determination that Morris and Yantos violated Copar Pumice's right to be free from unreasonable search and seizure, were useful in the Court's analysis of the injunctive and declaratory relief claims. See Jane L. v. Bangerter, 61 F.3d at 1513. As part of its analysis of these claims, the Court relied on the jury's prior determination that the August 28, 2006 inspection was unconstitutional. See Findings of Fact ¶¶ 53, 66, 77, at 9, 14, 31.[10] The Court declined to grant declaratory relief, because it found that it needed to defer to the NMED's procedures, and declined to grant injunctive relief, because it found that August 28, 2006 search and seizure was an isolated incident. The requests for injunctive and declaratory relief were, however, alternative requests for relief for the Fourth Amendment violation. Moreover, the Supreme Court has stated that "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." Hensley v. Eckerhart, 461 U.S. at 435. In Hensley v.

---

[10]The Court found that it was "bound by both the actual findings of the jury and those that were necessarily implicit in its verdict." Findings of Fact ¶ 2, at 18.

Eckerhart, the Supreme Court also noted that "a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." 461 U.S. at 435 n.11. Although Copar Pumice was unsuccessful on its claims for declaratory and injunctive relief, it prevailed on, and recovered damages for, its Fourth Amendment claims. Any time spent only on declaratory injunctive relief, and on the state claims, is negligible or is fairly covered by the ten percent reduction. Thus, the Court will not adjust Copar Pumice's lodestar amount further based on its limited success in pursuing its claims for declaratory and injunctive relief.

When the Court reduces the lodestar amount ten percent, the fee award is $111,961.03. Accordingly, the Court will award Copar Pumice $111,961.03 in attorney's fees[11] and $2,380.17 in expenses for its pursuit of the litigation, pursuant to 42 U.S.C. § 1988.[12]

---

[11]This calculation is also not far from the $85,000.00 to $90,000.00 that the Defendants conceded was appropriate at the October 28, 2011 hearing. See Oct. 28, 2011 Tr. at 28:10-13 (Court, Walz).

[12]The Tenth Circuit has held that 42 U.S.C. § 1988 covers certain expenses. It has held that, "[s]ome expenses, such as travel, may be included in the concept of attorney's fees as 'incidental and necessary expenses incurred in furnishing effective and competent representation.' These expenses are thus authorized by section 1988." Brown v. Gray, 227 F.3d 1278, 1297 (10th Cir. 2000)(citations omitted). In Brown v. Gray, the Tenth Circuit cites with approval Dowdell v. City of Apopka, 698 F.2d 1181 (11th Cir. 1983), which states that, "[r]easonable attorneys' fees under [section 1988] must include reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the costs of litigation." Brown v. Gray, 227 F.3d at 1290 (citing Dowdell v. City of Apopka, 698 F.2d at 1190). Copar Pumice seeks expenses for photocopying, courier services, computer research, attorney travel, long-distance phone calls, mailing charges, and translations. See Manges Aff. ¶ 6, at 4; Hart Aff. ¶ 6, at 3. The Defendants make no specific challenge to the expenses that Copar Pumice requests pursuant to § 1988. The Court notes that many of the charges are for legal research, photocopying, or travel expenses, which the Tenth Circuit and this Court have found are recoverable under § 1988. See Brown v. Gray, 227 F.3d at 1297 (discussing travel expenses); Sussman v. Patterson, 108 F.3d 1206, 1213 (10th Cir. 1997)("Finally, we are unpersuaded by the challenge that defendants make to the imposition of costs such as photocopying, milage, meals, and postage."); Bank of N.Y. v. Mehner, No. 05-0355, 2005 WL 3664743, at *2 (D.N.M. Nov. 15, 2005)(Browning, J.)("Furthermore, the Court, like the United

## III.    THE COURT WILL AWARD COPAR PUMICE ITS COSTS.

Copar Pumice is a prevailing party, because it successfully litigated its Fourth Amendment claim and its claims under Article II, Section 10 of the New Mexico Constitution.  In Sanchez v. Matta, this Court noted that "[i]t is well established that Rule 54 creates a presumption that a court will award costs to a prevailing party."  2005 WL 2313621, *7 (citing Cantrell v. Int'l Broth. of Elec. Workers, AFL-CIO, Local 2021, 69 F.3d at 458-459).  Although the Court has broad discretion in deciding whether to award costs, if it chooses not to award costs to a prevailing party, it must provide a valid reason for doing so.  See Cantrell v. Int'l Bhd. of Elec. Workers, AFL-CIO, Local 2021, 69 F.3d at 458-459; Howell Petroleum Corp. v. Samson Res. Co., 903 F.2d at 783.

The Defendants primarily argue that the Court has already assessed liability for the costs that Copar Pumice seeks to recover -- transcription fees for the administrative hearing -- at the bench trial on damages.  See Motion to Strike at 2.  The Defendants also contend that the Court should disallow Copar Pumice's request for costs, because Copar Pumice did not prevail on all of its claims.  See Motion to Strike at 1-2.  Copar Pumice argues that the transcripts were reasonably necessary to the case, because the Court relied on them in calculating damages and because they were entered into evidence.  See Response to Motion to Strike at 3.  Copar Pumice further argues that it did not request or recover the transcript costs at the bench trial on damages, because transcripts are taxable expenses, which are recoverable pursuant to rule 54.  See Response to Motion to Strike at 3.[13]

---

States District Court for the District of Kansas, finds persuasive the fact that Westlaw charges are awardable under the fee-shifting provision of 42 U.S.C. § 1988.").

[13]Expenses are available under § 1988 as part of the attorney's fees reasonably necessary to the litigation and an exception to the American Rule, which requires that each party pays their own attorney's fees.  See Marx v. Gen. Revenue Corp., 668 F.3d 1174, 1179 (10th Cir. 2011).  With respect to costs, however, the presumption is that "a prevailing party is entitled to costs," and the Federal Rules of Civil Procedure provide for these costs in rule 54(d).  Marx v. Gen. Revenue Corp.,

The Court agrees that awarding costs is appropriate.  Rule 54 provides that "costs -- other than attorney's fees -- should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1).  D.N.M.LR-Civ. 54.2(a) allows as a taxable cost the cost of a transcript of a court proceeding when it has been requested by a party and authorized by the Court.  See D.N.M.LR-Civ. 54.2(a) ("The cost of an original transcript of a court proceeding is taxable when requested by a party and authorized by the Court before transcription.").  D.N.M.LR-Civ. 54.2(b) allows for the recovery of the cost of a deposition transcript when the transcript is reasonably necessary to the litigation.  See D.N.M.LR-Civ. 54.2(b) ("The reporter's charge for the original or a copy of a deposition transcript is taxable when the deposition is reasonably necessary to the litigation.").  A deposition is reasonably necessary when "a substantial portion of the deposition is admitted into evidence or used at trial for impeachment purposes," when "it is used by the Court in ruling on a motion for summary judgment," or when "the Court so determines."  D.N.M.LR-Civ 54.2.  Although the local rules do not specifically provide for transcripts related to an administrative hearing, the administrative transcripts were necessary to the litigation, and rule 54 provides that costs, other than attorney's fees, should be awarded to the prevailing party.  See Fed. R. Civ. P. 54(d)(1).  Other courts have also found that an award of costs for the transcription of an administrative hearing is appropriate.  In Manson v. City of Chicago, 825 F.Supp.2d 952, 957 (N.D. Ill. 2011), the United States District Court for the Northern District of Illinois awarded costs for "a transcript from what appears to be

668 F.3d at 1179.  Costs are presumptively awarded to a prevailing party.  See Barber v. T.D. Williamson, Inc., 254 F.3d 1223, 1234 (10th Cir. 2001).  These costs are "taxed" to the unsuccessful party, and 28 U.S.C. § 1920 limits what items are taxable.  Sorbo v. United Parcel Serv., 432 F.3d 1169, 1179 (10th Cir. 2005)(citing Bee v. Greaves, 910 F.2d 686, 690 (10th Cir. 1990)).  Items such as computer research are not a separately taxable costs, but are "a substitute for an attorney's time that is compensable under an application for attorneys' fees."  Sorbo v. United Parcel Serv., 432 F.3d at 1180 n.10 (citations omitted).

a 2005 City of Chicago Administrative hearing concerning Plaintiff's residence," because the transcripts were reasonably necessary to the litigation. 825 F.Supp.2d at 957. In Leslie v. Johnson, No. 2:04-CV-0080, 2007 WL 4510227 (S.D. Ohio Dec. 18, 2007), the United States District Court for the Southern District of Ohio awarded part of the costs for "the costs expended for court reporter fees for the testimony of the Plaintiff and other witnesses before the State Personnel Board of Review of Ohio." 2007 WL 4510227, at *1. The Southern District of Ohio held that, because the administrative hearing transcript was the sole evidence on summary judgment, the costs of the transcript should be allocated between the two proceedings equally and awarded the defendants costs equaling half of the costs related to the transcripts. See Leslie v. Johnson, 2007 WL 4510227, at *2.

In the Final Judgment, the Court awarded Copar Pumice expenses related to the attorney's fees in the amount of $318.39 for damages incurred in association with the unlawful August 28, 2006 search and seizure and with defending the administrative action. See Findings of Fact ¶¶ 81-82, at 35. The Court awarded Copar Pumice those costs as part of the compensatory damages it incurred as a result of the Defendants' violation of its Fourth Amendment rights. See Findings of Fact at 32. Those costs include nontaxable expenses arising from its defense of the portion of the NMED administrative hearing related to the unconstitutional search and seizure. See Response to Motion to Strike at 3; Findings of Fact ¶ 71, at 32. Copar Pumice was entitled to recover those costs as compensatory damages, because it "establishe[d] liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983," and those costs were part of the "injuries suffered as a consequence of those deprivations." Train v. City of Albuquerque, 629 F.Supp.2d 1243, 1251 (D.N.M. 2009)(Browning, J.). Copar Pumice did not request, and the Court did not award, recovery for the costs of the transcripts of the administrative hearings at that time. See Response to Motion

to Strike at 2-3.  Furthermore, Copar Pumice could not have sought these costs as damages, because they are related to the pursuit of this litigation and because rule 54(d) requires a that there be a prevailing party and a judgment.  For the purposes of rule 54(d), "the litigant in whose favor judgment is rendered is the prevailing party."  Barber v. T.D. Williamson, Inc., 254 F.3d at 1234. Accordingly, it was appropriate to wait until the Final Judgment was entered for Copar Pumice to seek its costs.

Copar Pumice now seeks reimbursement for the transcripts of the testimony given at the NMED administrative hearings and used in this litigation.  See Motion to Tax Costs at 1-2.  Rule 54(d)(1) directs the Court to award costs, other than attorney's fees, to a prevailing party.  See Fed. R. Civ. P. 54(d)(1).  The Court's award of costs under rule 54 results from Copar Pumice's status as a prevailing party in this case.  The Court admitted the transcripts of the administrative hearings into evidence as part of this case, and the Court relied on the transcripts in calculating Copar Pumice's damages.  See Findings of Fact ¶¶ 39, 62, 74, at 7, 10, 33 & n.8.  The Court finds that the transcripts were reasonably necessary to the litigation of this case, and that Copar Pumice may recover the expense of the transcripts as taxable costs because it prevailed on its central claims. Moreover, the Tenth Circuit has held that a district court does not abuse its discretion when it awards full costs to a party who prevails on the majority of claims and the central claims at issue.  See Roberts v. Madigan, 921 F.2d at 1058.  Copar Pumice's claim for violations of its Fourth Amendment rights under the United States Constitutions was the central claims at issue.  This suit was primarily a civil rights action under 42 U.S.C. §1983 seeking redress for violations of the Fourth and Fourteenth Amendments.  See Amended Complaint ¶ 1, at 1.  Even though Copar Pumice did not prevail on its claim for injunctive relief, the NMED conceded that it could not use the evidence obtained during the August 28, 2006 inspection at the administrative hearing.  See Findings of Fact

¶ 25, at 23.

The Defendants further assert that the transcription costs should be allocated between the trial and the administrative proceeding, because the transcripts were used for a dual purpose as indicated in a footnote in the Plaintiff's Verified Bill of Costs, filed November 20, 2009 (Doc. 163). See Motion to Strike at 2-3. The footnote to which the Defendants cite, however, does not suggest that the transcripts had a dual purpose. That footnote provides

> The transcripts of the Administrative Hearing contained the sworn testimony of witnesses Mary Uhl, Allan Morris, Ismael Gomez, Donald Flores, Debra McElroy, Adrian Salazar, Ralph Martinez, Ruben Velasco and Kelly Armstrong. Each of these witnesses testified at the jury trial. The transcripts were actually used in the trial of this matter for preparation of the examination and cross-examination of these witnesses. The costs of these transcripts should be taxable under D.N.M.LR-Civ. 54.2.

Bill of Costs at 1 n.1. This footnote indicates that the witnesses testified at both proceedings, but does not suggest that the administrative-hearing transcripts were used in the administrative proceeding. Accordingly, the Court sees no basis to allocate the costs of transcription between the two proceedings. There may have been some use for the transcripts in the administrative proceeding, but the record does not clearly indicate that fact; moreover, the purpose and use of the transcripts at trial is clear. The Court finds that Copar Pumice is entitled to recover the costs requested in its Bill of Costs, filed November 20, 2009. See Doc. 163.

Other than a challenge to the administrative hearing transcription costs and an argument that these costs were included in the Final Judgment, the Defendants do not challenge any of the specific costs for which Copar Pumice seeks reimbursement. The Court has carefully reviewed the Bill of Costs and the costs appear reasonable and necessary, and otherwise legally recoverable. The Court will therefore deny Defendants' Motion to Strike. Accordingly, the Court will award Copar Pumice $6,857.43 in costs. See Bill of Costs at 2.

**IT IS ORDERED** that: (i) the Plaintiff's Renewed and Supplemental Motion for Attorneys Fees and Related Nontaxable Expenses, filed November 17, 2009 (Doc. 161), is granted in part and denied in part; and (ii) the Defendants' Motion Requesting the Court to Strike the Award of Costs to Copar Pumice, filed December 16, 2009 (Doc. 172), is denied.  The Court will award Plaintiff Copar Pumice Company, Inc. $111,961.03 in attorney's fees and $2,380.17 in expenses.  The Court will also award Copar Pumice $6,857.43 in taxable costs pursuant to rule 54 of the Federal Rules of Civil Procedure.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John Indall
Joseph E. Manges
Comeau, Maldegen, Templeman & Indall, LLP
Santa Fe, New Mexico

     *Attorneys for the Plaintiff*

Jerry A. Walz
Marcus Serna
Walz and Associates
Cedar Crest, New Mexico

     *Attorneys for the Defendant*s